**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE,** | ) ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | |
| | ) | **3:25-cv-00256-LMM** |
| **v.** | ) | |
| | ) | |
| **TRUIST BANK, INC., and** | ) | |
| **TECHNOLOGY INSURANCE** | ) | |
| **COMPANY d/b/a** | ) | |
| **AMTRUSTCYBER,** | ) | |
| | | |
| **Defendants.** | | |

**DEFENDANT TRUIST BANK'S MOTION TO COMPEL ARBITRATION
AND TO DISMISS OR STAY AND ITS INCORPORATED
<u>MEMORANDUM OF LAW IN SUPPORT</u>**

The Court should compel Plaintiff Baskloofs Stone, Inc. d/b/a DeBeer Granite & Marble to arbitrate its claims against Defendant Truist Bank d/b/a Truist Bank, Inc. ("Truist"). Plaintiff agreed in writing in Truist's Commercial Bank Services Agreement (the "CBSA") that it would arbitrate disputes with Truist, including claims based in "contract, tort (including fraud and other intentional torts), [and] consumer rights." Plaintiff's allegations in this matter fall within the scope of the broad arbitration provision contained in the CBSA.

The U.S. Supreme Court's decisions in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)

make clear that arbitration agreements like those agreed to by Plaintiff must be enforced under the Federal Arbitration Act ("FAA"). Consequently, this Court should compel arbitration of Plaintiff's claims against Truist in accordance with the Parties' arbitration agreement pursuant to Sections 3 and 4 of the FAA, 9 U.S.C. §§ 3 and 4, and either dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) or, pursuant to 9 U.S.C. § 3, stay this case pending the Parties' arbitration.[1]

In making this motion, Truist reserves all defenses under Rule 12 of the Federal Rules of Civil Procedure and any other defenses available to it under state and/or federal law.

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Plaintiff agreed to arbitrate its claims against Truist.

Plaintiff maintains a Business Account with Truist, ending in -0274 (the "Account").[2] (*See* Declaration of Andraco Bohannon ("Bohannon Decl."), attached

---

[1] This Court has previously held that "Motions to Compel Arbitration are generally considered as factual attacks on subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Walker v. Hyundai Cap. Am., Inc.*, No. CV417-045, 2018 WL 1352173, at *2 (S.D. Ga. Mar. 25, 2018). Although it was previously common practice to dismiss a case after compelling arbitration, the U.S. Supreme Court recently held that the Federal Arbitration Act instead mandates a stay of litigation pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Thus, while it appears that the proper procedure is now to stay a case pending arbitration instead of dismissing the case, out of an abundance of caution, Truist asks the Court to dismiss or stay the case as the Court deems appropriate.

[2] The Complaint contains an error in alleging that the account ended in -0166 (Doc. 1 at ¶ 14) as Plaintiff did not maintain an account with Truist with that number.

hereto as **Exhibit 1**, ¶ 4.) On or about June 7, 2023, the authorized signer on the Account, Izak G. DeBeer, executed a Truist Signature Card. (*Id.*, ¶ 7; Ex. B to Bohannon Decl.) In the CBSA, Plaintiff agreed that by signing a signature card or by maintaining and using its Truist account, it was governed by the terms and conditions set forth in the CBSA. (Ex. C to Bohannon Decl., p.3.) The CBSA[3] contains prominent Mutual Arbitration Agreement provisions. (Ex. C to Bohannon Decl., pp.4–8; Ex. D to Bohannon Del., pp.4–9.) The Mutual Arbitration Agreement heading is in in all capital letters, bolded, and underlined. (Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.) (emphasis in original.) The arbitration agreement in the CBSA explicitly instructs all clients to "**READ THIS PROVISION CAREFULLY BECAUSE IT HAS A SUBSTANTIAL IMPACT ON HOW DISPUTES AND CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED**." Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.) (emphasis in original). The provision explains, in bold letters, that for any claim subject to arbitration, neither the bank nor the Plaintiff will have the right to: "**(1) have a court or a jury decide the Claim; (2) engage in information-gathering**

Truist's records show that the transactions at issue in the Complaint occurred in Plaintiff's Truist account ending in -0274. (*See* Bohannon Decl., at ¶¶ 4–5.)

[3] Truist periodically updates the CBSA. (Bohannon Decl., ¶ 11.) The current CBSA contains an arbitration provision nearly substantively identical to the arbitration provision Plaintiff agreed to in 2023. (*See id.*, ¶ 13; *see also* Ex. C to Bohannon Decl., pp. 4–8 and Ex. D to Bohannon Decl., pp. 4–9.)

**(discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person or entity**." (Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.) (emphasis in original).

Under the CBSA, a "Claim" subject to arbitration is "any claim, cause of action, dispute, or controversy between You and us …, whether preexisting, present, or future, which arises out of or relates to an account, this Commercial Bank Services Agreement, any transaction conducted with us in connection with an account or this Commercial Bank Services Agreement, or any aspect of our relationship[.]" (Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.) (emphasis in original). The CBSA further explains that "'Claim' has the broadest possible meaning," and it "includes disputes based in contract, tort (including fraud and other intentional torts), consumer rights, a state or the federal Constitution, statute, regulation, ordinance, common law, and equity, and includes claims for money damages and injunctive or declaratory relief." (Ex. D to Bohannon Decl., p.4; *see also* Ex. C to Bohannon Decl., p.4.) Pursuant to the CBSA by which Plaintiff acknowledged it would be bound, Plaintiff's claims in this litigation are subject to mandatory arbitration. (Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.).

The CBSA also provides that the party against whom the Claim is asserted may elect arbitration even after a lawsuit has been commenced, that party may move

4

to compel arbitration after a lawsuit has been commenced, and that the failure to initiate or request arbitration at the beginning of a dispute or claim shall not be a waiver of the right to arbitration. (Ex. D to Bohannon Decl., p.6; *see also* Ex. C to Bohannon Decl., p.6 (providing that either party may elect arbitration).) The CBSA provides that if the Plaintiff filed a "Claim" in court, and Truist demanded arbitration or filed a motion to compel arbitration which was granted, it would be the Plaintiff's responsibility "to follow the arbitration procedures set forth in the Mutual Arbitration Agreement, including the Notice of Pre-Arbitration Dispute." (Ex. D to Bohannon Decl., p.6; *see also* Ex. C to Bohannon Decl., p.6 (similar).) In the CBSA, the Plaintiff also expressly agreed that the Arbitration Agreement would be governed by the Federal Arbitration Act ("FAA"). (Ex. C to Bohannon Decl., p.5; Ex. D to Bohannon Decl., p.5.)

**B. Procedural history and Plaintiff's claims in this litigation.[4]**

Plaintiff filed this lawsuit on December 3, 2025. (*See* Doc. 1.) According to the Complaint, Plaintiff was the victim of a scam in which "an unknown third party managed to instruct Truist, via unknown means, to wire funds out of the Account" "in the amount of $298,758.00." (*See id.*, ¶ 14.) Plaintiff claims that the fraudster

---

[4]     Truist summarizes Plaintiff's claims solely to show that they are embraced within the parties' dispute resolution agreement. Truist denies and will contest the claims if they proceed to arbitration.

transmitted these funds "without authorization from de Beer, using Truist's system." (*Id.*, ¶ 37.)

Plaintiff asserts claims for negligence, gross negligence, breach of fiduciary duty, and attorneys' fees against Truist.[5] (*Id.*, ¶¶ 42–140, 155–160.) In Count I, Plaintiff alleges that Truist committed negligence by "transmitting the Funds out of de Beer's Account to the unknown third party" and by "failing to claw back the Funds." (*Id.*, ¶¶ 70–74.) Count II alleges that these actions amounted to gross negligence, and that "Truist's acts and omissions with regard to de Beer were taken with wanton disregard for de Beer and its Account." (*Id.*, ¶¶ 76–109.) In Count III, Plaintiff alleges that Truist "had a fiduciary obligation to de Beer to safeguard de Beer's Funds within the Account[,]" and that Truist breached this duty by "transmitting de Beer's funds out of de Beer's Account." (*Id.*, at ¶¶ 131, 138.) Plaintiff further alleges that it attempted to alert Truist of issues accessing its Account, but that the funds were transmitted anyway. (*Id.*, at ¶ 139.)

Prior to filing this motion, on January 14, 2026, Truist sent Plaintiff a demand for arbitration asking it to comply with the governing arbitration agreement and resolve the claims in accordance with the parties' arbitration agreement. (*See* January 14, 2026 Demand for Arbitration, a true and correct copy of which is

---

[5]     Plaintiff also asserts a claim for Breach of Contract against Defendant Technology Insurance Company d/b/a AmTrustCyber. (Doc. 1, ¶¶ 142–154.)

attached hereto as **Exhibit 2**.) Plaintiff has not responded. Accordingly, Truist now moves this Court to enforce its binding arbitration agreement with Plaintiff under the CBSA.

<u>**ARGUMENT AND CITATION OF AUTHORITIES**</u>

**I.      This Court must compel arbitration and pre-arbitration dispute resolution of Plaintiff's claims against Truist under the FAA and dismiss or stay this action without proceeding any further on the merits.**

Plaintiff must arbitrate its claims pursuant to the agreement to arbitrate in the CBSA. (*See* Bohannon Decl., ¶ 13; Ex. C to Bohannon Decl., pp.4–8; Ex. D to Bohannon Decl., pp.4–9.) Under the FAA, Truist is entitled to submit this motion to compel arbitration "for an order directing that such arbitration proceed in the manner provided for in [the CBSA]." 9 U.S.C. § 4.

**A.      The FAA requires enforcement of Plaintiff's agreement to arbitrate with Truist.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the Court's resolution of this Motion and mandates enforcement of the Parties' agreement to arbitrate.[6] The FAA provides:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

---

[6]      The FAA controls the parties' agreement to arbitrate disputes regarding Plaintiff's relationship with Truist and its Account because that agreement, its relationship, and its Account involve interstate commerce, *see* 9 U.S.C. § 2, and because Plaintiff expressly agreed in the CBSA that the FAA governs the arbitration agreement between the parties. (Ex. C to Bohannon Decl., p.5; Ex. D to Bohannon Decl., p.5.)

> such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This mandate embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) ("[A]rbitration agreements to resolve disputes between parties have now received near universal approval."). The central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010) (internal quotation omitted). As a result, the Supreme Court consistently directs courts to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (noting that FAA establishes a strong federal preference for arbitration).

An arbitration provision creates a "presumption of arbitrability." *Phillips Petroleum Co. v. Marathon Oil Co.*, 794 F.2d 1080, 1081 (5th Cir. 1986). To that end, arbitration agreements are enforced as written, with all doubts resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25. The FAA "leaves no place for the exercise of discretion by a court, but instead mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985);

*Chastain v. Robinson-Humphrey, Inc.*, 957 F.2d 851, 853 (11th Cir. 1992) (holding that "[u]nder the Act, a district court must compel arbitration if the parties have agreed to arbitrate their dispute"); *Goldberg v. Donaldson, Lufkin & Jenrette Securities Corporation*, 650 F. Supp. 222, 225 (N.D. Ga. 1986) (explaining that, when a predicate arbitration agreement exists, "the court is required to direct the parties to arbitrate their dispute").

**B.      Plaintiff's claims in this matter are subject to the arbitration agreement.**

Plaintiff expressly agreed in the CBSA that a Claim subject to arbitration includes "any claim, cause of action, dispute, or controversy between You and us …, whether preexisting, present, or future, which arises out of or relates to an account, this Commercial Bank Services Agreement, any transaction conducted with us in connection with an account or this Commercial Bank Services Agreement, or any aspect of our relationship[.]" (Ex. C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.) Plaintiff agreed that a "Claim" under the CBSA has "the broadest possible meaning," and it "includes disputes based in contract, tort (including fraud and other intentional torts), consumer rights, a state or the federal Constitution, statute, regulation, ordinance, common law, and equity, and includes claims for money damages, and injunctive or declaratory relief." (Ex.  C to Bohannon Decl., p.4; Ex. D to Bohannon Decl., p.4.)

In this matter, Plaintiff attempts to hold Truist liable in connection with allegations arising out of allegedly fraudulent transactions conducted in Plaintiff's Truist account that Plaintiff contends Truist should have stopped, or should have returned the allegedly stolen funds. (*See* Compl., Doc. 1 pp. 7–18, 20, ¶¶ 42–140, 155–160.) Plaintiff also alleges that by virtue of their relationship, Truist owed fiduciary duties to Plaintiff, which Plaintiff alleges Truist breached. (*See id.*, pp.15–18, ¶¶ 110–140.) Plaintiff's allegations make clear that Plaintiff's claims arise out of and relates to Plaintiff's Truist Account, the CBSA, transactions conducted in Plaintiff's Truist Account, and Plaintiff's relationship with Truist. Accordingly, Plaintiff's claims against Truist in this matter are covered by the broad arbitration provision in the CBSA and must be arbitrated.

**C.      This Court should dismiss all claims by Plaintiff against Truist or, in the alternative, stay all further proceedings.**

Because all of Plaintiff's claims against Truist in this action are subject to mandatory and binding arbitration, the Court should dismiss Plaintiff's claims against Truist pursuant to Rule 12(b)(1), *see Walker*, 2018 WL 1352173, at \*2, or stay Plaintiff's claims against Truist in this action pursuant to 9 U.S.C. § 3 pending the resolution of the arbitration between Plaintiff and Truist. *See Smith*, 601 U.S. at 475. Under the FAA, once a court determines that the controversy is arbitrable, it can do nothing further on the merits except stay all proceedings pending arbitration. *See id.*; *see also Anderson v. Carlisle*, 556 U.S. 624, 625 (2009) ("Section 3 of the

Federal Arbitration Act (FAA) entitles litigants . . . to a stay of any action that is 'referable to arbitration under an agreement in writing'").

<strong><u>CONCLUSION</u></strong>

Given Plaintiff's agreement to arbitrate its claims in this case against Truist under the parties' clear, broad, written arbitration agreement, the Court should enter an order enforcing that agreement by compelling arbitration and dismissing Plaintiff's claims against Truist pursuant to Rule 12(b)(1), or by staying the Plaintiff's claims against Truist pending the resolution of the arbitration between the Plaintiff and Truist pursuant to 9 U.S.C. § 3.

Respectfully submitted this 23rd day of January, 2026.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Nancy H. Baughan*
Nancy H. Baughan
Georgia Bar No. 042575
Rachel C. Bramblett
Georgia Bar No. 896738
Promenade Tower, Suite 2000
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Email: nbaughan@bradley.com
　　　　rbramblett@bradley.com

*Counsel for Defendant Truist Bank*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document

has been prepared in compliance with Local Rule 5.1(B).

This 23rd day of January, 2026.

*/s/ Nancy H. Baughan*
Nancy H. Baughan

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a copy of the within and foregoing **DEFENDANT TRUIST BANK'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY AND ITS INCORPORATED MEMORANDUM OF LAW IN SUPPORT** upon all parties of record to this matter by filing same with the Clerk of Court using the Court's eFile system which will send email notification to all parties of record in this action.

This 23rd day of January, 2026.

*/s/ Nancy H. Baughan*
Nancy H. Baughan