# EXHIBIT 1

| | | |
|---|---|---|
| BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE, <br><br> Plaintiff, <br><br> v. <br><br> TRUIST BANK, INC., and TECHNOLOGY INSURANCE COMPANY d/b/a AMTRUSTCYBER, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 3:25-cv-00256-LMM |

## DECLARATION OF ANDRACO BOHANNON

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.     My name is Andraco Bohannon. I have been employed by Truist Bank and its predecessors since May 1999. My current position is Operations Manager at Truist Bank, a position that I have held since approximately December 2019.

2.     I am authorized to make this Declaration on behalf of Truist, and the facts set forth herein are based upon my personal knowledge, as well as my familiarity with the business records maintained by Truist in the ordinary course of business, including Truist's Bank Services Agreements governing deposit accounts, and notifications to customers about amendments to the contracts governing their

- 1 -

accounts.

3. I am familiar with Truist's standard business practices with respect to its standard procedures for mailing monthly account statements. I have personally reviewed the account history and records relating to the accounts of the Plaintiff in the above-captioned lawsuit, and the documents attached to this Declaration, which are business records of Truist Bank.

4. Plaintiff Baskloofs Stone Inc. d/b/a DeBeer Granite & Marble ("Baskloofs Stone") maintains a Bank Business Checking account with Truist ending in -0274 (the "Account").

5. The transactions in issue in the Complaint occurred in the Account described in paragraph 4 above.

6. Baskloofs Stone does not maintain any Truist account ending in -0166, the number referenced in the Complaint.

7. On or about June 7, 2023, Baskloofs Stone executed a Resolution for a Deposit Account with Truist, on which it identified Izak G. DeBeer as the President and Sharon Griffies as the Controller of Baskloofs Stone Inc. A true and correct copy of the Resolution for Deposit Account is attached hereto as **Exhibit A.**

8. Also on or about June 7, 2023 Mr. DeBeer executed a Truist Signature Card in connection with the Account. A true and correct copy of Baskloofs Stone's signature card is attached hereto as **Exhibit B.**

- 2 -

9. When Mr. DeBeer executed the signature card, he acknowledged that Baskloofs Stone "received the 'Commercial Bank Services Agreement'" and "agree[d] to the terms of each document[.]" (*See* Ex. A.) Likewise, when Baskloofs Stone executed the Resolution for Deposit Account, it acknowledged that "by execution and delivery of this Resolution for Deposit Account the Entity will be bound by the Bank's deposit agreement now existing or as may be amended." (Ex. B, p.1, ¶ I.)

10. Pursuant to the terms of the signature card, Baskloofs Stone was provided with the applicable Commercial Bank Services Agreement ("CBSA") in effect at the time it executed the Signature Card. A true and correct copy of the Truist CBSA that was provided to Baskloofs Stone in June 2023 is attached hereto as **Exhibit C**.

11. Truist updates its CBSA from time to time, and a copy of the current CBSA is available on Truist's website, which is accessible to the public. A copy of the Truist CBSA that has been in effect since October of 2025 is attached hereto as **Exhibit D**.

12. Under the terms of the CBSA, the revised version of the CBSA governs the Account, and Baskloof Stone's maintenance and operation of the Account serve as its consent to the updated terms. (*See* Ex. C, p.3; *see also* Ex. D, p.3.) Additionally, Baskloofs Stone's execution of the Resolution for Deposit Account acknowledged

that the CBSA governs the Account, as it was received when opening the Account or subsequently amended. (Ex. A, p.1.)

13. The 2023 and October 2025 BSA contain a binding and enforceable arbitration provision. (*See* Ex. C, pp.4–8; *see* Ex. D, pp.4–9.)

14. The records referenced above and attached hereto are true and correct copies of records kept or obtained by Truist in the ordinary course of business. The records were made by or from information transmitted by an employee or representative with knowledge of the events, recorded therein. The records were made at or near the time of the events recorded therein or reasonably soon thereafter. Except for the redactions of personally identifiable information, account numbers, and transaction and account balances, the records attached are exact duplicates of the originals. It is Truist's regular practice to make and utilize Signature Cards and Commercial Bank Services Agreements for the purpose of establishing an account relationship with account holders like Plaintiff.

15. I declare under penalty of perjury that the foregoing is true and correct.

Executed this _23rd_ day of _January_, 2026.

_____
Andraco Bohannon

- 4 -

# EXHIBIT A

# TRUIST
## RESOLUTION FOR DEPOSIT ACCOUNT

**BASKLOOFS STONE INC** ██████ 8127

Name of Entity | TIN

[X] Corporation
[ ] Unincorporated Association
[ ] Limited Liability Company

[ ] Government Entity
[ ] General Partnership
[ ] Limited Partnership

[ ] Sole Proprietorship
[ ] Non-Profit Corporation
[ ] Other

The undersigned, acting in the capacity as corporate secretary or custodian of records for the above-named Entity, organized and existing under the laws of Georgia _____, represents to Truist Bank ("Bank") that I have reviewed the governing documents and relevant records of the Entity and certify that resolutions or requirements similar to those below are adopted by and, are not inconsistent with the governing documents or records of the Entity, and that such resolutions or requirements are current and have not been amended or rescinded.

I. That the Bank is designated as a depository institution for the Entity and that by execution and delivery of this Resolution for Deposit Account the Entity will be bound by the Bank's deposit account agreement now existing or as may be amended. Any officer, agent or employee of the Entity is authorized to endorse for deposit any check, drafts or other instruments payable to the Entity, which endorsement may be in writing, by stamp or otherwise, with or without signature of the person so endorsing.

II. That any one individual named below (a "Designated Representative") is authorized to open accounts on behalf of the Entity, to close any account or obtain information on any account. Any one Designated Representative may appoint others (an "Authorized Signer") to conduct transactions on an account by authorizing them to sign their name to the signature card.

| Designated Representative (Signature) | Printed Name | Title |
|---|---|---|
|  | Izak G DeBeer | President |
| | Sharon Griffies | Controller |
| | | |
| | | |
| | | |

III. That the Bank is authorized upon the signature of any one signer on a signature card to honor, pay and charge the account of the Entity, all checks, drafts, or other orders for payment, withdrawal or transfer of money for whatever purpose and to whomever payable.

IV. That any one Designated Representative may appoint, remove or replace an Authorized Signer, enter into a night depository agreement, enter into an agreement for cash management services, enter into an agreement for treasury services or products, lease a safe deposit box, enter into an agreement for deposit access devices, enter into an agreement for credit cards, enter into an agreement relating to foreign exchange and obtain online foreign exchange services related thereto, or enter into any other agreements regarding an account of the Entity.

### FOR BANK USE ONLY

Prepared By **B45188**

Center **8460870**

Date **06/07/2023**

Bank No. **404**    State **GA**

Forward to:
Centralized Document Scanning Operations
M/C 100-99-15-11

RESRES404204028127

8010 (2303)

Page 1 of 2

V. That any prior resolutions or requirements have been revoked or are no longer binding, and that this Resolution for Deposit Account applies to all accounts at the Bank and will remain in full force and effect until rescinded, replaced or modified in writing in a form acceptable to the Bank and after the Bank has had a reasonable time to act on such change.

VI. That any transaction by an officer, employee or agent of the Entity prior to the delivery of this Resolution for Deposit Account is hereby ratified and approved.

DATED: **06/07/2023**

SIGNATURE

## SHARON GRIFFIES

PRINTED NAME

# EXHIBIT B

(Page 1 of 1)

**TRUIST SIGNATURE CARD**

NAME AND ADDRESS OF DEPOSITOR

**BASKLOOFS STONE INC**
**DBA DEBEER GRANITE & MARBLE**

**145 MALLORY CT**
**TYRONE   GA   30290**

| ACCOUNT NUMBER | OWNERSHIP DESIGNATION | ACCOUNT OPENING DATE | REVISED CARD DATE |
|---|---|---|---|
| ████0274 | Corporation | 06/07/2023 | |

Opened/Updated By Michelle Nasworthy   22959   Approved By _____   Branch Location 8460870

IDENTIFICATION

Type of ID SSID ____ Issued By GA ____ ID Number ████   Expiration Date _____   Date of Birth _____

Second Type of ID _____ Issued By _____ ID Number _____   Expiration Date _____

Employer _____   Cell Phone Number ( ____ ) _____   Home Phone Number ( ____ ) _____

Address as listed on ID _____   Work Phone Number ( 770 ) 486-5687

IDENTIFICATION

Type of ID _____ Issued By _____ ID Number _____   Expiration Date _____   Date of Birth _____

Second Type of ID _____ Issued By _____ ID Number _____   Expiration Date _____

Employer _____   Cell Phone Number ( ____ ) _____   Home Phone Number ( ____ ) _____

Address as listed on ID _____   Work Phone Number ( ____ ) _____

Check Appropriate Box for Depositor

[ ] Individual / Sole Proprietor / single-member LLC  [ ] C Corporation  [✓] S Corporation  [ ] Partnership  [ ] Trust/Estate  [ ] Limited Liability Company

Enter the tax classification (C = C corporation , S = S corporation, P = Partnership) [ ]

Note:  Check the apprpriate box in line above for the tax classification of the single-member owner.  Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes.  Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

[ ] Other (See Instructions.) _____

Exemptions: See Instructions Exempt Payee code (if any) [ ]  Exemption from FATCA reporting code (if any) [ ]  N/A (applies to accounts maintained outside the U.S.)

Certification - Under penalties of perjury, I, as authorized agent of the Depositor certify that:

1. The Depositor's correct taxpayer identification number is printed below (or the Depositor is waiting for a number to be issued), and
2. The Depositor is not subject to backup withholding because: (a) the Depositor is exempt from backup withholding, or (b) the Depositor has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified the Depositor that it is no longer subject to backup withholding, and
3. The Depositor is a U.S. citizen or other U.S. person (defined in the instructions); and
4. The FATCA codes(s) entered on this form (if any) indicating that the Depositor is exempt from FATCA reporting is correct.

Certification Instructions.  You must cross out item 2 above if the Depositor has been notified by the IRS that the Depositor is currently subject to back withholding because the Depositor has failed to report all interest and dividends on the Depositor's tax return.

Form W-9 Instructions.  Instructions to the Form W-9, including definitions, are available upon request.

**Complete as applicable - only one beneficiary permitted if an entity.**

Name of Beneficiary: _____   SSN/EIN: _____   Relationship: _____

Address of Beneficiary: _____

ID: _____

Name of Beneficiary: _____   SSN/EIN: _____   Relationship: _____

Address of Beneficiary: _____

ID: _____

Name of Beneficiary: _____   SSN/EIN: _____   Relationship: _____

Address of Beneficiary: _____

ID: _____

## BUSINESS ACCOUNTS

**By my/our signature below, I/We certify that:** (1) I/We have received the "Commercial Bank Services Agreement" and the "Business Deposit Accounts Fee Schedule" and on behalf of the Depositor agree to the terms of each document; and (2) I/We give consent to verify my/our credit references.

Please sign beside the Printed Name(s) only.  If signature line does not have a Printed Name, then a signature is not required on that line.

*The Internal Revenue Service does not require your consent to any provision of this document other than the certifications in the box above which are required to avoid backup withholding.*

| ████8127 | Baskloofs Stone Inc | *Izak G DeBeer* (signature) | 06/07/2023 |
|---|---|---|---|
| TIN of Depositor | Printed Name of Depositor | | DATE |

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| TIN of Signer | Printed Name of Signer | | DATE |

8005XX_BB (2110)

# EXHIBIT C

# Commercial Bank Services Agreement

TRUIST ⊞

**TABLE OF CONTENTS**

A. Legal Agreement.................................................................................................... 3

B. Arbitration Agreement ........................................................................................... 4

C. Jury Trial Waiver ...................................................................................................8

D. Litigation Class Action Waiver............................................................................... 8

E. Account Opening ................................................................................................... 8

F. Account Types .....................................................................................................10

G. Account Rules......................................................................................................12

1. Statements ...........................................................................................................13

2. Deposits and Credits ............................................................................................13

3. Night Deposit Services..........................................................................................14

4. Withdrawals and Debits .......................................................................................17

5. Fraud and Unauthorized Transactions ..................................................................23

6. Bank's Stipulations/Right to Close Account ..........................................................25

7. Right to Freeze Account........................................................................................26

8. Right of Setoff......................................................................................................26

9. Stop Payment Orders............................................................................................27

10. Legal Process on Your Account..............................................................................27

11. Power of Attorney................................................................................................28

12. Governing Laws ...................................................................................................28

13. Costs and Expenses .............................................................................................28

14. Contacts and Alerts .............................................................................................29

15. Dormant Accounts...............................................................................................29

16. Authorization of Transfers....................................................................................29

H. Rules Applicable to Certain Accounts....................................................................29

1. Checking Sub-Accounts.........................................................................................29

2. Non-Interest Bearing Checking Accounts...............................................................30

3. Interest Bearing Checking Accounts.......................................................................30

4. Money Market and Savings Accounts.....................................................................31

I. Certificates of Deposit..........................................................................................31

J. Availability of Funds ............................................................................................33

K. Commercial Funds Transfers.................................................................................37

## A. LEGAL AGREEMENT

This Commercial Bank Services Agreement ("Agreement"), contains the terms and conditions that govern the relationship between Truist Bank, (the "Bank," "we" or "us") and its clients (the "Depositor," "you," "your," or "Organization,"). When you open an account you are agreeing to the terms of this Agreement. An account is deemed "open" when account documentation has been properly completed and accepted by the Bank and the account opening deposit
has been accepted by the Bank. The terms of this Agreement will continue to govern your account and relationship with the Bank even after your account is closed. The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included on your account statement. The notice may explain what change has occurred and instruct you to obtain a current version of the Agreement at your local branch or online at our website, www.Truist.com. Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of this Agreement with or without notice. Continuing to maintain your account following a notice constitutes your acceptance of our changes. This Agreement cannot be changed or modified by you. Upon the effective date of a change by the Bank, the current revised version of the Agreement will govern your account, regardless of whether you obtained a copy
from your branch or online. If your account was originally with a prior financial institution, the terms of this Agreement supersede any prior agreements, representations or understandings you may have had with that institution. If a language preference is requested, we may provide a translated version of our materials and documents. The English version of such documents shall be the governing documents for all purposes.

**Applicability.** By signing the Resolution for Deposit Account, account signature card or conducting transactions on your account, you have agreed to the terms of this Agreement which applies to all business accounts that you have with the Bank or may have in the future. You agree that you will not use your account for any personal, family or household purposes. This Agreement is for the benefit of, and may be enforced only by, you and the Bank and their respective successors and permitted transferees and assignees, and is not for the benefit of, and may not be enforced by, any third party. The Bank shall have no liability for its failure to perform any service as a result of computer or electronic interruptions or for the errors, acts or failures to act by others.

You acknowledge and agree that the relationship between you and the Bank created by the opening of an account is of debtor and creditor and that the Bank is not in any way acting as a fiduciary for you or for your benefit and that no special relationship exists between you and the Bank.

**Fees.** You agree to pay the Bank for all services provided in connection with your account(s) in accordance with the Bank's current schedule of maintenance fees, activity charges, and minimum and/or average balance requirements which are contained in a separate document called the "Business Deposit Accounts Fee Schedule." The Bank may change its maintenance fees, activity charges, and minimum and/or average balance requirements from time to time and will provide you notice of any change. The terms of the Business Deposit Accounts Fee Schedule, as they may be amended from time to time, are incorporated herein by reference. For the fees associated with the account or services utilized on the account, that are billed through Account Analysis, charges will be that amount recorded by the Bank's Account Analysis System. Treasury management or other services may incur additional fees that are also charged through Account Analysis in the manner and amount as agreed by separate agreement. Account Analysis charges are billed for the prior month's activity.

**Earnings Credit Rate (ECR).** ECR is applied to certain deposit accounts and can be used to lower or eliminate certain deposit and treasury management fees. ECR is a variable rate and may change any time at the Bank's discretion, and may be a rate of zero. The earnings credit on all applicable accounts is calculated by applying a monthly periodic rate to the monthly average positive available balance in the account each month as follows: **monthly average positive available balance x ECR / days in the year x days in the month.** Unless otherwise agreed upon, earnings credit is applied to
your account on a monthly basis, and unused earnings credit during a month cannot be used in following months. If the earnings credit for a given month is less than the total of service charges, then the applicable fees will be assessed to the account. For purposes of this paragraph, the term "average positive available balance" means the average account balance for the statement cycle less the average amount of each day's deposit that is in the process of collection.

**Waiver.** No term of this Agreement shall be deemed waived unless the waiver shall be in writing and signed by an authorized officer of the Bank. Any failure by the Bank to insist upon your strict performance of any of the terms of this Agreement shall not be deemed or construed as a waiver of these or any other terms. Neither party shall, by mere lapse

of time, be deemed to have waived any breach by the other party of any terms or provisions of this Agreement. The waiver by either party of any breach shall not affect the right of the Bank to enforce any of its rights with respect to other customers or to enforce any of its rights with respect to later transactions with you and is not sufficient to modify the terms and conditions of this Agreement.

**Severability.** If any provision, or a portion thereof, of this Agreement or its application to any party or circumstance shall be declared void, illegal, or unenforceable, the remainder of the provision and the Agreement shall be valid and enforceable to the extent permitted by law.

## B.     ARBITRATION AGREEMENT <u>MUTUAL ARBITRATION AGREEMENT</u>

**READ THIS PROVISION CAREFULLY BECAUSE IT HAS A SUBSTANTIAL IMPACT ON HOW DISPUTES AND CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.**

**For any Claim subject to arbitration, neither You nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration. Unless You choose to opt out of mutual arbitration in the manner and time specified below, You and we mutually agree that, if either party demands arbitration, the Parties will resolve any and all disputes between them exclusively through final, binding, and individual arbitration under the terms of this Mutual Arbitration Agreement, including its pre-arbitration dispute resolution process, instead of filing or proceeding with a lawsuit in court (except as otherwise provided below). However, this Mutual Arbitration Agreement does not cover disputes that, as a matter of law, may not be subject to pre-dispute arbitration agreements.**

**Requirement to Arbitrate.** Upon the demand of You or us, any Claim(s) will be resolved by individual (as opposed to class, consolidated, collective, or representative) binding arbitration under the terms specified in this Mutual Arbitration Agreement. A "Claim" subject to arbitration is any claim, cause of action, dispute, or controversy between You and us (other than an Excluded Claim or Proceeding as defined below), whether preexisting, present, or future, which arises out of or relates to the Account, this Commercial Bank Services Agreement, any transaction conducted with us in connection with the Account or this Commercial Bank Services Agreement, or any aspect of our relationship. "Claim" has the broadest possible meaning and includes initial claims, counterclaims, cross-claims, third-party claims, and federal, state, local, and administrative claims. It includes disputes based in contract, tort, consumer rights, fraud, and other intentional torts, a state or the federal Constitution, statute, regulation, ordinance, common law, and equity, and includes claims for money damages and injunctive or declaratory relief. "Claim" also includes disputes concerning the use or disclosure of information about You or us, as well as disputes concerning communications involving telephones, cell phones, automatic dialing systems, artificial or prerecorded voice messages, text messages, emails, or facsimile machines, such as alleged violations of the Telephone Consumer Protection Act and other statutes or regulations involving telemarketing.

**Special Definition of "We," "Us," "Our," and "Parties."** Solely for purposes of this Mutual Arbitration Agreement, the terms "Truist," "we," "us," "our," and "Parties," in addition to the meanings set forth in this Commercial Bank Services Agreement, also refer to Truist Bank and its employees, agents, officers, directors, parents, controlling persons, subsidiaries, affiliates, predecessors, successors, and assigns. The "Parties" refers to both You and Truist. "We," "us," "our," and "Parties" also apply to third parties if You or Truist assert a Claim against such third parties in connection with a Claim You assert against us or Truist asserts against You.

**Excluded Claims and Proceedings.** Notwithstanding the foregoing, "Claim" does not include any individual action brought by You or us in small claims court or Your state's equivalent court, unless such action is transferred, removed, or appealed to a different court or the matter is not brought on an individual basis (i.e., a class, consolidated, collective, or representative basis). In addition, nothing in this Mutual Arbitration Agreement prevents You or us from exercising of any self-help rights, including set-off as described in the Commercial Bank Services Agreement section titled "Right of Setoff." Any individual action in court by You or us that is limited to preventing the other party from using a self-help remedy and that does not involve a request for damages or monetary relief of any kind does not constitute a "Claim" that must be arbitrated. The institution and/or maintenance of any such right, action, or litigation shall not constitute a waiver of the right of either of the Parties to compel arbitration regarding any other dispute subject to arbitration pursuant to this Mutual Arbitration Agreement. Moreover, the term "Claim" also does not include any disagreement over the arbitrability of a dispute, whether a dispute can or must be arbitrated, or whether this Mutual Arbitration Agreement or any aspect thereof is unenforceable, or any dispute regarding the provisions labeled "Pre-Arbitration Dispute Resolution" or "Class, Consolidated, Collective, and/or Representative Action Waiver," including whether they are unenforceable or have been breached; such disputes or issues must be decided only by a court of

competent jurisdiction and not by an arbitrator or arbitration administrator.

**Federal Arbitration Act.** Notwithstanding any choice of law or other provision in this Commercial Bank Services Agreement, the Parties agree and acknowledge that this agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act (Title 9 of the United States Code) ("FAA") shall govern its interpretation and enforcement and proceedings pursuant thereto. The Parties expressly agree that this Mutual Arbitration Agreement shall be governed by the FAA even in the event You and/or Truist are otherwise exempted from the FAA. If for whatever reason the rules and procedures of the FAA cannot apply, the state law governing arbitration agreements in the state in which You reside shall apply.

**Class, Consolidated, Collective, and/or Representative Action Waiver. The Parties mutually agree that if You or we elect to arbitrate a Claim, such Claim will be resolved in individual arbitration. The Parties further agree that, to the maximum extent allowable by law, they waive the right to have any Claim brought, heard, administered, resolved, or arbitrated as a class, consolidated, collective, or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, consolidated, collective, and/or representative action, or to award relief to or for the benefit of anyone but the individual Parties in arbitration.** The Parties also waive the right to bring any claims for public injunctive relief or other non-individualized injunctive relief. This Class, Consolidated, Collective, and/or Representative Action Waiver does not prevent You or Truist from participating in a settlement of claims on a class-wide, consolidated, collective, or representative basis, to the extent You or we do not exercise a right to opt out of such settlement. If, after exhaustion of all appeals, any of these prohibitions on class, consolidated, collective, or representative claims or public or non-individualized injunctive relief is found to be unenforceable with respect to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the Parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**Arbitration Procedures.**

a)  **Pre-Arbitration Dispute Resolution:**  The Parties agree that good faith informal efforts to resolve a dispute often can result in a prompt, low-cost, and mutually beneficial outcome. As a result, before commencing arbitration, the Parties must engage in a good faith effort to resolve any Claim covered by this Mutual Arbitration Agreement by providing a written notice of dispute and participating in an informal dispute resolution conference. The party who wishes to assert a Claim must first give notice to the other party in writing of the intent to initiate arbitration ("Notice of Pre-Arbitration Dispute").  A Notice of Pre-Arbitration Dispute must contain the claimant's name, telephone number, mailing address, and e-mail address, the Account number of any Account at issue, a factual description of the nature and basis of the dispute, including the basis and amount of any claimed damages, the amount that the claimant is seeking for resolution of the dispute, and the original personal signature of the party (a digital, electronic, copied, or facsimile signature is not sufficient) and, if the claimant is represented by counsel, a signed statement authorizing the other party to share information about the Account and the Claim with such counsel. After the Notice of Pre-Arbitration Dispute is provided, the Parties will engage in an informal dispute resolution conference by telephone or videoconference to discuss the Claim and see if a resolution can be reached. If either party is represented by counsel, that party's counsel may participate in the conference, but both You and a Truist representative must personally participate in the conference unless You and we agree otherwise in writing. For the protection of Your confidential Account information, multiple customers cannot participate in the same informal dispute resolution conference unless mutually agreed to by all Parties. The informal dispute resolution conference shall occur within sixty (60) days of receipt of the Notice of Pre-Arbitration Dispute, unless an extension is mutually agreed to by the Parties. The Parties shall negotiate in good faith to select a mutually agreeable time. Nothing in this Mutual Arbitration Agreement shall prohibit the Parties from engaging in informal communications to resolve the initiating party's Claim at any time, including before the informal dispute resolution conference. Engaging in an informal dispute resolution conference is a requirement that must be fulfilled before commencing arbitration. The Parties agree that the statute of limitations shall be tolled between the period when a fully complete Notice of Pre-Arbitration Dispute Resolution is received and the completion of the informal dispute resolution conference. If You are initiating the Claim, the Notice of Pre-Arbitration Dispute must be clearly marked "Notice of Pre-Arbitration Dispute" and delivered to Truist Bank Legal Department, Attn: Notice of Pre-Arbitration Dispute, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224. If we are initiating the Claim, we will send the Notice of Pre-Arbitration Dispute to the most recent address for You in our files. If any offers of settlement are discussed by the Parties, such information about the proposed settlement will not be disclosed in the arbitration. The Pre-Arbitration Dispute Resolution and informal dispute resolution conference requirements are essential in order to give the Parties a meaningful chance to resolve Claims informally. If any aspect of these requirements has not been met, the Parties agree that a court can enjoin the filing or prosecution of an arbitration, and, unless prohibited by law, no arbitration provider shall either accept or administer the arbitration or assess fees in connection with such an arbitration.

b)  After completion of the informal dispute resolution conference, if the Claim remains unresolved, either You or

Truist may initiate arbitration by submitting a demand for arbitration to the arbitration administrator. The demand must include (1) the name, telephone number, mailing address, and e-mail address of the party seeking arbitration; (2) the Account number of any Account at issue; (3) a statement of the legal claims being asserted and the factual basis of those claims; (4) a description of the remedy sought and an accurate, good-faith calculation of the amount in controversy, enumerated in United States Dollars (any request for injunctive relief or attorneys' fees shall not count toward the calculation of the amount in controversy unless such injunctive relief seeks the payment of money); (5) the original personal signature of the party seeking arbitration (a digital, electronic, copied, or facsimile signature is not sufficient); and (6) the party's portion of the applicable filing fee. The party initiating arbitration must serve the demand on the other party via certified mail, return receipt requested, or hand delivery. If the party seeking arbitration is represented by counsel, counsel must also provide an original personal signature on the demand for arbitration (a digital, electronic, copied, or facsimile signature is not sufficient). Counsel must also provide a certification that, to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Any demand for arbitration by You must be delivered to Truist Bank Legal Department, Attn: Arbitration Election, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224, and any demand for arbitration by us must be sent to the most recent address for You in our files.

c)        If a party files a lawsuit in court asserting any Claim(s) that are subject to arbitration and the other party demands arbitration or files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party bringing the Claim(s) to follow the pre-arbitration dispute resolution procedures and – if the dispute is not resolved - to commence the arbitration proceeding with an arbitration administrator in accordance with this Mutual Arbitration Agreement and the administrator's rules and procedures. Nothing in that litigation shall constitute a waiver of any rights under this Mutual Arbitration Agreement.

d)        The arbitration will be administered by JAMS, 18881 Von Karman Ave., Suite 350, Irvine, CA 92612, www.jamsadr.com, 800-352-5267. The rules and forms of JAMS may be obtained by writing to JAMS at the address listed above or visiting their website. If JAMS cannot or will not administer the arbitration in accordance with this Mutual Arbitration Agreement, the Parties may agree upon another administrator, or if they are unable to agree, a court shall determine the administrator. No company may serve as administrator if it fails to abide by the terms of this Mutual Arbitration Agreement unless all Parties otherwise consent. The arbitration will proceed in accordance with this Mutual Arbitration Agreement and the administrator's rules and procedures in effect at the time of commencement of the arbitration, including any streamlined or expedited arbitration rules, but in the event of a conflict between the two, the provisions of this Mutual Arbitration Agreement shall supersede any and all conflicting arbitration administrator's rules or procedures. To the extent there is a dispute over which arbitration provider shall administer the arbitration, only a court (and not an arbitrator or arbitration administrator) can resolve that dispute, and the arbitration shall be stayed until the court resolves that dispute.

e)        In addition to all other requirements in this Mutual Arbitration Agreement, the following provisions shall apply to all arbitrations between the Parties: (1) Truist and You shall equally share filing fees and other similar and usual administrative costs unless otherwise provided by the rules of the administrator; (2) both Parties agree not to oppose or interfere with any negotiations or agreements between the other Party and the arbitration administrator relating to a party's portion of the fees. The arbitrator, however, may disallow any private agreement between an administrator, on the one hand, and the negotiating party, on the other hand, if the arbitrator believes that the private agreement undermines his or her neutrality as arbitrator; (3) the arbitrator may issue orders (including subpoenas to third parties) allowing the Parties to conduct discovery sufficient to allow each party to prepare that party's claims and/or defenses, taking into consideration that arbitration is designed to be a speedy and efficient method for resolving disputes; (4) except as provided in the Class, Consolidated, Collective, and/or Representative Action Waiver, the arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law under the circumstances (including statutory awards of attorneys' and expert witness fees and punitive damages) but shall not be empowered to award any remedies that would not have been available in a court of law for the claims presented in arbitration. The arbitrator shall apply state or federal substantive law, or both, as is applicable; (5) the arbitrator may hear motions to dismiss and/or motions for summary judgment; (6) the arbitrator's decision or award shall be in writing with findings of fact and conclusions of law; (7) any finding that a claim or counterclaim violates the standards set forth in Federal Rule of Civil Procedure 11 shall entitle the other party to recover attorneys' fees, costs, and expenses associated with defending against the claim or counterclaim; (8) either Truist or You may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief the arbitration may be rendered ineffectual; (9) under no circumstances is an arbitrator or court bound by decisions reached in separate arbitrations involving different parties; (10) the arbitrator shall honor all evidentiary

privileges recognized by applicable law, including the attorney-client privilege and attorney work product doctrine; and (11) if at any time the arbitrator or arbitration administrator fails to enforce the terms of this Mutual Arbitration Agreement, either party may seek to enjoin the arbitration proceeding in a court of competent jurisdiction, and the arbitration shall automatically be stayed pending the outcome of that proceeding.

f)       A single arbitrator will be selected in accordance with the rules of the administrator, and unless You and Truist agree otherwise, must be a practicing attorney with ten or more years of experience or a retired judge. Except as specifically stated herein, the arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, or by state or local laws that relate to arbitration provisions or proceedings. A judgment on the award may be entered by any court having jurisdiction.

**Survival and Severability.** This Mutual Arbitration Agreement shall survive the closing of Your Account and the termination of any relationship between us, including the termination of this Commercial Bank Services Agreement. Except as specified in the Class, Consolidated, Collective, and/or Representative Action Waiver, if any portion of this Mutual Arbitration Agreement is found unenforceable, it shall be severed from the Mutual Arbitration Agreement such that the remainder of this Mutual Arbitration Agreement shall be enforceable to the fullest extent permitted by law. A determination that this Mutual Arbitration Agreement is unenforceable or void in its entirety shall have no effect on the validity or enforceability of any other arbitration agreement between or applicable to the Parties.

**Effect of Arbitration Award.** The arbitrator's award shall be final and binding on all Parties, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $250,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $250,000, any party can, within thirty (30) days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the Administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Mutual Arbitration Agreement to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. Any filing fees and other similar and usual administrative costs of such an appeal will be borne by the Party taking the appeal subject to a reallocation of the arbitrator panel as justice requires. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA. No arbitration award involving the Parties will have any preclusive effect as to issues or claims in any dispute involving anyone who is not a party to the arbitration, nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the Parties to this agreement.

**Right to Opt Out (New Accounts) – Please Read.** You may opt out of this Mutual Arbitration Agreement within thirty (30) days of opening Your Account. In order to opt out, You, and only You personally, must notify Truist of Your intention to opt out by submitting to Truist, via certified mail or by overnight carrier mail, return receipt requested, to Truist Bank Legal Department, Attn: Arbitration Opt Out, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224, a written notice stating that You are opting out of this Mutual Arbitration Agreement. This written notice must be signed by You, and not any attorney, agent, or other representative of Yours and include Your name, address, Account name, and Account number. In order to be effective, Your opt-out notice must be received by Truist within thirty (30) days of opening Your Account. This is the sole and only method by which You can opt-out of this Mutual Arbitration Agreement and any attempt to reject this Mutual Arbitration Agreement by any other person or through any other method or form of notice, including the filing of a lawsuit, will be ineffective. You agree that Your opt-out of this Mutual Arbitration Agreement shall not be imputed to any other person or entity or be deemed to be a rejection of this Mutual Arbitration Agreement by any person or entity other than You. Your opt-out of this Mutual Arbitration Agreement shall not eliminate the obligation of other persons or entities who wish to reject this Mutual Arbitration Agreement to personally comply with the notice and time requirements of this paragraph. If You opt out as provided in this subparagraph, You will not be subject to any adverse action as a consequence of that decision and may pursue available legal remedies without regard to this Mutual Arbitration Agreement. If Truist does not receive proper notice of a timely opt out, You are agreeing to the terms of this Mutual Arbitration Agreement.

a)       You may only opt out on behalf of Yourself. A written notice submitted to Truist indicating Your intention to opt out may apply, at most, to You. You (and Your agent or representative) may not effectuate an opt out on behalf of other individuals.

b)       Your decision to opt out of this Mutual Arbitration Agreement will not relieve You of any obligation to arbitrate disputes that might arise under any other Account or agreement with Truist that contains an arbitration provision to which You may be bound as a customer. Similarly, Your decision to opt out of another arbitration provision contained in any other Account or agreement shall not relieve You of Your obligation to arbitrate disputes pursuant to this Mutual Arbitration Agreement.

**Impact on Pending Litigation.** This Mutual Arbitration Agreement shall not affect Your existing rights with respect to any litigation between Truist and You that is pending in a state or federal court or arbitration as of the date of this

Mutual Arbitration Agreement. However, if on such date You were bound by an existing arbitration agreement with Truist then that agreement shall continue to apply.

**Right to Consult with an Attorney.** You have the right to consult with private counsel of Your choice, at Your own expense, with respect to any aspect of, or any Claim that may be subject to, this Mutual Arbitration Agreement.

## C. JURY TRIAL WAIVER

TO THE EXTENT PERMITTED BY APPLICABLE LAW, FOR ANY MATTERS NOT SUBMITTED TO ARBITRATION, DEPOSITOR AND BANK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF THIS COMMERCIAL BANK SERVICES AGREEMENT, RELATING TO THE ACCOUNT, OR ANY OTHER DISPUTE OR CONTROVERSY BETWEEN YOU AND US OR ANY OF TRUIST'S EMPLOYEES, OFFICERS, DIRECTORS, PARENTS, CONTROLLING PERSONS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, AND ASSIGNS.

## D. LITIGATION CLASS ACTION WAIVER

TO THE EXTENT PERMITTED BY APPLICABLE LAW, FOR ANY MATTERS NOT SUBMITTED TO ARBITRATION, DEPOSITOR AND BANK HEREBY AGREE THAT ANY LITIGATION ARISING OUT OF THIS COMMERCIAL BANK SERVICES AGREEMENT, RELATING TO THE ACCOUNT, OR ANY OTHER DISPUTE OR CONTROVERSY BETWEEN YOU AND US OR ANY OF TRUIST'S EMPLOYEES, OFFICERS, DIRECTORS, PARENTS, CONTROLLING PERSONS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, AND ASSIGNS WILL PROCEED ON AN INDIVIDUAL BASIS AND WILL NOT PROCEED AS PART OF A CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION AND THE DEPOSITOR AND BANK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE ANY RIGHT TO PROCEED IN A CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION OR TO SERVE AS A CLASS REPRESENTATIVE.

## E. ACCOUNT OPENING

**Required Information.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When you open an account, or when you are added to an existing account, we will ask for your name, permanent physical street address, social security number or tax identification number, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license, state ID, passport, or other primary identification documents. If you are a nonresident alien, we will record your passport number, the name of the country that issued the passport and your foreign address. We will accept a post office box only as a mailing address. You may also be asked to provide such information at other times (and on any qualifying account) upon request of the Bank. You agree to assist the Bank in gathering information to meet any bank reporting requirements. You further agree to notify us immediately if there are any changes to the information you have provided us so we maintain the currency and accuracy of this information. If at any time we determine that the information you provided to us was false, incorrect, or of concern to the Bank, or if you refuse to provide us with the information when requested, we may close or freeze any or all of your accounts.

**Foreign Account Tax Compliance Act ("FATCA").** If interest from your account is payable to certain foreign financial institutions, investment funds, or other non-financial foreign entities you are required to certify your FATCA status and provide any other applicable information at the Bank's request. Failure to provide such certification or information may result in a 30% withholding on the payment of interest. The Bank shall not be liable for any additional amounts you may owe as a result of your failure to comply with FATCA.

**IRS Requirements.** The Internal Revenue Service (IRS) requires the Bank to obtain the taxpayer identification number (TIN) applicable to an account. We require you to certify under penalty of perjury that the TIN provided is correct and whether you are subject to backup withholding. The certification is completed on the Bank's signature card, or on IRS Form W-9, Request for Taxpayer Identification Number and Certification. Federal law requires that the Bank withhold a statutory amount of interest payments or dividend payments (referred to as backup withholding) if you:

- Fail to furnish a Taxpayer Identification Number ("TIN"), or
- The Internal Revenue Service notifies us that you furnished an incorrect TIN, or
- You or we are notified by the Internal Revenue Service that you are subject to backup withholding.

If a correct TIN is not provided at the time the account is opened, backup withholding will commence immediately. You must provide us with your TIN promptly after you receive it. After sixty (60) days, if a certified TIN is not furnished, the account may be closed.

Certain additional Internal Revenue Service penalties may also apply if you fail to provide your TIN.

The TIN for a U.S. citizen or an eligible resident alien individual is a Social Security number. For resident or non-resident alien individuals who do not have, or are ineligible for, a Social Security number, the TIN is an IRS Individual Taxpayer Identification Number ("ITIN"). For legal entities, estates and trusts the TIN is their Employer Identification Number. For an account to be classified as a "non-resident alien account" all owners of the account must certify their foreign status at the time the account is opened on a Form W-8. Non-resident aliens must recertify their foreign status every three years.

**OFAC Compliance.** The Department of Treasury's Office of Foreign Assets Control (OFAC) administers and enforces economic sanctions programs implemented by the government. We are required to comply with all OFAC sanctions, which may include rejecting or blocking transactions or funds of certain individuals and entities. Such restrictions may include transactions involving the government of or a citizen of Cuba or with the governments of or individuals or entities located in Iran, North Korea, Syria, Cuba or other countries as designated by OFAC in the future. By opening an account with us, you agree and affirm that you are not a prohibited individual or entity under any of the sanctions programs administered or enforced by OFAC, including those restrictions listed in the previous sentence. In addition, you agree that if you (or another joint owner or authorized person) are ever located within the countries of Iran, North Korea, Syria or Cuba, you (or another joint owner or authorized person) will not use, access or attempt to use or access any account you have with us. You agree that we can freeze and/or reject any transaction we reasonably believe violates any of the OFAC sanctions programs or Bank policy or procedure. You acknowledge and agree that any transaction to or from your account may be delayed or suspended and that a hold may be placed on your account while a transaction is reviewed for possible violations of any of the OFAC sanctions programs and that we will have no liability for any such delays, suspensions, holds and/or any resulting unavailability of funds.

**Unlawful Transactions.** You certify that you will not use your account or any Bank service for any illegal transactions or activity including but not limited to those activities prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et. seq. Further, you represent and warrant that all transactions initiated or conducted by you are legal and not in violation of the Unlawful Internet Gambling Enforcement Act or any other law. Transactions reasonably believed by the Bank to be used for or associated with unlawful activity may be rejected or stopped and the associated account(s) closed immediately and without prior notice. Obligations owed before any improper transaction or account closure will remain in full force. All liabilities and costs associated with rejected or stopped transactions or closed accounts are assumed by the account holder.

**Collateralized Accounts.** If you hold an account that has been collateralized by the Bank with securities, letters of credit or other assets, upon account withdrawal, you relinquish any claim on the collateral associated with the withdrawn balances.

**Agreement to Receive Electronic Communications.** We may provide all legal or regulatory communications associated with your account, including communications about a change in the terms of your account electronically, although you must complete a separate enrollment if you would like to stop receiving paper statements.

We may deliver the communications to you electronically by any of the following methods: (a) via email to an address you have provided to us; or (b) via a wireless device you have designated; or (c) to the extent permissible by law, via a web site that we will generally designate in advance for such purpose; or (d) any other electronic means we have mutually agreed upon. Delivery of electronic communications by any of these methods will be considered "in writing" and you agree that the electronic communications have the same legal effect as written and signed paper communications. You agree to promptly notify us of any change in your contact information, such as your email address or mobile phone number. You may update your contact information by contacting us at 844-4TRUIST.

You may withdraw your consent to receive electronic communications by contacting us at 844-4TRUIST. You may

obtain paper copies of the electronic communications by calling us at 844-4TRUIST.

The minimum system requirements to access and retain the electronic communications are: an internet-enabled computer or telecommunications device with 128-bit encryption, sufficient storage capacity and software that enables you to view files in the Portable Document Format ("PDF").

**Privacy Policy.** Our privacy policy, which is provided at the time you open an account, is described in our publication, "The Truist Consumer Privacy Notice". For current privacy practices, you may access our website at www.Truist.com.

**Sharing Information.** To allow Truist to analyze your potential financial needs, or as part of the qualifying and maintenance process for depositors, you authorize Truist, to the extent permitted under applicable law, to obtain information from credit reporting agencies, Early Warning Systems or similar agencies, as we deem necessary. You understand such information will be used by Truist for internal purposes only. Further, you authorize us to share with our Truist affiliates your non-public or confidential information for marketing or other purposes. If you do not wish us to share confidential information with Truist affiliates (referred to as "opting out" of information sharing), you can make that election by calling 1-888-800-3420.

**Telephone Monitoring and Recording.** You agree that Truist may monitor and/or record any telephone conversation with you for any legal reason, including to monitor the quality of service you receive and to verify transaction related information. You agree that Truist is not required to remind you before or during each telephone call that the conversation is subject to being monitored and/or recorded in accordance with applicable state and federal law.

**Bank Reporting Requirements.** Banks are required to file a report called a Currency Transaction Report (CTR) with the Internal Revenue Service whenever it has currency transactions that exceed $10,000 in one business day. This includes both single and multiple transactions, transactions to or from or on behalf of any one individual or other entity, or in or out of any one account, and exchanges of currency. Banks are also required to file other reports with the U.S. Treasury Department when a transaction is conducted or attempted by, at, or through a bank, involves or aggregates at least $5,000 in funds or other assets, and the bank knows, suspects, or has reason to suspect that: (a) the transaction involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation; (b) the transaction is designed to evade any requirements of this part or of any other regulations promulgated under the Bank Secrecy Act; or (c) the transaction has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage, and the Bank knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction. Banks are also required to maintain a record of: (i) sales of certain negotiable instruments such as cashier's checks, money orders, traveler's checks, and other similar instruments when the amount of cash involved is $3,000 to $10,000 inclusive; and (ii) fund transfer of $3,000 or greater. These records must be made available to the U.S. Treasury Department upon request.

Other crimes under the Bank Secrecy Act are: (i) causing or attempting to cause a financial institution to fail to file a currency transaction report; (ii) causing or attempting to cause a financial institution to file an inaccurate report; and (iii) structuring or attempting to structure large transactions with financial institutions into several smaller transactions in an attempt to avoid reporting. Financial institutions, financial institution employees, and individuals may all be subject to prosecution for evading the reporting requirements. There are both civil and criminal penalties associated with violations of these regulations that may carry significant monetary fines and imprisonment. You agree to assist the Bank in gathering information to meet Bank Secrecy Act requirements.

You may be eligible for a qualified exemption from some of the Bank Secrecy Act reporting requirements. To qualify for such exemption, you agree to cooperate with the Bank in collecting the necessary information to meet the exemption certification requirements.

## F. ACCOUNT TYPES

You agree that when you open an account, you have instructed us as to the correct type of account applicable to your Organization. You further represent to the Bank that you are authorized to do business in the manner indicated and that the acts of person(s) opening the account have been ratified. You agree that the Bank may rely on such representations without requiring additional information or documentation and that you will furnish such information upon request. You are solely responsible for meeting any legal requirements to establish and maintain the type of account requested and have a duty to inform us of the status of any change to the Organization. Federal regulations require that you provide us with information concerning the beneficial owners of a legal entity at account opening. You may also be asked to provide such information at other times (and on any qualifying account) upon request of the Bank. If at any time we determine that the beneficial ownership information you provided to us was false, incorrect, or of concern to the Bank, or if you refuse to provide us with the information when requested, we may close or freeze any

or all of your accounts.

If you have opened a deposit account on behalf the beneficial owner(s) of the funds in an account (for example you are acting as a trustee, agent, nominee, guardian, executor, conservator, custodian, or in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass through" insurance from the Federal Deposit Insurance Corporation ("FDIC") in the event of Bank failure. FDIC "pass through" deposit insurance is federal deposit insurance coverage that applies to the interests of owners or beneficiaries. This means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership right and capacity). As the account holder, you must be able to provide a record of the interest of the beneficial owner(s) in accordance with the FDIC's requirements. The FDIC has published a guide and an Addendum to the guide, Section VIII, explaining the process to follow and the information you will need to provide in the event of Bank failure, including the type of information you, as the account holder, must keep regarding the beneficial owner(s) of the funds, as well as the format and process you must follow for submitting those records to the FDIC. The guide and Addendum can be accessed on the FDIC's website at https://www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html. You have an opportunity to validate the capability to deliver the required information in the appropriate format so that a timely calculation of deposit insurance coverage can be made. You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of Bank failure, you agree to provide the FDIC with the information described above in the required format within 24 hours of that event. As soon as the FDIC is appointed, a hold may be placed on your account so that the FDIC can conduct the deposit insurance determination; that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which could delay when the beneficial owners would receive funds. Notwithstanding other provisions in this Agreement, this section survives after the FDIC is appointed as our receiver, and the FDIC is considered a third party beneficiary of this section. Not all accounts may be available in your area or through the method in which your account is opened. The definitions of account or ownership styles outlined in this section are not meant to be all inclusive and additional accounts or styles may be offered by the Bank. The Bank, in its sole discretion, shall not be required to open a particular account type or style. The manner in which you open an account indicates your ownership rights in the account. You agree that when you open an account the titling of the account is correct and that the Bank has no responsibility to inform you as to how the titling may affect your legal interests. If you have any questions as to the legal effects of an account, you should consult with your own attorney or advisor. If a signature card or other document contains a notation or indication that your account is established for a particular purpose (other than an account type listed below) you agree that such notation or indication creates no additional duties on the Bank and is solely for your personal recordkeeping.

The Bank accepts no liability with respect to an account except to the Depositor, and shall not be liable to the Depositor's officers, directors, stockholders, partners, joint venturers or other interested persons. The Bank will rely upon the signature card, resolution or other written designation of Authorized Signers on an account until we have received notice in a form acceptable to the Bank that the authority has been terminated and we have had a reasonable time to act upon the notice. Depositors referenced on the Bank's records as a Designated Representative can add or remove Authorized Signers from the account and can enter into a night depository agreement, enter into an agreement for cash management or treasury services, lease a safe deposit box, enter into an agreement for deposit access devices, enter into an agreement for credit cards, enter into an agreement relating to foreign exchange and obtain online foreign exchange services related thereto, or enter into any other agreements regarding an account of Depositor. If the Authorized Signers on your account change, the Bank may continue to honor items and instructions given earlier by any previously appointed Authorized Signer until we receive specific written notice from you not to do so and have had a reasonable amount of time to act. In such cases, we may require that you close the account and open a new one or place stop payment orders to prevent transactions from occurring.

Each signer named on your signature card is authorized to obtain information on your account, endorse and deposit items payable to your account, sign checks, drafts, items or other written orders and execute Bank's wire transfer agreements used to initiate wires in Bank's branch offices, place and remove stop payment requests and make withdrawals. The Bank does not, however, verify the signatures on every check paid against your account, which is in accordance with industry standards and you agree that this is not a failure by the Bank to exercise ordinary care. When you receive your monthly statement, you should carefully and promptly examine it to verify that only authorized checks have been paid and/or that only authorized transactions have occurred. The Bank will not be liable if we refuse to honor any item that we believe, in our discretion, does not contain a genuine authorized signature.

You agree that the Bank may verify your signature through the signature card or a check or other document that bears your signature. We may use an automated process to obtain an image or sample of your signature from a check that bears your signature. If you create your own checks or obtain them from another source, and we cannot accurately verify your signature on a check by comparing the signature to a check posted to your account, you are responsible for any losses that may result from our inability to use that check to verify your signature.

Accounts are not transferable except on the Bank's books and records. In order to transfer title or to pledge an account as collateral for a loan, a written request must be provided in a form accepted and acknowledged by the Bank. Any pledge of an account to a third-party remains subject to the Bank's right of set-off and security interest. The Bank may determine ownership of an account from the information in our records. Any changes you request us to make to your account are not effective until accepted by us and we have had a reasonable time to act on the new information. If ownership of an account is to be changed, the account should be closed and a new account opened to reflect the ownership designation.

**Corporation Account.** An account owned by a corporation, which performs transactions through its officers.

**Escrow Account.** An account opened by attorneys, brokers, realtors or agents for the purpose of holding funds in escrow (trust) for their clients. If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events. Additionally, you authorize us to remit the interest paid on an attorney trust account to the designated Bar Foundation by ACH pre-authorized debit or by check or by any other method approved by the Federal Reserve System. The terms of any agreement or other document under which the account is opened will govern the account, and the Bank has the right, but not the obligation, to review any such document. The Bank assumes no liability for the administration of any fiduciary relationship whether or not the Bank has been provided with a copy of such document. You agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or third party with respect to the authority, actions, or inaction taken by the authorized individuals in handling or dealing with the account.

**Limited Liability Company Account.** An account for a limited liability company, which is owned by its members and managed by those members, a manager, or a board, as designated in the company's operating agreement or articles of organization.

**Partnership Account.** An account for an unincorporated business owned by two or more individuals or entities referred to as partners. The partners may designate Authorized Signers and such authority is revoked upon the Bank's receipt of notification of the dissolution of the partnership.

**Public Funds Account.** An account owned by a U.S. government agency, a State, a County, a local government or any political subdivisions thereof, for which the Bank must pledge securities.

**Receivership Account.** An account opened by a court-appointed receiver to manage the affairs of a designated person, partnership or corporation.

**Sole Proprietorship Account.** An account for an unincorporated business owned by one proprietor or by two legally married partners. The proprietor (owner) may designate Authorized Signers and such authority is revoked upon the Bank's receipt of notification of the proprietor's (owner's) death.

## G. ACCOUNT RULES

Unless this Agreement otherwise indicates: the term "item" means any instrument or a promise or order to pay money handled by a bank for collection or payment, but does not include a payment order for a wire transfer, cash, documentary drafts, notes, credit or debit card slips, or other instruments of a type not routinely accepted for collection or payment to deposit accounts by a Bank. The term "account" means any deposit or credit account with the Bank, and includes a demand, time, savings, or like account other than an account evidenced by a Certificate of Deposit. Although excluded from the definition of account, Certificates of Deposit, whether evidenced by a certificate or book-entry, are subject to the terms and conditions of this Agreement. The term "available balance" refers to the money in your checking or savings account that is currently available to you to make purchases, withdrawals, etc. The available balance reflects any processed and pending transactions, and any holds. It does **not** include any checks you have written that have not posted, if applicable to your account. (Checks are processed during the nightly posting and will be reflected the next day.) Checks cashed by a Truist teller will be reflected in the available balance. This balance is **updated throughout the day with** transactions you make. The term "collected balance" refers to the collection of non-cash items (checks) deposited by you. The term "Current (Ledger) Balance" refers to your current balance (also called

ledger balance) and is the actual amount in your account and does not change throughout the day. It does not include holds or pending transactions.

1. **STATEMENTS.** Statements for your account, notices, or other information regarding your account will be mailed, sent electronically, or otherwise made available to you at regular intervals depending on your account type. The statement or account information will be delivered to the postal or electronic address of the primary account owner as reflected in our records or per instructions you have provided to us. Mailed statements shall be deemed received by you on the earlier of the actual date of receipt or within ten (10) calendar days of the date appearing on the statement.

   Electronic statements shall be deemed received on the date they are transmitted to the e-mail address you provided or, the date the statement is provided within your online or mobile banking service. The primary owner shall be responsible for providing copies of statements to any co-owners of the account. If a language preference is selected for your statement, only the primary account owner may change the preference.

   You agree to notify us immediately of any change in your contact information, including address, e-mail address, and/or telephone number. The Bank may rely on any instructions purportedly made by you, or on your behalf, to change your contact information without liability. You also agree that we may rely on an address change notification received by us from a third party vendor or the U.S. Postal Service and other governmental sources to update your address on our records. The Bank will have no liability to you for changing your address based on such information, even if such information is in error. If any of your statements or account information is returned to us because of an incorrect postal address or an incorrect, changed, or expired e-mail address, we may stop delivering statements or account information until a valid address is provided. If your account is classified as dormant, we may elect not to provide further account statements. Copies of such statements or any enclosures can be reproduced upon request, subject to applicable fees. Any statements or account information that is returned as undelivered shall be destroyed without notice and subject to applicable fees. Any statements held for you at a branch office shall be destroyed after a limited time and subject to applicable fees.

   You shall notify the Bank if you have not received your first statement within thirty (30) calendar days of account opening or within ten (10) calendar days of your regular statement date. The Bank will not be liable to you for any damages as a result of; your failure to promptly notify us of a change in your address, your failure to notify us that you did not receive your statement, or your failure to make arrangements to receive your statement. You are responsible for the accuracy of your statement whether or not reviewed and it shall be deemed final and correct upon thirty (30) days from the statement date.

   All business accounts, and the majority of fees associated with deposit and treasury management services, are billed through Account Analysis. In addition to your statement of account information, an Account Analysis statement is available upon request and can be mailed, sent electronically, or made available through one of the Bank's digital platforms. The information on the Account Analysis statement includes name and address, along with information on deposit and treasury management services utilized on the account. If the Bank has received instructions to group your business account with other business accounts owned by you or owned by other entities with some relationship or association to you, all accounts in the grouping will be included in one Account Analysis statement. The Bank will notify you if your account is grouped for the purpose of Account Analysis.

2. **DEPOSITS AND CREDITS.** The Bank, in its discretion, may accept or refuse a deposit, or a part of a deposit, to your account at any time. We may accept deposits to your account from any source without questioning the authority of the person making the deposit. The Bank may require that the person making a deposit provide identification or impose other conditions prior to accepting a deposit. We may give cash back to any authorized account signer or agent in connection with an item payable to the account owner, whether or not the item has been endorsed by the payee. The Bank, in its discretion, may also reverse a deposit even after provisional credit has been granted without prior notice. You agree that any deposit is subject to verification and confirmation notwithstanding your possession of a deposit receipt or acknowledgement. We may reverse or adjust any transaction, credit or debit we believe we erroneously made to your account at any time without prior notice. In addition, if any deposit or other credit is made to your account which we determine should not have been made, we may reverse that credit without prior notice and without any liability to you.

   When you deposit or negotiate an item made payable to or endorsed by another party, you guarantee and warrant that all endorsements are valid and that all necessary endorsements are included. In the event any such item is deposited and returned to us for any reason, you authorize us to place a hold on or debit your account for the amount of the item and you agree to be responsible for the full amount of the item. We may require you to verify an

endorsement on an item through the appearance in person of the endorsee with proper identification and/or obtain an endorsement guarantee or ratification. At or after the time of the cashing, negotiation, or deposit of an item with multiple or third-party endorsements is made, we may return the item unpaid or place a hold on your account for the amount of the item until such a verification is complete to our satisfaction.

In the case where a deposited item is lost, stolen, or destroyed before presentment to the paying bank, you agree to fully assist the Bank in obtaining a replacement or reconstruction of such item. Failure to cooperate may result in the credit to your account being revoked or, if deposited but not credited, the credit withheld. You further agree that the Bank may impose a fee for, or decline to cash a check drawn on your account and payable to a third party. The Bank can direct the third party to deposit the check at another financial institution for payment.

The Bank's night depositories may not be used to deliver or deposit checks, money, payments and other items. We assume no liability for any such delivery or deposit unless Bank has approved your use of this service. In our sole discretion, we may process your delivery or deposit and you agree to indemnify and hold the Bank harmless from any alleged loss, claim, or damage. You agree that the Bank in its discretion may charge a fee for this service, which you agree to pay on demand or it can be deducted from any of your accounts. Delivery of checks or money through a night depository is not considered a deposit until it is posted to your account.

Deposits are considered accepted in the state in which your account is maintained. If you did not open your account in person at a branch, but through the mail, by phone, or over the internet and you do not reside in a state or maintain a residence in a state where the Bank operates a branch office, your deposit(s) will be considered accepted in the state of North Carolina.

**Mail-in Deposits:**
Mailed deposits should be mailed directly to our Special Handling Department to ensure prompt posting to your account using one of the addresses below.

| First Class Mail | Express Delivery |
| --- | --- |
| Truist Bank<br>Special Handling<br>MC: 306-40-04-25<br>P.O. Box 27572<br>Richmond, VA 23261-7572 | Truist Bank<br>Special Handling<br>MC: 306-40-04-25<br>1001 Semmes Avenue<br>Richmond, VA 23224-2244 |

The date your deposit will be considered received will be the date the deposit is accepted by the Bank at the above noted addresses. In the event you mail a deposit to another Truist address, the deposit will not be considered received until it is accepted by the Bank at the above noted addresses.

3. **Night Deposit Services**. Upon Bank's approval, and subject to the terms and conditions set forth in this section, business clients may utilize the night depositories located at Bank branches to make night deposits using tamper-evident bags meeting our specifications ("Bags"). The use of other Bag types and envelopes is prohibited. You grant full authority to your agents to deliver deposits, receive receipts, additional Bags and other documents and items from Bank and we may act upon the instructions of these individuals. Any individual referenced as a Designated Representative on the Bank's records is authorized to designate, add, or delete individuals who are authorized to deal with the Bags and their contents.

If you use a key to access the night depository, you agree to keep the key(s) secure and available only to authorized individuals. You agree to give Bank written notice of the loss of any key within two (2) business days of the day in which you become aware that such key is lost. You are responsible for successfully placing Bags in the depository and relocking the outer door of the depository. You agree to report any unusual conditions immediately to us at 844-4TRUIST or to local law enforcement.

Instead of placing Bags into the night depository, there may be occasions where authorized individuals deliver Bags to a Bank Teller or other Bank employee inside a branch office or through the drive through window during regular banking hours and do not wait inside the branch for the Bags to be processed ("Over the Counter Transaction"). In these instances, you agree that the terms and conditions set forth in this section related to Night Deposit Services apply to the Over the Counter Transactions and that such transactions do not place any additional liability on the Bank. Bank, in its sole discretion, can refuse to accept any Bags that are delivered as an Over the Counter Transaction, regardless of whether the Bank has previously accepted such Over the Counter Transaction Bags.

Deposits, along with a properly completed deposit ticket, must be delivered in Bags. Account name and number must be indicated on the outside of the Bag along with itemized deposit information. Unsealed, damaged or improperly labeled Bags will be returned unprocessed. If you have arranged for us to not process the deposit or the deposit is in a locked Bag for which we do not have a key, you must retrieve the Bag during regular business hours. If you request a receipt for deposits, it will be available at the branch location for five business days following the date the deposit is processed. The receipt will be discarded if not picked up on the fifth business day.

You agree that "delivery" of a Bag placed in the night depository shall mean that a Bag and its contents have fallen down the interior chute of the night depository and landed on the floor of the interior vault. Placement of the Bag and its contents in the exterior door of the night depository or in the mouth or upper portion of the interior chute shall not constitute "delivery" of the Bag to the Bank. You agree that "delivery" of any bag in an Over the Counter Transaction shall mean when an authorized individual has placed the Bag into the hands of any Bank employee or its authorized agents and has completed any necessary documentation of the delivery that the Bank in its sole discretion deems necessary. Placement of any Bag on the counter without completing the required documentation, if any, does not constitute "delivery" of the Bag to the Bank. You also agree that you shall bear the entire risk of loss until the Bag and its contents have been delivered into the exclusive custody and control of the Bank.

You agree to give Bank written notice of any irregularity in or the loss of any Bag or its contents within thirty (30) calendar days of the day in which the Bag is alleged to have been delivered to the Bank. Thereafter, the Bank's records as to the receipt or non-receipt of the Bag or the amount of the contents of the Bag shall be conclusively presumed to be correct.

In the event that you give timely written notice that either a Bag or its contents have been lost, stolen, or otherwise mysteriously disappeared after delivery to the Bank, or that the amount of the contents of a Bag does not agree with your records, then you agree to have the burden of proving by clear and convincing evidence that (a) the Bag and its contents were in fact delivered into the exclusive custody and control of the Bank; (b) the exact dollar amount of the money and items in the Bag; and (c) that the Bank was grossly negligent. You also agree to take all reasonable steps to mitigate any loss or damages.

Bank reserves the right to withdraw the night depository from use at any time without notice in case of emergency or need for repairs. Bank shall not be liable for any loss suffered by you due to the unavailability of the night depository.

Bank is not responsible for any loss or damage sustained by you in the use of Night Deposit Services or Over the Counter Transactions that results from an act or omission by your agents, any third party, or any cause beyond our control. We shall be responsible for loss or damage sustained by you only if the result of our gross negligence or willful misconduct. Bank makes no representation or warranty, whether statutory, express or implied, including without limitation any warranties of merchantability or fitness for a particular purpose. Bank shall not be responsible for any special, consequential, indirect or punitive damages suffered by you or any third party even if we were aware of the possibility of such damages.

The terms and conditions set forth in this section supersede and replace any prior agreement or other documents between you and the Bank which address or deal with Night Deposit Services or Over the Counter Transactions.

**Banking Day.** "Banking Day" means any business day on which the Bank is open to the public for carrying on substantially all of its banking functions at a majority of its branches located within that state. If we receive an item on a weekend or holiday, the item is deemed to have been received on our next business day. Our business days and hours are posted at our branches and ATM hours are displayed on the ATM deposit screen and are subject to change from time to time at our discretion. Inclement weather, natural disasters, computer, or electronic failures may also affect the banking day and business hours.

**Correction of Errors.** The Bank has no duty to compare the items listed on the deposit slip with the items accompanying the slip when the deposit is received by the Bank for accuracy as the Bank relies upon the information you provide on your deposit slip when initially processing your deposit. Therefore, you have a duty to accurately record cash, each item being deposited, and the total amount of your deposit on your deposit slip or at the ATM. If an error in your deposit is later detected, it will be corrected by the Bank unless otherwise agreed. Final credit to your account is based on the total sum of the cash and items actually received by the Bank.

You will be sent a notice of any adjustment we make to your deposit that is more than $10 dollars. Any correction made to your deposit of $10 or less will be reflected on your bank statement. You may confirm the final credit

amount of your deposit and your account balance at any time. Under this Agreement, you are required to review your bank statement and report any errors within thirty (30) days from the statement date. Your statement will be deemed final and correct on the thirtieth (30th) day from the date of the statement.

**Missing Endorsements.** The Bank may accept for deposit items made payable to any one or more of the parties in whose name the account is established, with or without endorsement. If you fail to endorse an item for deposit, the Bank may supply the missing endorsement.

**Items Payable Jointly.** If an item is drawn so that it is unclear whether one payee's endorsement or two is required, only one endorsement will be required and you shall be liable for any loss incurred by the drawer as a result of there being only one endorsement.

**Provisional Credit.** In receiving items for deposit or collection, the Bank acts as your collection agent and any settlement given for an item is provisional and may be revoked if payment of the item is not received. When you accept an item for payment or otherwise, and deposit or negotiate the item, you are liable for the entire amount of the item if it is returned for any reason, even if you paid a portion to a third party or there is a difference between the amount of the item and the amount owned by you. You agree that for any item not paid, returned unpaid, that we believe will be returned unpaid, or is returned pursuant to any applicable operating or clearinghouse rules, the Bank may charge back the item against your account without regard to whether such item was returned within any applicable deadlines. If you cash an item that is later returned, you are liable for the item in the same manner as if the item had been deposited to your account and we will charge back the item to your account. At our option and without notice to you that an item has been returned, we may resubmit any returned item for payment. You waive notice of nonpayment, dishonor, and protest regarding any items credited to or charged against your account.
You further agree that regardless of any final settlement, if an item is cashed against your account or deposited to your account and is unpaid or is returned to us based upon a breach of warranty claim or any other reason, we may deduct the amount of the item from your account, or place a hold on your account for the amount of the item until liability for the item is determined.

You acknowledge and agree that at the time you deposit or negotiate an item the Bank cannot determine whether it will be paid or returned. You therefore acknowledge and agree that the Bank and its employees or agents will not be liable for any statement or action, express or implied that an item is "paid", "cleared" "good" or any other such indication. To determine the status of an item you have deposited or negotiated you must contact the bank on which the item was drawn.

**Foreign Checks.** We may refuse to accept for deposit or collection items payable in a currency other than U.S. dollars. If we accept such an item, you assume the risk associated with currency fluctuation. Items drawn on foreign banks are subject to final payment by the foreign bank and as such may be returned unpaid later than a similar item drawn on a U.S. bank. U.S. laws and regulations governing the time for returns and collections are not applicable and you bear the entire risk of a returned item which can be charged back to your account at any time. You agree that we may use our current buying or selling rate, as applicable, when processing such an item, inclusive of any domestic or foreign bank fees.

**Inconsistent Name and Account Number.** If a fund transfer instruction for credit or debit from your account lists the name or account number of the beneficiary, the name or routing and transit number of beneficiary's bank or any intermediary bank in an inconsistent or incorrect manner, payment may be made by relying upon the account number, even if it identifies a different person or bank from the one named in the instructions received. You agree that we have no obligation to verify whether the name and the number refer to the same person.

**Receipt of RTP® Network Payment.**1 When you receive a payment through the RTP Network provided by The Clearing House Payments Company L.L.C., you confirm, by not rejecting the payment, that you are not receiving the payment on behalf of someone who is not a resident of or otherwise domiciled in the U.S.

1 RTP® is a registered service mark of The Clearing House Payments Company L.L.C.

**Incoming International Wire Transfers.** When you receive money in a foreign currency via a wire transfer, the currency exchange rate used to convert such funds for deposit into your account may be determined by us in our discretion without prior notice to you. You agree to this procedure and accept our determination of the currency exchange rate. The exchange rate that we offer you may include a commission, will be different from (and usually less favorable to you than) the exchange rate for institutions that is usually quoted in newspapers or online services,

and may be different from our daily published rate. Currency exchange rates can be highly volatile and may change frequently during a day. You assume all risks relating to or arising from fluctuations in the exchange rates between currencies for international wire transfers deposited to your account.

**Return of Direct Deposits.** If, for any reason, we are required to reimburse the payer for all or a portion of any payment deposited into your account through a direct deposit plan, you agree that we may, without prior notice, deduct the amount to be returned from your account or from any other account you have with us, unless prohibited by law. This right is in addition to any other rights the Bank has under this Agreement, including the right of setoff and its security interest in your account.

4. **WITHDRAWALS AND DEBITS.**

**Payment of Items.** For purposes of this subsection, an "item" is a debit to your account which includes a check, substitute check, purported substitute check, electronic item or transaction, draft, demand draft, remotely created item, image replacement document, indemnified copy, ATM withdrawal or transfer, PIN-based point of sale transaction, signature-based point of sale transaction, preauthorized payment, automatic transfer, telephone-initiated transfer, ACH transaction, Online Banking transfer or bill payment instruction, withdrawal slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, any other instruction or order for the payment, transfer, or withdrawal of funds, and an image or photocopy of any of the foregoing.

Transactions are processed each banking day during nightly processing. Once your transactions are processed, the results are posted to your account.

Truist will post items to your account based on your available balance. The available balance can be impacted by pending transactions. Examples of common pending transactions include the following but is not an exhaustive list and there may be other pending transactions that have not been included.

- Transfers from another Truist account, Visa Money Transfer Credits, and Zelle Payments that are made before nightly processing begins (generally around 11:59 p.m. ET) will be added to your available balance.

- Authorization holds affect the availability of funds by reducing the available balance. Truist deducts authorized holds from the funds you have available to cover any outstanding items, including checks drawn on your account as well as other withdrawals such as ACH transactions. Your account history reflects the current balance, not the available balance.

- If you use your ATM Card or Debit Card to purchase goods and services, including Internet purchases (point-of- sale transactions), you authorize us to debit your deposit account, and you agree that your authorization may result in an immediate memo debit reducing the account's available balance, even though the transaction may not be finally posted to that account until a later date. You also understand that you may overdraw your account if you make a withdrawal, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have been authorized but not yet posted to your account.

- Based on account type, overdraft fees may be charged when adequate funds are not available in the account to cover all pending transactions and items being posted, debit card transactions being posted, or outstanding checks, ACH, transfers and all other withdrawals when transactions post during nightly processing.

- It remains very important to keep records of all payments you've authorized from your account. Authorization holds will help track your debit card purchases and reserve the funds before they post to your account. However, we have no record of outstanding checks or ACH transactions you've authorized.

Once the available balance is determined, prior day credits and debits will post before current day credits and debits. Once prior day credits and debits are determined, if any, transactions will post in order according to the groupings below:

1. **Deposits and Credits –** all deposits and credits will be posted to your account first. This includes cash and check deposits and incoming transfers, received before the cutoff time at the location the deposit or transfer was made.

2. **Bank-initiated transactions –** such as corrections and Deposited Item Returned Checks.

3. **Client-initiated withdrawals and debits –** withdrawals/payments that have been previously authorized and cannot be returned unpaid, such as debit card purchases, ATM withdrawals, account transfers, and teller-cashed checks. If we receive more than one of these transactions for payment from your account, we will generally sort and pay them based on the date and time you conducted the transactions. For a debit card transaction, if a merchant does not seek authorization from the Bank at the time of the transaction, we will use the date the transaction is received for payment from your account.

4. **Client-initiated withdrawals and debits such as ACH (automated payments) –** such as bills you pay by authorizing a third party to withdraw funds directly from your account. If there is more than one of these types of transactions, they will be sorted by the date and time that they are received. Multiple transactions that have the same time will be sorted and paid from lowest to highest serial number.

5. **Client-initiated Checks –** Checks will be posted and sorted in sequential order.

6. **Bank Fees –** Fees, such as monthly maintenance fees, will post to your account last. Please note that some fees will be posted to your account at the time they are incurred and others, like maintenance fees, will post last.

If sufficient funds are not present to cover all presented transactions, Truist will:

**Determine if Overdraft Protection is available:** Any overdraft protection source that has sufficient availability to cover the presented transactions, will be transferred to cover the presented transactions. (see page 17)

**If no Overdraft Protection Source is available:** At our sole discretion, we may pay a check or automatic payment into overdraft, rather than return it unpaid. If the transaction is paid into overdraft, it may help you avoid additional fees that may be assessed by the merchant. If the item is returned, you will incur a Returned Item Fee.

The Bank has the discretion to process items even if your account has an insufficient available balance to pay such items. Your "available" balance represents the amount of funds available for withdrawal or to pay items presented against your account. The "available" balance may not be the same as your "current" or "posted" balance. For example, your available balance may be reduced by a POS transaction in which the merchant has obtained authorization from the Bank but that has not been presented for payment. We consider such pending transactions in the calculation of your available balance.

In the payment clearing process, the Bank employs techniques to assist in the detection of unauthorized items that may be presented against your account for payment. If a particular item appears to represent unusual activity on your account, you authorize the Bank, in its discretion, to reject the item and return it unpaid. If the returned item was, in fact, properly payable, you agree to hold the Bank harmless from any claims, loss, or damages as a result of the Bank not paying the item.

We may change the priority or order in which items are processed at any time without notice to you. If you do not have sufficient funds available in your account to pay all items presented on a given day, our processing methods may result in more overdraft/returned item fees (based on account type), or other fees or penalties. We may choose our processing method at our sole, unilateral and absolute discretion, regardless of whether additional fees or penalties may result. We may refuse any check or other item drawn against your account or any method of presentment, including electronic presentment, attempting to withdraw funds from your account if it is not presented on a form and through a procedure approved by the Bank.

It is your responsibility to reconcile your account and to avoid overdraft situations. For more detail on Truist's processes refer to our Facts About Banking website at Truist.com/TheFacts.

You agree to hold the Bank harmless and indemnify us for any liability we may incur for reasonably acting, in our discretion, upon any instructions you may provide to us by telephone, telecopier (fax machine), e-mail, or other electronic means.

In the event you voluntarily give your account number to a third party by telephone or any other method, you authorize the recipient of the information to initiate debits to your account and you will be liable for all debits initiated by such person or company. Likewise, you will be liable for all debits initiated by any service provider hired by you to draft your account to pay third parties, whether your signature is on the drafts or not.

When you give signed checks to another party with the payee, amount, date or other provision left blank, you agree that your account may be charged for the check as completed.

We may honor items drawn on your account by authorized signers, even if the items are made payable to them, to cash or for deposit to their personal accounts. You agree that the Bank has no duty to investigate or question items, withdrawals or the application of funds.

Payment made to a person presenting an account withdrawal receipt signed by the Depositor, shall be conclusively deemed to be good and valid on the account of the Depositor. We will have the right to assume that any such person is acting as a messenger for the Depositor, unless the withdrawal receipt has been lost and notice in writing has been given to us. Receipt of such notice must be acknowledged in writing and signed by an officer of the Bank before such payment is made. This paragraph does not grant you the right to make withdrawals by messenger. We reserve the right to refuse withdrawals by messenger.

**Multiple Signatures.** The Bank does not offer accounts on which two or more signatures are required for a withdrawal of funds from your account. Any attempt to include such requirement on your checks, signature card or other governing account documents will be for your internal purposes or controls only and will not be binding on the Bank. The Bank may pay checks, items, electronic debits, wires, debit card transactions, online banking transactions, or other withdrawal instructions signed or approved by any one of the authorized signers on the account who are named on the signature card.

**Deduction of Fees.** Fees may be deducted from your account without prior notice to you. Maintenance, activity fees and applicable fees for returned deposited checks, returned items, overdrafts (based on account type), stop payment orders, charges for check printing, and other service charges made in accordance with the rules of the Bank in effect at the time of such charge shall be deducted from your account and may be posted prior to other debits. The Bank shall not be liable for refusing to honor items presented for payment because of insufficient funds as a result of deducting such fees. Any fees (or portions thereof) that were not posted due to insufficient funds at the time of posting may be collected at a later date without prior notice when sufficient funds are available in the account. Fees are subject to change from time to time at the Bank's discretion. The current Business Deposit Accounts Fee Schedule is available at www.Truist.com.

**Stale Dated Items.** The Bank maintains the option to either pay or dishonor any stale dated item, which is an item more than six months old, upon presentation to the Bank. If the item is paid by the Bank in good faith, we will not be liable for any loss, fees or damages you suffer as a result of the item being charged to your account.

**Preauthorized Demand Drafts.** A preauthorized demand is a type of bank draft used by telemarketers and sales representatives who sell goods and services through the telephone, mail, or other electronic means. Drafts are used to obtain funds from your account without you issuing a check or getting your signature on the draft. In lieu of a signature, a legend such as "Payment Authorized" or "No Signature Required" may appear on the draft. If you give a telemarketer or any other party information about your account or account number, and the information is thereafter used to debit your account, the Bank is authorized to pay such item. If you wish to stop payment on the draft, you must revoke your authorization by giving notice to the telemarketer or the third-party.

**Remotely Created Checks.** A remotely created check is an item that appears to authorize payment to be made but which is not actually signed by the drawer. You agree that if you cash, negotiate or deposit a remotely created check, you warrant to us that the check is authentic and is authorized by the drawer according to the terms contained on the check. If a remotely created check is returned to us at any time and for any reason, we may debit the amount of the check from your account.

**Electronically Created Items.** An electronically created item is defined under federal regulation as an electronic image that has all the attributes of an electronic check or electronic returned check but was created electronically and not from a paper check. You are not permitted to deposit these items. However, if you deposit an electronically created item, you agree to be liable for any losses that result from the fact that (i) the electronic image or electronic information is not derived from a paper check; (ii) the person on whose account the electronically created item is drawn did not authorize the issuance of the item in the amount, or to the payee, stated on the item, or (iii) a person receives a transfer, presentment, return of, or otherwise is charged for an electronically created item such that the person is asked to make payment based on an item or check already paid.

**Death or Incompetence.** Neither a depositor's death nor a legal adjudication of incompetence revokes the Bank's

authority to accept, pay, or collect items until the Bank is notified of the fact of death or of an adjudication of incompetence and has a reasonable opportunity to act on it. Even with knowledge the Bank may, for ten (10) days after the date of death, or adjudication of incompetence, pay checks drawn on or before said date unless ordered to stop payment by a person claiming an interest in the account.

**Delayed Return of Item.** The Bank will not be liable if an item deposited into your account is returned after the time set by applicable law if the delay is caused by an improper endorsement. You will be liable to the Bank for any loss or expense we incur because we are unable to timely return an item drawn on your account caused by any markings or damage to the item.

**Postdated Items.** You agree not to issue a postdated check and the Bank may disregard such date on the item when it is presented for payment. The Bank is authorized to pay any check prior to the date on the item even if you have given us notice that it is postdated. If the Bank agrees to re-credit your account after paying a postdated check you agree to transfer to the Bank all of your rights against the payee or other holder of the check, and to assist in any legal action taken against that party.

**Conditional Items.** You agree not to issue a check that is conditional. For example, you may not issue a check with the notation "void after 30 days." The Bank has the right, however, to pay or reject an item where payment is conditional and the condition has not been satisfied. For example, we may pay a check which says "void after 30 days" even though the check is presented more than thirty (30) days after its date.

**Large Cash Withdrawals.** For security reasons and in order for us to properly prepare for such requests, we require advance notice for large cash withdrawals. We can refuse an order to withdraw funds in cash or to cash an item if we believe that the request is a security risk or will result in a hardship on the Bank. We may require you to accept an Official Check or electronic transfer to receive the funds. If we agree to a large cash withdrawal, you may be required to employ a courier service acceptable to us and at your risk and expense. If a large cash withdrawal is completed at a branch you will be required to sign a cash withdrawal agreement or affidavit. Refusal to sign the agreement is grounds for us to revoke the cash withdrawal and require an alternate delivery for the funds. You understand and agree that the Bank is not responsible for providing any security regarding any cash withdrawals or deposits.

**Substitute Checks.** To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check. Some or all of the checks that you receive back from the Bank may be substitute checks. This notice describes rights you have when you receive substitute checks from the Bank. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other laws with respect to those transactions.

**Your Rights Regarding Substitute Checks.** In certain cases, federal laws provide a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that the Bank withdrew the wrong amount from your account or that the Bank withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, returned item fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other laws.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within ten (10) business days after the Bank received your claim and the remainder of your refund (plus interest if your account earns interest) not later than forty-five (45) calendar days after the Bank received your claim. The Bank may reverse the refund (including any interest on the refund) if it later is able to demonstrate that the substitute check was correctly posted to your account.

**How to Make a Claim for a Refund.** If you believe that you have suffered a loss relating to a substitute check that was posted to your account, please contact the Bank at 844-4TRUIST or you can visit your local branch. You must contact

the Bank within forty (40) calendar days of the date that the Bank mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the statement for your account showing that the substitute check was posted to your account, whichever is later. The Bank will extend this time period if you were not able to make a timely claim because of extraordinary circumstances. We may require that you submit your claim in writing. Your claim will still be timely if we receive your oral claim within the 40 day time period, and we receive your written claim no later than the 10th business day after you submitted your oral claim.

Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- Copies of the substitute check or the following information to help the Bank identify the substitute check: the check number, the name of the person to whom you wrote the check, the amount of the check.

**Non-Sufficient Funds.** An overdraft is created when you have non-sufficient funds in your account to cover a check, withdrawal, automatic transfer, electronic transaction (e.g., ATM or point-of-sale purchase), returned deposited item, or any other electronic purchase, payment, or debit when it is presented for payment. If your account is linked to Overdraft Protection, the overdraft will be paid, pursuant to the terms of the Overdraft Protection Service section stated in this Agreement (and subject to the funds available in your Overdraft Protection protector account). Overdraft Protection transfer fees as described in the Business Deposit Accounts Fee Schedule will also apply.

**Your responsibility when your account has an overdraft.** You are in the only position to ensure that your account has sufficient funds to cover all of your checks, debits and fees by maintaining an accurate record of your outstanding credits and debits. Checks or other items drawn against non-sufficient funds in your account, which have not been covered by overdraft protection, are subject to a fee, set forth in the Bank's then current Business Deposit Accounts Fee Schedule. If an item such as an ACH debit or a check is reinitiated or represented against your account, it shall constitute a separate "item" for purposes of the overdraft fee, and an overdraft fee shall be incurred each time the item creates an overdraft in your account, regardless of whether the item was initiated or presented against your account multiple times. This fee will be charged to your account in accordance with the terms of this Agreement or any applicable regulations and laws in effect at the time the penalty/fee is incurred. We may determine whether your account contains sufficient funds to pay a check or other item at any time between the time the check or other item is received by us and our return deadline and by using any means we choose in our sole, unilateral and absolute discretion, and only one determination of the account balance is required. The Bank under no circumstances shall be required to examine or consider balances which you may maintain in your other accounts. If that determination reveals non-sufficient funds to pay the check or other item, we will not be required to honor the check or other item and may return it. Alternatively, we may honor the check or other item and create an overdraft.

However, honoring one or more overdrafts does not obligate us to honor any future overdrafts, and you should not rely on us to honor an overdraft.

We are not required to send you prior notice on checks returned for non-sufficient funds. You agree to deposit sufficient funds immediately to cover any overdraft and any penalties assessed, and to reimburse us for any costs, including but not limited to reasonable attorney's fees, we incur in collecting any overdraft from you. The amount of the overdraft shall constitute an indebtedness to the bank and shall be due and payable immediately, without notice or demand.

**Overdraft Protection Service.** Overdraft protection is an optional service you can add to your checking or money market account by linking one eligible account. We will use available funds in your linked account, (the "protector" account), to authorize or pay your transactions if you don't have enough money in your checking or money market account (the "protected" account). You can enroll in Overdraft Protection by calling 844-4TRUIST.

Eligible protected accounts include a checking or money market account. Savings accounts are not eligible to enroll in the Overdraft Protection Service as a protected account.

Eligible protector accounts include a Truist deposit account, Truist credit card, or Truist Line of Credit.

A single Overdraft Protection Transfer or Advance Fee will be assessed any day a transfer/advance is made regardless of

the number of transactions covered. Also, we will not charge a fee unless the transfer/advance covered at least one pending item, or helped you avoid at least one overdraft or returned item. The fees associated with Overdraft Protection may be less expensive than the fees for overdrafts and returned items. The Business Deposit Accounts Fee Schedule explains the fees and other charges that apply to Overdraft Protection. Please review the Business Deposit Accounts Fee Schedule carefully. Your protector account can provide Overdraft Protection for more than one deposit account, but a protected account can have only one protector account. We may cancel your Overdraft Protection service at any time by sending you notice. Your request to add or cancel Overdraft Protection is effective immediately. Transfers will be made in exact increments from the protector account to your protected account. This information is detailed below. Any owner of both the protected account AND the protector account may enroll in Overdraft Protection without the consent of other owners by calling 844-4TRUIST. Any owner of the protected account OR the protector account may cancel Overdraft Protection without the consent of other owners by calling 844-4TRUIST. If you link a jointly owned account, you authorize us to share information about your account with each owner of the other linked account, such as type of protector account and partial protector account number.

**Overdraft Protection from Another Deposit Account** allows you to link your checking or money market account (the "protected" account) to another Truist deposit account (the "protector" account), for Overdraft Protection. The protector account can be a second checking account, savings account, or money market account. When you do not have enough available funds in your protected account to cover a debit item, we may automatically transfer funds from the available balance in your protector account to your protected account. We generally charge an Overdraft Protection transfer fee for each day a transfer is made. Transfers will be made for the exact amount of the overdraft plus applicable fees from the protector account to your protected account. If the balance in the protector account is not sufficient to cover the entire overdraft, the Bank may make transfers to pay individual debit items up to the available balance in the protector account. However, the Bank reserves the right to not initiate transfers to cover such overdraft and to return the debit item(s) for non-sufficient funds. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. Funds you deposit into your protected account may not be available immediately for Overdraft Protection transfers. Overdraft Protection will be cancelled if your protected account or the protecting account is closed, or if the linked account has a zero balance. Please see the Business Deposit Accounts Fee Schedule for more information about Overdraft Protection from another deposit account.

**Overdraft Protection from Your Credit Card** allows you to link your checking or money market account (the "protected" account) to an eligible Truist credit card (the "protector" account) for Overdraft Protection. When you do not have enough available funds in your protected account to cover a debit item, we may automatically advance available funds from your protector account and transfer the funds to your protected account. Transfers will be made in exact increments from the protector account to your protected account. If the available credit on the protector account is not sufficient to cover the entire overdraft together with the related fees, the Bank may make transfers to pay individual debit items up to the available credit on the protector account. However, the Bank reserves the right to not initiate transfers to cover such overdraft and to return the debit item(s) for non-sufficient funds. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. An Overdraft Protection advance is made under, and is subject to, the terms and conditions described in the applicable credit card agreement. We ordinarily do not make an advance if you are in default under your credit card agreement or if the advance would cause you to exceed the amount of credit available for that type of transaction. As examples, we may decide not to advance funds from your credit card account if you fail to make a credit card payment by its due date or if you exceed any credit card limit on your credit card account. The funds advanced are subject to fees and finance charges under your credit card agreement. Overdraft Protection advances do not have a grace period and will begin accruing finance charges from the date the advance is posted to your credit card account. We may also charge an additional Overdraft Protection transfer fee to your protected account for each day a transfer is made, as disclosed in the Business Deposit Accounts Fee Schedule.

Advances from a Credit Card may be charged at a higher Cash Advance rate of interest. Please see your credit card agreement for more information about Overdraft Protection from your credit card account.

**Overdraft Protection from Your Line of Credit** allows to you link your checking or money market account (the "protected" account) to an eligible Truist line of credit (the "protector" account) for Overdraft Protection. When you do not have enough available funds in your protected account to cover a debit item, we may automatically advance funds from your protector account and transfer the funds to your protected account. Transfers will be made in exact increments from the protector account to your protected account. If the available credit on the protector account is not sufficient to cover the entire overdraft together with the related fees, the Bank may make transfers to pay individual debit items up to the available credit on the protector account. However, the Bank reserves the right to not

initiate transfers to cover such overdraft and to return the debit item(s) for non-sufficient funds. A transfer may not be available if the line of credit is blocked due to a late payment. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. The Overdraft Protection advance is made under, and is subject to, the terms and conditions described in the line of credit agreement. We ordinarily make the advance as long as you are not in default under the line of credit agreement and as long as the advance does not cause you to exceed the amount of your available credit on your line of credit. The funds advanced are subject to fees and finance charges under the line of credit agreement. Overdraft Protection advances do not have a grace period and will begin accruing finance charges from the date the advance is posted to your line of credit account. We may also charge an additional Overdraft Protection transfer fee to your protected account for each day a transfer is made, as disclosed in the Business Deposit Accounts Fee Schedule.

Please see your line of credit agreement for more information about Overdraft Protection from your line of credit.

4. **FRAUD AND UNAUTHORIZED TRANSACTIONS.**

**Duty to Safeguard Account.** You have a duty to safeguard access to your account (including any credit accounts), account information, checks, signature stamps, account security codes, passwords, or personal identification numbers ("PIN") and personal identification. If there are any unauthorized transactions or suspicious activity on your account, including unauthorized checks or debits on your account or lost, stolen or missing checks, we strongly advise that you close your current account and open a new one, and if available, implement a service that is designed to help detect and/or deter fraud. If you do not close your account, or if you fail to implement the service that was recommended to you after a fraud occurred of the kind the service was designed to prevent, you agree that the Bank is not liable to you for any subsequent debits, unauthorized transactions, losses or damages that occur on your account.

You agree to report any lost or stolen check(s) or any unauthorized transaction(s) on your account immediately upon discovery. We may require that you close the account and open a new account. If you fail to report such a theft or loss, you will assume full responsibility if the Bank should pay such items. If you permit any person to have access to any place in which you store your checks, you agree that the failure to keep your checks locked and secure shall constitute negligence and the Bank shall not be responsible for any such checks that are subsequently stolen and forged.

To guard against the disclosure and unauthorized use of personal information, you agree not to pre-print or write your Social Security Number, date of birth, driver's license number or other personal information on your checks or other items issued on your account. If such information is included on your checks or other items drawn on your account, you agree that the Bank will not be liable for the improper use of any such information by an individual or entity, regardless of how the individual or entity obtained or used the information.

You agree to place a stop payment on any lost or stolen check if such item has not already been paid. The Bank shall also not be responsible for paying any such item had you reported or stopped payment in a timely manner.

You agree to keep any account information, security code, password, PIN or personal identification used to access your deposit or credit account(s) secure and strictly confidential and not to disclose such information to any other person. You must notify the Bank immediately if this information is lost or has become known to, or been used by, an unauthorized person. You acknowledge that the Bank has no method to determine whether a transaction conducted with use of a valid name, account number, and security code or personal identification was proper, and therefore authorize the Bank to complete any transaction involving your account made with the use of such information. Subject to applicable law, you agree to be responsible for any transaction initiated with the use of a valid name, account number, security code, or personal identification, and agree that the Bank shall have no liability for any loss, claim, or damage you sustain as a result of the use of your security code or personal information described above whether such transaction was authorized or not. These rules apply to all checking, savings, or credit accounts in which a check, draft, or other item is used to withdraw or transfer funds.

**Duty to Review Account Statement.** You agree to review your account statement within thirty (30) days from the statement date. Because you are in the best position to discover an unauthorized signature or endorsement, a missing endorsement, any alterations or counterfeit item or other error on the statement itself (including any item improperly charged to your account, any deposit not credited to your account, any unauthorized transaction, or any incorrect or improper amount, fee or interest calculation), you agree that, without regard to care or lack of care by you or the Bank, and except as otherwise may be required by applicable law, we **will not be liable for any such items or transactions and you will be precluded from any recovery from the Bank if you have not reported such items or transactions in writing**

**to the Bank within thirty (30) days from the statement date of the earliest** statement containing those items or transactions. The Bank will also not be liable for forgeries on your account committed by the same person if you fail to report the first forgery(s) within thirty (30) days from the statement date containing the first forgery(s). If you choose not to receive your statements, you remain responsible to review and report any errors within thirty (30) days from the statement date. If you are absent from your account mailing address, you are responsible to make arrangements to have your statements reviewed for errors and report them in a timely manner.

**Duty of Care.** You agree that you will exercise ordinary care in handling your account. In exercising ordinary care, you shall have the duty to: carefully examine your bank statements [and any other notice(s)] for fraudulent or unauthorized transactions and promptly notify the Bank of fraudulent or unauthorized transactions; timely reconcile your bank statement to detect any other account discrepancies including any missing or diverted deposits; implement security precautions regarding the use and access to your account by use of any access device including checks, drafts or security codes, passwords, or other personal identification numbers; implement security precautions regarding the use and access to any signature stamp; conduct background checks on any individual who has authority to prepare your checks or reconcile your bank statements; independently review the work of any person who is responsible for reconciling your bank statement and preparing checks on a monthly basis; and comply with all other duties imposed on you under this Agreement or under applicable state law. Your failure to exercise ordinary care will constitute negligence and will preclude you from asserting against the Bank any unauthorized transaction on your account.

You acknowledge that the Bank processes its checks by automated means and is under no duty to examine each item presented for payment. You acknowledge that the Bank's automated check payment and notification procedure applies to all items presented for payment against your account including checks or other withdrawal orders presented directly over the counter at any branch location. You agree that such automated check payment and notification procedure is commercially reasonable. You and the Bank, pursuant to applicable law, therefore agree that the Bank shall be deemed to have exercised ordinary care if it adheres to a standard of manual or mechanical examination of a random sampling of items being processed for payment. These items may represent a sampling or selection of items drawn on all accounts, or items which meet certain minimum criteria established by the Bank for manual or mechanical inspection (such as large amounts). The Bank shall be deemed to have acted in good faith and in accordance with reasonable commercial standards in paying any items forged or altered so cleverly (as by unauthorized use of a signature stamp, facsimile machine or otherwise) that the unauthorized signature, endorsement, or alteration could not be detected by a reasonable person.

The Bank's policies and procedures are general internal guidelines for the sole benefit of Bank and do not establish a higher standard of care for the Bank than is otherwise established by the laws governing your account. A clerical error or honest mistake will not be considered a failure of the Bank to perform any of its obligations. If the Bank waives any of its rights as to you or your account on one or more occasions, it will not be considered a waiver of the Bank's rights on any other occasion.

**Limitation to File Claim.** You agree that no legal proceeding or action may be commenced against the Bank to recover any amounts alleged to have been improperly paid out of the account due to any unauthorized signature or endorsement, any alteration, or any other fraudulent or unauthorized transaction unless: (a) you have timely provided the written notices as required above and (b) such proceeding or action shall have been commenced within one year from the date the statement containing the unauthorized transaction was made available to you. As used herein, a proceeding or action is commenced when you file suit in a court of competent jurisdiction, or if the action is subject to arbitration, when you give the Bank written notice of such action. Any proceeding or action not brought within one year from the date of the first statement containing the unauthorized transaction is forever barred.

**Duty to Cooperate.** If you report any unauthorized transaction on your account, you agree to cooperate with the Bank in its investigation of the claim. This includes preparing an affidavit or statement containing whatever information the Bank requires concerning the account, the transaction, and the circumstances surrounding the loss. You also agree to file a criminal report and upon our request, to provide us with a copy of the report, and testify against any suspected wrongdoer and waive any claims against the Bank if you fail to do so or if you enter into any settlement, compromise, or restitution agreement with the wrongdoer without the consent of the Bank. The Bank may reverse any credit or reimbursement should you fail to file the criminal report or refuse to testify against the wrongdoer.

You agree that you cannot and will not bring any legal action or arbitration claim against us unless you have first provided the affidavit or statement described within this section.

**Duty of Insurance.** You agree to pursue all rights under any insurance policy you maintain before making a claim

against the Bank in connection with any unauthorized banking transaction. You agree to provide the Bank with all reasonable information about any insurance coverage, including the name of the insurance carrier, the policy number, policy limits, and applicable deductibles. The Bank's liability, if any, will be reduced by the amount of any insurance proceeds you are entitled to receive. At the Bank's request, you agree to assign your rights under any insurance policy to the Bank.

**Limitation of Liability.** You agree that the Bank has a reasonable time to investigate the facts and circumstances surrounding any claimed loss and that the Bank has no obligation to provisionally credit your account before or during the investigation, unless required by law. If we do credit your account, you agree that such credit is not considered final payment. If a credit is given to your account at any time and the Bank determines that the original debit to your account was proper, you agree that the Bank may reverse the credit to you at any time whether it originally advised that the credit was provisional. The Bank's maximum liability is the lesser of actual damages proved or the amount of the unauthorized withdrawals, reduced by an amount which could not have been realized by the use of ordinary care. In no event will the Bank be liable for special or consequential damages, including attorneys' fees incurred by you. The Bank will not be liable for any items that are forged or altered in such a way that such forgery could not be reasonably detected.

If you request a stop payment on a check that is presented to us for payment electronically (such as a substitute check, converted check, remotely created check, or imaged check) that does not contain the check number, we will attempt to stop payment based on the information you provided. We will have no liability for our inability to stop payment on such an electronic item as our stop payment process is dependent upon the ability to read a check number. You may be charged a stop payment fee even if we are unable to affect your stop payment order.

**Facsimile Signatures.** The Bank may refuse to accept a request from you to use a machine or "facsimile signature" on your account. If we do agree, you must provide us with a specimen of any machine or facsimile signature and your name must be listed on the signature card for the account. Regardless of whether you have provided a specimen of the facsimile signature, if you use a machine or facsimile signature, you are responsible for any check, draft, item or other written order when bearing or purporting to bear a machine or facsimile signature of any of the authorized signers, regardless of by whom or by what means the item was created. You assume all liability for and indemnify us from the unauthorized use of any machine or facsimile signature. If you use any type of machine or facsimile endorsement on any item, you agree that we may accept any future machine or facsimile endorsement on an item as your endorsement regardless of by whom or by what means the actual or purported machine or facsimile endorsement may have been affixed.

**Bookkeepers.** In the event you authorize any third person, such as a bookkeeping service, an employee, or agent of yours to retain possession of or prepare items or make deposits, issue payments, wires or other transfers, you agree to assume full responsibility for any errors or wrongdoing by such third party or any of their employees, including if the Bank should pay such items or allow the negotiation of any part of a deposit, including receiving any cash back. You agree that we may deny a claim for loss due to forged, altered or unauthorized checks, endorsements or unauthorized payments, wires or other transfers if you fail to follow these procedures.

5. **BANK'S STIPULATIONS/RIGHT TO CLOSE ACCOUNT.** We may at any time, in our discretion, refuse to open an account, refuse any deposit, refuse to cash a check, limit the amount which may be deposited, or return all or any part of a deposit. Further, the Bank may discontinue or refuse to offer you any account, service or product at any time. In addition, the Bank may close your account at any time and for any reason or for no reason without advance notice. If a determination by the Bank is made to close your account, a hold may be placed on the account until the funds are released to you. If we close your account we may give you either oral or written (includes electronic) notice of our intention to close the account. If given in writing, the notice will be sent to your address or e-mail shown on our records. Upon notice, you must stop conducting transactions on your account. We shall not be liable for dishonoring any items initiated after the date of the notice. In the event that you have not closed your account, we will close the account and mail you a check for the remaining balance in the account after deducting any applicable fees and charges to the address we have on record, or you may arrange delivery of the check at a mutually agreeable location. We may also deliver the remaining balance in any business or organization account to any authorized representative listed on our records for the business or organization. Closing the account does not release you from the payment of accrued fees or liability for items in process. The Bank may in its discretion close your account without prior notice if the account has a zero or negative balance, or if we believe it necessary to protect the Bank, its employees or others from risk, harm or loss. Any waiver by the Bank of its right to close an account for cause shall not be a waiver of our right at a later time to close your account for the same or similar reasons. Once we have closed your account, we can, without liability to us, refuse to honor any withdrawal requests, checks, or other items presented for payment after we closed your

account. We further reserve the right to reject any deposit that is made to a closed account by returning the item or by crediting the item to another active account of yours. We reserve this right notwithstanding that the deposit may have been processed and/or that you were given a receipt for the deposit. The deposit receipt shall not constitute acceptance of funds in such instance and we shall have no liability for any items returned unpaid which are drawn on a closed account even if you attempt to make a deposit to the account. You may close your account at any time but must first notify the Bank in writing, or by contacting one of our branches or offices of your intent to close the account. Your failure to notify us may result in additional fees or charges on the account and you shall remain liable for any items in process. A notation written on the face of a check does not constitute the required notification to the Bank. We may accept deposits to an account after it is closed in order to pay any fees or charges due and any amounts outstanding and unpaid. Acceptance of any deposit does not require us to reactivate or reopen the account.

You agree that the Bank may report your account to Early Warning Systems or other consumer reporting agencies if it is closed due to a negative balance, fraud, or other inappropriate activity. If we close your account because the account has an overdrawn balance, which we charged off, you agree we may report this closure. Such reporting may adversely affect your ability to open an account at another financial institution or to write or negotiate checks at retailers or merchants. For disputes regarding credit information provided by the Bank to Early Warning Systems or other consumer reporting agencies you must send the dispute information to P.O. Box 849, Wilson, NC 27894.

6.  **RIGHT TO FREEZE ACCOUNT.** We may suspend payment and/or place a hold on your account in our sole discretion and under any circumstance including, but not limited to: (a) if the Bank determines that the ownership of funds or the right to debit or make withdrawals from your account is in dispute. For purposes of this section, "dispute" may include such disputes between you and the Bank involving the account, disputes between you and an authorized signer or other joint owner, or any situation where a third party takes action or gives notice to the Bank of any claim on the account or funds contained therein, regardless of whether the Bank is involved in such dispute, as well as any other situation in which there is an allegation of fraud or mistake or the Bank is uncertain as to the ownership or payment of funds; (b) you owe the Bank or any of its affiliates money, or the Bank or any of its affiliates has a claim against you for the payment of money, regardless of whether such claim is disputed, unliquidated, or contingent; (c) we detect or suspect any unauthorized, unlawful or irregular activity related to your account including but not limited to transactions prohibited by any law, rule or regulation, including the Unlawful Internet Enforcement Act; (d) you have committed or are suspected of committing an allegedly fraudulent act, or, if any claim, whether oral or written, has been made upon the Bank due to your actions; or (e) upon notice of a bankruptcy filing. Payment will be suspended and/or a hold will remain on your account until the dispute, allegation, or problem is resolved or determined to the Bank's satisfaction. In no event will the Bank be liable for any delay or refusal to follow instructions or for returning items unpaid that occur as a result of a dispute or uncertainty over the ownership or control of your account or the suspension or freezing of your account for any of the reasons stated above. In the event we receive a documented claim for a forged, irregular, altered (including payee and dollar amounts), or unauthorized endorsement on a check or draft deposited into your account, the Bank is authorized to debit your account for the amount of the claim, without prior notice to you. The Bank will have no liability for honoring the claim.

You agree to be liable to the Bank for any loss, costs, including but not limited to reasonable attorney's fees, or expenses, to the extent permitted by law that we incur as a result of any dispute brought by a third party involving your account. You authorize us to deduct any such loss, costs, or expenses from your account without prior notice to you.

7.  **RIGHT OF SETOFF.** You hereby assign and grant to the Bank a security interest in all accounts as security for your obligations to the Bank existing now or in the future. As is lawfully permitted and without prior notice to you, the Bank may exercise its right of setoff against your accounts to repay any debt you or any co-owner as principal, endorser, guarantor or otherwise owe to us (herein defined to include, the Bank, our parent, affiliates, subsidiaries, divisions and departments). This means that we have the right to apply part or all of the funds in your account for the satisfaction of any debt you or any co-owner of the account owes us. You agree that our right of setoff applies to any debt or obligation owed to the Bank (whether present or future, contingent or otherwise, as principal or surety or otherwise) and is not conditioned on, or limited by, the complete mutuality of the parties obligated on the debt and owners on the account, the maturity of the debt, giving notice to you, or the availability of any collateral securing the debt. If you open a new deposit account, we may use any funds in this new account to offset balances previously owed to us. If your account is an individual account, our right of setoff may be exercised to repay your debts, whether they are owed by you individually or jointly with others. All of the funds in a joint account may be used to repay the debts of any co-owner, whether they are owed individually, by a co-owner, jointly with other co-owners, or jointly with other persons or entities having no interest in your account. Debts subject to our right of setoff include those owed by you from another joint account in which you are a co-owner even though the debt may not have been directly incurred by you, as well as debts for which you are only secondarily liable. Our security interest and our right of setoff also applies: (i) when

we give you credit for or cash a third-party check which is returned to us unpaid for any reason or is counterfeit regardless of the timing of said return; (ii) to cover overdrafts created in any account held by you or in which you have an interest whether or not you consented to the overdraft or are otherwise responsible for it; (iii) to recover service charges or fees owed by you or any joint owner of your account; and (iv) to reimburse the Bank for any costs or expenses in enforcing its rights, including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law. We may exercise our right of setoff or security interest even if the withdrawal results in an early withdrawal penalty or the dishonor of subsequent checks. You agree that the Bank will not be responsible for dishonoring items presented against your account when the exercise of our right of setoff or security interest results in insufficient funds in your account to cover the items. Our right of setoff or security interest may be exercised before or after the death of an account holder and can follow the proceeds to any other account held at the Bank.

Failure of the Bank to exercise its right of setoff as provided herein on any occasion when the right arises does not affect the Bank's right to exercise its right of setoff at a later time for the same occurrence or for any subsequent occurrence. The security interest granted by this Agreement is consensual and is in addition to the Bank's right of setoff and any rights under applicable law. Certain federal or state laws may be interpreted to protect funds received from federal or state agencies from setoff. You agree that our right of setoff includes the right to use proceeds from all funds deposited into your account, including funds received from the Social Security Administration and other federal or state agencies, to pay debts, including overdrafts and account fees. By continuing to deposit these funds into your account you agree to allow the Bank to exercise its right of setoff against these funds, and not to assert any claim or defense that these deposits are exempt from setoff based on any federal or state law, rule, or regulation.

8. **STOP PAYMENT ORDERS.** Any authorized signer on an account may stop payment on a check or draft drawn on the account, if the check or draft has not already been paid or cashed by the Bank.

    You may request a stop payment on an Automated Clearing House (ACH) debit to your account if the item has not already been paid. You are responsible for notifying the originator/sender that you have revoked your previous authorization for ACH debits.

    You may not stop payment on a Debit Card point-of-sale transaction, ATM transaction or a transaction that you initiate by check, which a merchant converts to an electronic transfer at the point of sale. We may, but are not required to, accept oral or written stop payments, even though the person who is requesting the stop payment is not the authorized signer who signed the item. You must describe with certainty the check or draft to be stopped. If you do not provide the check number, payee and the exact amount of the item, we will not be liable for misidentification or payment of the item and failure to honor the stop payment order.

    A stop payment order must be received in such a manner that affords us a reasonable opportunity to act upon it. In some cases, we may pay an item even if a stop payment order is in process. For example, if one of our banking offices, without notice of your request, cashes a check that you have asked us to stop, we may still pay the check. If the Bank pays an item over a valid and timely stop payment order, the Bank is responsible only to the extent that you can establish that you have incurred actual damages. If your account is re-credited, you agree to transfer to us all of your rights against the payee or other holder of the item, and to assist us in legal action taken later against that person.

    There is a fee for the special handling involved with a stop payment order. If you make an oral stop payment, you will be required to confirm the request in writing within 14 days after the Bank received the oral stop payment, unless the Bank sends a stop payment confirmation, which will suffice as the written request. A stop payment order on a check or a non-consumer account will be effective for six months from the date of the written request unless renewed prior to the expiration of the request. If not renewed, an item that is presented or re- presented to the Bank for payment may be paid. Each renewal is treated as a new stop payment order and subject to the Bank's stop payment fee. A release or cancellation of a stop payment order may be given by any Depositor or authorized signer on the account; however, such a release or cancellation must be delivered to us in writing.

9. **LEGAL PROCESS ON YOUR ACCOUNT.** You acknowledge and agree that because the Bank has offices in multiple states, if any legal process is served upon the Bank, we may honor such service, regardless of where or how served. You agree that we may accept any legal process we believe to be valid and that we may, in our discretion, waive such service and accept legal process by mail, electronic mail, facsimile or other means. If we receive any court order or similar process, or if we are required to suspend payment by any law or regulation including, but not limited to those issued by the Office of Foreign Assets Control, we may suspend payment or comply with the terms of the order or similar process on any account that we reasonably believe to be affected by the order. Payment will be suspended until final resolution of such court order or similar process or until the applicable law or regulation authorizes resumption of payments, even though such suspension or compliance may be due to inadvertency or error due to the

similarity of names of Depositors or other mistakes. If your account is attached, garnished, or otherwise subject to levy by a court order or similar lawful legal action, we will not be liable to you for any sums we reasonably determine to pay or freeze because of such attachment, garnishment, or other levy, even if paying or freezing the money from your account leaves non-sufficient funds to pay a check you have written. After receiving legal process, if we reasonably determine that are required to freeze or remove the funds at issue from your account, you agree that we are not required to pay interest on such funds. If we incur any expenses including, without limitation, reasonable attorney's fees in responding to a court order or similar process in which we are not a named party that is not otherwise reimbursed, we may charge such expenses to your account without prior notice to you. Any attachment, garnishment or other levy against your account is subject to the Bank's right of setoff and security interest. The Bank's fees for garnishment, levy, or other attachment against your account are due when the garnishment, levy or other process is issued, and the Bank may offset these fees from your account prior to honoring any garnishment, levy, or other attachment. All funds held in a joint account may be subject to satisfy any legal process against you or your account pursuant to applicable law notwithstanding any claim or assertion of actual ownership of the funds in the account.

10. **POWER OF ATTORNEY.** The Bank may in its sole discretion refuse to honor or accept a Power of Attorney to open, close, deposit, or withdraw funds from your account or to supply endorsements on checks or any other item or to take any other action with respect to your account. We may require the agent or attorney-in-fact to confirm in an affidavit that the power has not been revoked or terminated or that you are not deceased. We may continue to recognize the authority of your agent or attorney-in-fact until we receive and have a reasonable opportunity to act upon notice of your death or written notice of revocation or termination of the Power of Attorney. We may require that you register the Power of Attorney with the appropriate recording authorities. As may be permitted, we reserve the right to restrict the nature or size of the transactions the agent or attorney-in-fact may conduct on your behalf and we may require that you personally authorize such transactions. The Bank may permit the principal or an authorized signer to conduct transactions against the account even if the Bank has recognized a Power of Attorney to the account. The principal shall have access to an account opened in his/her name under a Power of Attorney despite not having signed a signature card. The Bank in its sole discretion may refuse to recognize a Power of Attorney executed by one joint owner of a Joint Account without the consent of the other Joint Account owner(s). You agree to indemnify and hold Bank harmless for accepting and/or honoring any Power of Attorney, or copy thereof, which Bank accepts in good faith and believes is valid and authorized by you.

11. **GOVERNING LAWS.** Your account is governed by the terms of this Agreement, the laws and regulations of the United States and, to the extent state law is applicable, the laws of the state where your account is located. The Bank determines where your account is located as follows:

- If you opened your account in person, it is located in the state where you opened it;
- If you opened your account by telephone, mail, online or other remote means, and you resided in a state where we had branch offices at that time, it is located in that state;
- But if you resided anywhere other than a state where the Bank has a branch office, your account is located in North Carolina and the applicable state law will be North Carolina.

If state and federal law are inconsistent, or if state law is preempted by federal law, federal law governs. Additionally, the account is subject to the Uniform Commercial Code, except as specifically amended herein, applicable Federal laws and regulations, and Federal Reserve and clearing house rules and procedures in effect from time to time. In the event no party elects to arbitrate a Claim, you and the Bank agree that any lawsuit or other such proceedings arising from or relating to a Claim (other than small claims, as provided in the arbitration provision of this Agreement) shall be subject to the exclusive jurisdiction of the courts of the state whose law governs your account without regard to any conflicting choice of law rules and that venue shall lie in the same state as the law governing your account exclusive of any other state or jurisdiction.

12. **COSTS AND EXPENSES.** You agree to be responsible to the Bank for its loss, costs, or expenses, including, without limitation, reasonable attorneys' fees, as a result of your breach of the terms of this Agreement, your illegal or improper activity or your negligent conduct. You authorize the Bank to deduct any such costs and expenses from your account without prior notice to you. Your responsibility for costs and expenses may include disputes between you and the Bank or situations where the Bank becomes involved in a dispute between you and some other party. The recovery of any costs and attorney's fees in a matter resolved through judicial or administrative procedure shall be determined in accordance with the rules of the court or administrative forum. THIS PARAGRAPH DOES NOT APPLY TO DISPUTES PURSUED THROUGH THE ARBITRATION PROVISIONS IN THIS AGREEMENT, THE TERMS OF WHICH SHALL GOVERN RECOVERY OF COSTS AND FEES FOR SUCH DISPUTES.

To the extent permitted by applicable law: (a) we shall not be liable for any liability, loss, or damage that may arise when we are acting in accordance with applicable laws, regulations, rules, this Agreement, or our agreements with any financial institutions regarding the transaction of your business under the account or by any acts or conditions beyond our control: (b) IN NO EVENT AND UNDER NO CIRCUMSTANCES SHALL ANY PARTY BE LIABLE TO EACH OTHER OR ANY THIRD-PARTY FOR SPECIAL, PUNITIVE, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL, OR INDIRECT DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; and (c) we shall only be liable for your damages, as provided in this section, caused by our gross negligence or wanton and intentional misconduct.

13. **CONTACT AND ALERTS.** In order for us to service your account, we may contact you by phone, text, email or mail. You give the Bank and its agents express consent to contact you at any telephone number, email address or physical address that you have provided to us. When we call you, you agree that we may leave prerecorded or artificial voice messages. You also agree that we may use automatic telephone dialing systems in connection with calls or text messages sent to any telephone number you give us, including wireless numbers that may result in charges to you.

14. **DORMANT ACCOUNTS.** With the exception of time deposits and IRAs, an account will be classified as "dormant" if there has been no owner generated activity on the account, including any deposits to or withdrawals from the account, or other account related contact for a period of twelve months or more. Recurring or Automatic Clearing House (ACH) or other similar electronic deposits or debits are not considered to be owner generated activity except where allowed by applicable state law. For an account classified as dormant we may, at any time in our discretion, reject any transaction in order to protect the account against unauthorized activity. For any dormant account, we reserve the right to cease charging any non-transaction based account fees previously assessed to the account if required by state law. Assessment of such fees will recommence without additional notice when the account is no longer dormant. In accordance with governing state law, accounts which have been dormant for the statutory number of years will be closed and transferred to the state or other designated governmental agency under its escheatment laws. To recover funds from your account following escheatment, you must file a claim with the applicable agency. You agree that we may rely on an address change or notification received by us from a third party vendor or the U.S. Postal Service and other governmental sources to update your address on our records (though such update will not be considered owner generated activity).

15. **AUTHORIZATION OF TRANSFERS.** You authorize the Bank to make transfers of funds from time to time from any deposit or credit account upon instruction of any individual using a correct account name, account number, security code, confidential identification number, or other information the Bank has on file about you, your account or any other authorized signer on your account, and whether given orally, by telephone, in person, in writing, through an ATM, point-of-sale terminal, or any other method. Any such transfers may also be governed by separate agreement with the Bank pertaining to such services. You acknowledge that the Bank has no method to determine whether a transaction conducted with the use of a valid account name, account number security code or other information which the Bank has on file about you or your account was proper and therefore authorize the Bank to complete any such transaction in which the Bank receives such identifying information.

## H. RULES APPLICABLE TO CERTAIN ACCOUNTS

1. **CHECKING SUB-ACCOUNTS.** All interest bearing and non-interest bearing checking (transaction) accounts offered by the Bank are designated as "Money Management Accounts." Savings and "money market" deposit accounts are not considered "Money Management Accounts." For most purposes, Money Management Accounts are treated as a single account for certain record keeping, fees, minimum balances, and paying items.

   For regulatory accounting purposes, your checking account will consist of two "subaccounts" on our records. One sub-account is a checking account of the type designated by the account title ("Checking Sub-Account"). The other sub-account is a money market account ("Money Market Sub-Account"). If the checking account is interest bearing, interest will accrue on the combined collected balance on deposit in both of these sub-accounts at the interest rate established for the applicable checking account. Therefore, the Annual Percentage Yield (APY) earned for the account is based on the combined collected balance on deposit in both sub-accounts during the statement cycle. If the checking account is non-interest bearing, no interest will be paid on the sub-account.

   The Checking Sub-Account is classified as a "transaction" account from which an unlimited number of transfers of funds may be made; the Money Market Sub-Account is classified as a "money market" account in which case the number of transfers of funds from the account may be limited to six (6) per statement cycle. The limitation on transfers from the Money Market Sub-Account during a statement cycle is the determining factor for the procedure for

29

transfers between the sub-accounts described below.

Funds on deposit in the Money Market Sub-Account may be maximized during each monthly statement cycle by automatic transfers from the Checking Sub-Account, which will minimize Funds on deposit in the Checking Sub-Account. In order to accomplish this goal, funds on deposit in the Checking Sub-Account in excess of the Target Balance, which is defined below, may be automatically transferred to the Money Market Sub-Account until such time in each monthly statement cycle that a total of six (6) transfers have been made from the Money Market Sub-Account back to the Checking Sub-Account to cover checks presented for payment or debits made from the Checking Sub-Account. Following the sixth such transfer from the Money Market Sub-Account to the Checking Sub-Account, no further transfers will be made from the Checking Sub-Account to the Money Market Sub-Account until the beginning of the next monthly statement cycle.

The Target Balance is a designated balance which is maintained in the Checking Sub-Account by automatic transfer of funds from the Money Market Sub-Account. The Target Balance is established for each Checking Sub-Account based on the type of checking account designated by the Bank as a Money Management Account and is subject to change from time to time without notice.

If checks presented and debits made against the Checking Sub-Account during the monthly statement cycle exceed the established target balance in the Checking Sub-Account, a transfer from the Money Market Sub-Account to the Checking Sub-Account will automatically be made by the Bank in an amount sufficient to pay the check(s) presented or debits made and to re-establish the Target Balance. The remaining balance in the Money Market Sub-Account will be transferred to the Checking Sub-Account, when the amount of the item(s) presented or debits made to the Checking Sub-Account plus the Target Balance exceeds the balance on deposit in the Money Market Sub-Account. Upon the sixth transfer from the Money Market Sub-Account to the Checking Sub-Account during any monthly statement cycle, the entire balance remaining in the Money Market Sub-Account shall be transferred to the Checking Sub-Account. At the end of each monthly statement cycle all funds on deposit in the Checking Sub-Account in excess of the Target Balance will be automatically transferred to the Money Market Sub-Account and the transfer process will begin anew.

The structure of the Money Management Accounts has no effect on the applicability of FDIC insurance coverage to the account.

2. **NON-INTEREST BEARING CHECKING ACCOUNTS.** The Bank offers several non-interest bearing business checking accounts. Most accounts come with a standard monthly maintenance fee. Some accounts also offer certain qualifiers to avoid the monthly maintenance fee. Others have benefits that help reduce or eliminate fees. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Transfers and Withdrawals.** You may make transfers or withdrawals to or from these accounts in any amount, at any time, and by any means acceptable to the Bank, with no limitation on the number of transfers, including third- party transfers.

3. **INTEREST BEARING CHECKING ACCOUNTS.** The Bank offers several interest bearing business checking accounts. Most accounts come with a standard monthly maintenance fee. Some accounts also offer certain qualifiers to avoid the monthly maintenance fee. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Transfers and Withdrawals.** You may make transfers or withdrawals to or from these accounts in any amount, at any time, and by any means acceptable to the Bank, with no limitation on the number of transfers, including third- party transfers.

**Compounding and Crediting of Interest.** The Bank will begin to accrue interest on items deposited in an interest bearing transaction account no later than the first business day on which the Bank receives credit for such items. Interest is compounded daily and credited on the last day of the statement cycle. If the account is closed before interest is credited, you will not receive the accrued interest. For IOLTA accounts only, interest is not compounded but it is based on simple interest and it is credited to a separate legal services account on the first business day after the 5th of the following month. For Analyzed Interest Checking accounts only, interest is not compounded but it is based on simple interest and credited to the account on the first business day after the 20th of the following month.

**Balance Calculation.** Interest is calculated on the full amount of the collected balance in the account each day. The daily balance method is used to calculate the interest in accounts. Under this method, a daily periodic rate of interest is applied to the collected balance in the account each day. (For IOLTA accounts only, interest is calculated on the full amount of the average monthly collected balance. For Analyzed Interest Checking accounts only, interest is calculated on the average positive monthly collected balance less balances required to offset or reduce balance-based service fees.)

**Variable Interest Rate.** All interest bearing business checking accounts are variable rate accounts, and may be a rate of zero. The Bank, at its discretion, may change the interest rate on the account at any time. Interest may be calculated on certain interest bearing business checking accounts based upon a tiered rate schedule where different rates may apply according to the balance maintained in the account.

4. **MONEY MARKET AND SAVINGS ACCOUNTS.** The Bank offers business money market and savings accounts. Each account comes with a standard monthly maintenance fee or has certain qualifiers to avoid monthly maintenance fee. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Limitations on Withdrawals and Transfers.** For money market and savings accounts, you are permitted to make transfers or withdrawals to or from the account in any amount and at any time subject to the Bank's right to require seven (7) days written notice prior to withdrawal of all or part of the funds on deposit. Withdrawals and transfers are subject to fees as disclosed in the Business Deposit Accounts Fee Schedule.

**Compounding and Crediting of Interest.** Interest begins to accrue no later than the first business day the Bank receives credit for the deposit of non-cash items. Interest is compounded daily and credited on the last day of the statement cycle. If the account is closed before interest is credited, you will not receive the accrued interest.

**Balance Calculation.** Interest is on the full amount of the collected balance in the account each day. The daily balance method is used to calculate the interest in these accounts. Under this method, a daily periodic rate of interest is applied to the collected balance in the account each day.

**Variable Rate Accounts.** Except as otherwise provided, money market and savings accounts will be variable rate accounts. The interest rate may change at any time and in our sole discretion. Interest may be calculated on certain money market and savings accounts based on a tiered rate schedule where different rates may apply according to the balance maintained in the account.

I. **CERTIFICATES OF DEPOSIT**

**General Applicability.** The terms, conditions, and disclosures set forth in this section apply to all Certificates of Deposit, whether they are represented by a written certificate or are book entry Certificates of Deposit (collectively, "Certificates of Deposit"), unless it is indicated that they are applicable to a specific type of Certificate of Deposit only, or where the terms and conditions are superseded by terms and conditions set forth on the Certificate, or on the receipt for a Book Entry Certificate of Deposit, or in some other written contract entered into at the time of the initial deposit.

**Definitions.** For purposes of this section, "term" shall apply to the number of days or months for which the Depositor agrees to have funds remain on deposit at the Bank; "maturity" and "maturity date" refer to the last day of the term of the Certificate of Deposit. This disclosure is in addition to the Client Summary or Interest Rate Schedule, and the Certificate of Deposit Receipt.

**Calculation of Interest.** Compounding and Crediting. Interest on all Certificates of Deposit begins to accrue no later than the first business day the Bank receives credit for the deposit of non-cash items. We calculate interest on the full amount of the collected balance in your account each day. We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day. The Annual Percentage Yield ("APY") assumes interest will remain on deposit until maturity. A withdrawal prior to maturity will reduce earnings. Interest on all Certificates of Deposit having a principal balance of $99,999.99 or less is compounded daily and is credited to your account according to its specific term. All Certificates of Deposit with terms of greater than one (1) year pay interest at least annually. If the term of your Certificate of Deposit is thirty (30) days or less, interest will be credited to principal at renewal. Interest on all Certificates of Deposit having a principal balance of $100,000.00 or more is

calculated as simple interest and credited to the principal annually on the anniversary date of the Certificate of Deposit unless it has a term of less than a year in which event interest is credited to principal at maturity.

**Fixed Interest Rate.** Certain Certificates of Deposit pay the rate of interest for the term of the certificate as provided at account opening or in the renewal notice for each automatic renewal. The interest rate, however, may be adjusted by the Bank in the event the Depositor makes a partial withdrawal that reduces the deposit balance below the minimum required to earn the existing rate. The adjustment to the interest rate is calculated by utilizing the current rate tiers, which are determined by deposit balance and term, established periodically by the Bank. Under no circumstances will the rate be increased above the interest rate disclosed on the Client Summary or the last disclosed rate. The Bank may modify the Certificate of Deposit to accrue interest at the Bank's current rate of interest until the next renewal date, based on current rate tiers for the remaining balance and term of the Certificate of Deposit.

**Variable Interest Rate.** Variable Interest Rate Certificates of Deposit pay the initial rate of interest disclosed at account opening or in the renewal notice for each automatic renewal period. After the expiration of the initial interest rate, each Certificate of Deposit is subject to interest rate and APY changes determined at our discretion, based upon the terms of the individual type of Certificate of Deposit.

**Renewal.** All Certificates of Deposit automatically renew at maturity upon the same terms and conditions as set forth for the original Certificate except for the interest rate and for any terms and conditions that may have been modified by the Bank prior to renewal, notice of which has been given in accordance with this Agreement. If the Certificate of Deposit has a term of less than thirty-two (32) days, you have one grace day beginning the calendar day after the renewal date to change the term of the Certificate of Deposit. If the Certificate of Deposit has a term of thirty-two (32) days or more, you may change the term of a Certificate of Deposit by notice to the Bank during the ten (10) calendar day grace period beginning the day after the renewal date. Changes in the principal amount of the Certificate of Deposit are subject to the restrictions set forth below. Modifications will be reflected on the renewal notice. Certificates of Deposit of any term shall be automatically renewed at the current interest rate designated by the Bank at the time of renewal for Certificates of like type, term, and amount. For any Certificate of Deposit initially offered with a special bonus rate, the renewal will be at an interest rate designated by the Bank at the time of renewal, which shall be a comparable rate to other retail Certificates of Deposit of like term and amount. Additional deposits or partial withdrawals may be permitted at renewal subject to the following:

**Certificates of Deposit with a Term of Less Than 32 Days.** Additional deposits or partial withdrawals of principal and interest may be made on the grace day after the renewal date.

**Certificates of Deposit with a Term of 32 Days or More.** Additional deposits and partial withdrawals of principal and interest may be made during the ten (10) calendar day grace period beginning on the day after the renewal date.

**Minimum Balance.** Partial withdrawals of principal and interest may be made at renewal, provided that the balance remaining in the account after the partial withdrawal satisfies the Bank's minimum deposit requirements for the Certificate of Deposit.

**Redemption.** The following restrictions apply to the redemption of a Certificate of Deposit without penalty and the payment of interest after maturity:

**Automatically Renewable Certificates of Deposit with a Term of Less Than Thirty-Two (32) Days.** Redemption without penalty may be made on the one day grace period following the maturity date. If not redeemed or modified during the grace period, the Certificate of Deposit shall accrue interest at the current offered rate for Certificates of Deposit of the same term, type, and amount.

**Automatically Renewable Certificates of Deposit with a Term of Thirty-Two (32) Days or More.** Redemption without penalty may be made during the ten (10) calendar day grace period beginning the day after the maturity date. If the Certificate of Deposit is redeemed within the grace period, interest will not be paid for the days after the maturity date through the date of redemption. If not redeemed or modified within the grace period, interest shall accrue at the current offered rate for Certificates of Deposit of the same term, type, and amount.

**Withdrawal of Interest.** With the Bank's consent, you may make a withdrawal of all or part of the accrued interest on a Certificate of Deposit prior to its maturity date provided that the remaining balance is at least equal to the original principal amount of the Certificate of Deposit. Interest that has been credited to the Home Saver CD and the College Saver CD may not be withdrawn until the maturity of the Home Saver or the College Saver Certificate of Deposit.

**Withdrawal of Principal Prior to Maturity.** Withdrawals of principal from a Certificate of Deposit prior to maturity may be permitted provided the principal balance remaining in the account continues to meet the Bank's minimum deposit requirement. In addition, certain early withdrawal penalties will apply and the interest rate may also be reduced.

**Early Withdrawal Penalties.** Except as otherwise disclosed:

- Certificates of Deposit with a term of less than 3 months, the penalty shall be all interest that would have been earned or $25, whichever is greater.
- Certificates of Deposit with a term of 3-12 months, the penalty shall be an amount equal to 3 months simple interest earned on the principal amount withdrawn or $25, whichever is greater.
- Certificates of Deposit with a term of 13-23 months, the penalty shall be an amount equal to 6 months simple interest earned on the principal amount withdrawn or $25, whichever is greater.
- Certificates of Deposit with a term 24 months or greater, the penalty shall be an amount equal to 12 months simple interest on the principal amount withdrawn or $25, whichever is greater.

**Medical Emergency.** An early withdrawal of principal for a medical emergency may be permitted without an early withdrawal penalty if: the initial deposit and any additional deposit have been on deposit at least seven (7) calendar days prior to withdrawal; there have been no partial withdrawals for six (6) calendar days preceding the withdrawal; and the owner of the Certificate of Deposit maintains a Vantage Checking, Private Vantage Checking, Asset Management Account, Golden Advantage, Elite Gold, or Senior Checking account at the time of the withdrawal.

**Death or Incompetency.** If a Depositor dies or is judicially declared mentally incompetent after purchasing a Certificate of Deposit, the Bank may honor one (1) request for withdrawal of the deposit prior to maturity without penalty.

**NOTE:** If the amount of the penalty exceeds the actual interest accrued for the term, whether paid or unpaid, the penalty shall be withheld from the principal of the Certificate of Deposit.

## ADDITIONAL TERMS FOR THE FOLLOWING COMMERCIAL CERTIFICATE OF DEPOSITS

**Business Treasury CD.** The interest rate will be determined at the Bank's discretion but shall not be less than one percent below the discount rate of the preceding month's last auction of the United States Treasury Bill with a maturity of 3 months. The Bank may make changes to the interest rate on your Truist Business Treasury CD at any time. Additional deposits of at least $100.00 are allowed at any time and may be made in person or by draft from a Truist deposit account. Electronic deposits from non-Truist accounts are not permitted. Interest will accrue on all additional deposits at the interest rate on the account at the time of the additional deposit. During the term of the CD, and for any subsequent renewal, you are permitted one "penalty free" withdrawal each month provided that the funds have remained on deposit for at least seven (7) calendar days and there have been no partial withdrawals for six (6) calendar days preceding the withdrawal.

**Public Fund Treasury CD.** The interest rate will be determined at the Bank's discretion but shall not be less than one percent below the discount rate of the preceding month's last auction of the United States Treasury Bill with a maturity of 3 months. The Bank may make changes to the interest rate on your Truist Public Fund Treasury CD at any time. No additional deposits are allowed except at renewal, following the guidelines described in the previous section titled "Additional Deposits and Partial Withdrawals." However, during the term of the CD, and for any subsequent renewal, you are permitted one "penalty free" withdrawal each month provided that the funds have remained on deposit for at least seven (7) calendar days and there have been no partial withdrawals for six (6) calendar days preceding the withdrawal.

## J. AVAILABILITY OF FUNDS

**Policy.** Truist Bank's policy applies to Business Checking Accounts, Interest Checking, Money Market (excluding IRAs) and Savings Accounts.

**Deposit Received.** For Business Accounts, please see the section below titled "Collected" Funds Availability for Business Accounts.

If a check is deposited, we may place a hold on the funds which will delay the availability of the funds. The hold may be based upon how long your account has been open, amount of the deposit, type of item(s) deposited, how your deposit is made and how you manage your account. If checks are presented or withdrawals made against funds that are not

yet available or are subject to a longer hold, a returned item or overdraft fee may be assessed to your account and the checks may be returned unpaid.

This policy does not apply to deposited items drawn on financial institutions located outside of the United States.

**Determining the Business Day of a Deposit.** For determining the business day of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit during regular business hours on a business day that we are open, we will consider that day the day of your deposit. However, if you make a deposit after the end of
a current business day, a Saturday or Sunday, a federal holiday, or on a day we are not open; we will consider the deposit made on the next business day we are open.

The Bank determines when deposited items are considered collected or available for the payment of checks or withdrawal based on the number of business days from the day of your deposit.
The business day of your deposit is indicated on the deposit receipt provided by the teller. Our earliest business- day cutoff time at a banking office is 2:00 p.m. local time. Later business-day cutoff times may apply in certain offices or locations. Inclement weather, natural disasters, or computer or electronic failures may also affect the banking day and business hours.

**Immediate Availability.** Funds from the following deposits are available on the business day we receive the deposit.
- Wire Transfers
- Electronic Deposits
- Cash deposited at a branch or ATM (excludes coins until counted and verified)

**Same-Day Availability.** Funds from the following deposited items, also known as Next-day availability items, are available for withdrawal on the first business day after the day of your deposit, unless we delay your availability as described in the Longer Delays May Apply section. These checks must be payable to you, deposited to your account, (other than a U.S. Treasury check), made in person to a Truist employee and you may have to use a special deposit slip for the items noted below with an "*":

- SunTrust Bank checks
- BB&T Bank checks
- Truist Bank checks
- U.S. Treasury checks
- U.S Postal Money Orders
- Federal Reserve Bank checks
- Federal Home Loan Bank checks
- State, local government and U.S. government checks *
- Cashier's, Certified, and Teller's checks *

In some cases, when you do not make your deposit in person to one of our employees (excluding Treasury checks), funds from these deposits will be available on the second business day after the day of your deposit.

**Second Business Day Availability.** In some cases, we may not make all of the funds from a check available on the first business day after the day of the deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. The first $225 will be made available during nightly processing on the business day we receive your deposit. If we are not going to make all of the funds from a check deposit available on the first business day after the day of your deposit, we will notify you at the time you make your deposit. We also will tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice no later than the next business day after we receive your deposit. If you will need the funds from a deposit right away, you should ask when the funds will be available.

**Longer Delays May Apply.** Funds you deposit by check may be delayed for a longer period under the following circumstances:

- We believe a check you deposit will not be paid
- You deposit checks totaling more than $5,525 on any one day.
- You redeposit a check that has been returned unpaid.

- You have overdrawn your account repeatedly in the last six months.
- There is an emergency such as failure of computer or communications equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit. When a hold is placed for longer than two business days, you will not have any of the deposited funds immediately available for use.

During the delay, the funds are unavailable, and you may not withdraw the funds. If checks are presented or withdrawals made against unavailable funds, a return item fee or overdraft fee may be assessed to your account and the checks may be returned unpaid.

We may refuse to accept a check for deposit if we believe the check is not collectible. In this case, you may present the check for payment directly to the paying bank or you may request us to send the item to the paying bank for collection in your name.

**The following Section applies to Business Accounts only "Collected" Funds Availability for Business Accounts**

When you deposit a non-Truist Bank check into your account, the Bank must collect the funds from the "paying bank." The check is sent directly to the Paying Bank or to the Federal Reserve Bank (or another clearing bank) and the Bank receives provisional credit (pending final payment by the paying bank). The check is then presented to the paying bank. Once the presentment process is completed, the funds are deemed "collected." Use of these funds prior to this time is considered **"drawing against uncollected funds."**

A per-item fee may be assessed to your account if you draw against uncollected funds.

The number of collection days on check deposits depends on the location of the paying bank. You may request a copy of Truist Bank's check-processing availability schedule to determine when checks are considered collected.

Although a check you deposit may be considered collected by us, the paying bank may still return the check to us unpaid.

To ensure there are sufficient funds in your account to cover the check amount if the deposited check is returned, we may place a "hold" on your account for the amount of the check. Refer to the following section in this disclosure for the number of days availability may be delayed when a hold is placed on the account:

**Deposits at Night Depository Facilities and Automated Teller Machines (ATMs).** If you make your deposit after 7:00 a.m. ET at a Truist Bank night depository or after 9:00 p.m. ET at a Truist Bank ATM or Truist Bank Interactive ATM on a business day or on a day we are not open, we will consider that the deposit was made on the next business day we are open.

Generally all cash and the first $100 of your total check deposit will be made immediately available, with the remainder of your deposit being available as outlined in this policy, for deposits received at Truist's ATM's. Please note that for check deposits made between 9 pm and 9:30 pm ET at the ATM, the $100 credit will not be immediately available.

You should consult your transaction receipt for the exact posting date of any ATM deposit. Your "posting date" will be the same date as the transaction date. However, if the deposit is made after the cut-off time for the transaction date or on a non-business day then the "posting date" will be the next business day after the transaction date on your receipt.

**Mobile Deposits.** Mobile deposits are generally available to you on the first business day after the day we receive your deposit. If you make a deposit before cut-off which is 9:00 p.m. ET on a business day, we will consider that the day of your deposit. If your deposit after 9:00 p.m. ET, we consider the deposit made on next business day we are open.

Before making a mobile deposit, please endorse the back of the check with the words "For Truist Mobile Deposit Only" or the check may be refused for deposit.

**Online, Telephone, and In-Branch Electronic Transfers Between Truist Accounts.** Online, telephone, and in-branch electronic transfers between your Truist accounts are considered deposits. These deposits are available to you on the same business day we receive your deposit. Once they are available, you can withdraw the funds in cash and we will use the funds to pay checks that you have written.

If you make a deposit before 9:00 p.m. ET on a business day, we will consider that the day of your deposit. If you make a deposit after 9:00 p.m. ET on a business day we will consider that the deposit was made on the next business day we are open.

**Other Electronic Deposits.** Truist offers a variety of services that allow clients to process deposits such as Outside Transfer Service (OTS), INGO and Zelle. These are considered electronic direct deposits and are subject to the availability practices outlined in this policy. In addition to the terms and conditions of the applicable service agreements. If you are registered with the Zelle service, deposits received through Zelle will be available to you immediately. Deposits received as a Real-Time Payment (RTP) will be available to you immediately. Funds received from a Real-time Payment will be considered a same day deposit if received prior to 9:00 p.m.

**Special Rules for New Account Holders.** If you are a new customer, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $5,525 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $5,525 will be available no later than the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,525 may not be available until the second business day after the day of your deposit. Funds from all other check deposits may not be available until the ninth business day after the day of your deposit.

ATM deposit functionality may be limited for temporary access devices issued for new deposit accounts.

**Special Rules for Money Market and Savings Accounts.** In some cases, we may not make all of the funds from a check available on the first business day after the day of the deposit. Depending on the type of check that you deposit, funds may not be available until the fifth business day after the day of your deposit. If we are not going to make all of the funds from a check deposit available on the first business day after the day of your deposit, we will notify you at the time you make your deposit. We also will tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice no later than the next business day after we receive your deposit.

**Depositor's Responsibility.** We may make funds from deposited checks available to you before the funds are collected. You are still responsible for any deposited checks that are returned unpaid and for any other problems concerning your deposit, even if you have already withdrawn the funds from your account.

**Collection of Rejected and Returned Items.** The collection process is delayed or interrupted if the check rejects during processing. If you deposit a check that rejects during processing, collection of the funds may be delayed one additional business day. If a check you deposit is returned unpaid and charged back to your account, we may hold the amount of the returned check and withhold the use of the funds two business days from the date the returned check is charged back to the account. Returned checks that we automatically represent to the paying bank on your behalf must also go through the collection process again. Therefore, use of funds equal to the amount of the check(s) re-presented may be withheld up to four business days from the date the check(s) is re-presented.

**Holds on Other Checks.** If we cash a check for you that is drawn on another bank, we may place a hold on the availability of that amount of funds already in your account. Those funds will be available for withdrawal at the time funds from the check we cashed would have been made available if you had deposited it. If we accept for deposit a check that is drawn on another bank, we may make funds from that deposit available for withdrawal immediately but delay your availability to withdraw a like amount of funds that you already have on deposit in another account with us. The funds
in the other account will be available for withdrawal at the time funds from the check you deposited would have been made available, if we had placed a hold on the deposited check.

**Endorsement Standards.** Checks should be endorsed only within the area indicated as "Customer Endorsement." This area is limited to 1.5" from the trailing edge. The other areas are reserved for bank endorsements. Failure to restrict your endorsement to the indicated area may result in losses to you because of delayed or misrouted items. Truist Bank will not be liable for losses resulting from a delay in return or misrouting of deposited items caused by unreadable endorsements due to other material or markings placed in the "Depository Bank Endorsement" or "Subsequent Bank Endorsement" areas. Truist Bank reserves the right to charge these losses back to your account.

## K.  COMMERCIAL FUNDS TRANSFERS

The following rules and regulations apply to payment orders, including Automated Clearing House (ACH) credits and debits, payments received through the RTP® Network operated by The Clearing House Payments Company L.L.C., wire transfers, and other payment orders made or received by commercial depositors, which are not covered by the Electronic Fund Transfer Act as implemented by Regulation E.

**Provisional Payment.** Upon receipt of an ACH credit, or electronic, oral or written instruction for payment, we will give you provisional credit until we receive final settlement through a Federal Reserve Bank, fund transfer system, or otherwise receive payment. If we do not receive final settlement or payment, you agree to refund to us the amount provisionally credited to your Account and the party initiating the credit to you shall be deemed not to have paid you.

Notice of Receipt of Incoming Payments, ACH payments, incoming wire transfers, and other payment orders received into your account will be shown on your statement; therefore, we will not give you next day notice of receipt of such items.

**Choice of Law.** Your rights and obligations concerning payments to or transfers from your account are subject to applicable law and the rules as adopted and amended from time to time by the fund transfer system used to transmit the payment. We may use any of several different fund transfer systems. The systems and their corresponding rules and regulations include, but are not limited to: Automated Clearing House - operating rules of Nacha, Real-Time Payments System – Real-Time Payments Operating Rules, and Fedwire - Federal Regulation J and applicable Federal Reserve Bank Operating Circulars.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS, WRITE OR CALL US AT:**
844-4TRUIST or
Write: Truist Fraud Management
P.O. Box 1014
Charlotte, North Carolina 28201

If you believe an ACH debit to your account is erroneous or fraudulent, you must notify us immediately and in a time and manner that reasonably allows us to attempt to return the transaction before the applicable deadline set forth in the operating rules of Nacha (which in some cases is as short as one (1) or two (2) business days following the date the debit posts to your account). We will use good faith efforts to return the entry, but will have no liability to you in the event our attempts to return the entry are unsuccessful. If you do not notify us of the error within the required timeframe, we may not be successful in returning the entry and we will not recredit your account unless we are otherwise required to do so under the operating rules of Nacha or applicable law.

**FOR ADDITIONAL INFORMATION OR FOR QUESTIONS CONCERNING YOUR ACCOUNT:**
Telephone: 844-4TRUIST

Truist.com

Truist Bank, Member FDIC

©2023 Truist Financial Corporation

REV 02-2023

CBSA-T2

# EXHIBIT D

# Commercial Bank Services Agreement

TRUIST HH

**TABLE OF CONTENTS**

A. Legal Agreement.................................................................................................3
B. Arbitration Agreement ........................................................................................4
C. Jury Trial Waiver...............................................................................................8
D. Litigation Class Action Waiver ..............................................................................8
E. Account Opening ..............................................................................................8
F. Account Types ................................................................................................10
G. Account Rules ................................................................................................12
1. Statements....................................................................................................13
2. Deposits and Credits.........................................................................................13
3. Night Deposit Services.......................................................................................14
4. Withdrawals and Debits .....................................................................................17
5. Fraud and Unauthorized Transactions .....................................................................23
6. Bank's Stipulations/Right to Close Account ...............................................................25
7. Right to Freeze Account.....................................................................................26
8. Right of Setoff ...............................................................................................27
9. Stop Payment Orders ........................................................................................27
10. Legal Process on Your Account..............................................................................28
11. Power of Attorney ...........................................................................................28
12. Governing Laws ..............................................................................................28
13. Liability Limitation..........................................................................................29
14. Contacts and Alerts .........................................................................................29
15. Dormant Accounts ...........................................................................................29
16. Authorization of Transfers...................................................................................29
H. Rules Applicable to Certain Accounts .....................................................................29
1. Checking Sub-Accounts......................................................................................29
2. Non-Interest Bearing Checking Accounts ..................................................................30
3. Interest Bearing Checking Accounts........................................................................30
4. Money Market and Savings Accounts .......................................................................31
I. Certificates of Deposit ......................................................................................31
J. Availability of Funds.........................................................................................34
K. Commercial Funds Transfers................................................................................37

## A. LEGAL AGREEMENT

This Commercial Bank Services Agreement ("Agreement"), contains the terms and conditions that govern the relationship between Truist Bank, (the "Bank," "we" or "us") and its clients (the "Depositor," "you," "your," or "Organization,"). When you open an account you are agreeing to the terms of this Agreement. An account is deemed "open" when account documentation has been properly completed and accepted by the Bank and the account opening deposit has been accepted by the Bank. The terms of this Agreement will continue to govern your account and relationship with the Bank even after your account is closed. The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included on your account statement. The notice may explain what change has occurred and instruct you to obtain a current version of the Agreement at your local branch or online at our website, www.Truist.com. Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of this Agreement with or without notice. Continuing to maintain your account following a notice constitutes your acceptance of our changes. This Agreement cannot be changed or modified by you. Upon the effective date of a change by the Bank, the current revised version of the Agreement will govern your account, regardless of whether you obtained a copy from your branch or online. If your account was originally with a prior financial institution, the terms of this Agreement supersede any prior agreements, representations or understandings you may have had with that institution. If a language preference is requested, we may provide a translated version of our materials and documents. The English version of such documents shall be the governing documents for all purposes.

**Applicability.** By signing the Resolution for Deposit Account, account signature card or conducting transactions on your account, you have agreed to the terms of this Agreement which applies to all business accounts that you have with the Bank or may have in the future. You agree that you will not use your account for any personal, family or household purposes. This Agreement is for the benefit of, and may be enforced only by, you and the Bank and their respective successors and permitted transferees and assignees, and is not for the benefit of, and may not be enforced by, any third party. The Bank shall have no liability for its failure to perform any service as a result of computer or electronic interruptions or for the errors, acts or failures to act by others.

You acknowledge and agree that the relationship between you and the Bank created by the opening of an account is of debtor and creditor and that the Bank is not in any way acting as a fiduciary for you or for your benefit and that no special relationship exists between you and the Bank.

**Fees.** You agree to pay the Bank for all services provided in connection with your account(s) in accordance with the Bank's current schedule of maintenance fees, activity charges, and minimum and/or average balance requirements which are contained in a separate document called the "Business Deposit Accounts Fee Schedule." The Bank may change its maintenance fees, activity charges, and minimum and/or average balance requirements from time to time and will provide you notice of any change. The terms of the Business Deposit Accounts Fee Schedule, as they may be amended from time to time, are incorporated herein by reference. For the fees associated with the account or services utilized on the account, that are billed through Account Analysis, charges will be that amount recorded by the Bank's Account Analysis System. Treasury management or other services may incur additional fees that are also charged through Account Analysis in the manner and amount as agreed by separate agreement. Account Analysis charges are billed for the prior month's activity.

**Earnings Credit Rate (ECR).** ECR is applied to certain deposit accounts and can be used to lower or eliminate certain deposit and treasury management fees. ECR is a variable rate and may change any time at the Bank's discretion, and may be a rate of zero. The earnings credit on all applicable accounts is calculated by applying a monthly periodic rate to the monthly average positive available balance in the account each month as follows: **monthly average positive available balance x ECR / days in the year x days in the month.** Unless otherwise agreed upon, earnings credit is applied to your account on a monthly basis, and unused earnings credit during a month cannot be used in following months. If the earnings credit for a given month is less than the total of service charges, then the applicable fees will be assessed to the account. For purposes of this paragraph, the term "average positive available balance" means the average account balance for the statement cycle less the average amount of each day's deposit that is in the process of collection.

**Waiver.** No term of this Agreement shall be deemed waived unless the waiver shall be in writing and signed by an authorized officer of the Bank. Any failure by the Bank to insist upon your strict performance of any of the terms of this Agreement shall not be deemed or construed as a waiver of these or any other terms. Neither party shall, by mere lapse of time, be deemed to have waived any breach by the other party of any terms or provisions of this Agreement. The

3

waiver by either party of any breach shall not affect the right of the Bank to enforce any of its rights with respect to other customers or to enforce any of its rights with respect to later transactions with you and is not sufficient to modify the terms and conditions of this Agreement.

**Severability.** If any provision, or a portion thereof, of this Agreement or its application to any party or circumstance shall be declared void, illegal, or unenforceable, the remainder of the provision and the Agreement shall be valid and enforceable to the extent permitted by law.

## B. ARBITRATION AGREEMENT

## MUTUAL ARBITRATION AGREEMENT

**READ THIS PROVISION CAREFULLY BECAUSE IT HAS A SUBSTANTIAL IMPACT ON HOW DISPUTES AND CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.**

**For any Claim subject to arbitration, neither You nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with the claims of any other person or entity. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration. Unless You choose to opt out of this Mutual Arbitration Agreement in the manner and time specified below, You and we mutually agree that, if either party demands arbitration, the Parties will resolve any and all disputes between them exclusively through final, binding, and individual arbitration under the terms of this Mutual Arbitration Agreement, including the Notice of Pre-Arbitration Dispute process, rather than by filing or proceeding with a lawsuit in court. This Mutual Arbitration Agreement does not cover disputes which, as a matter of law, may not be subject to pre-dispute arbitration agreements or the excluded claims and proceedings specified below.**

**Requirement to Arbitrate.** The Parties agree that, upon either party's demand for arbitration of any Claim(s), such Claim(s) will be resolved by individual (as opposed to class, consolidated, collective, or representative) arbitration under the terms specified in this Mutual Arbitration Agreement. A "Claim" subject to arbitration is any claim, cause of action, dispute, or controversy between You and us (other than an Excluded Claim or Proceeding as defined below), whether preexisting, present, or future, which arises out of or relates to an account, this Commercial Bank Services Agreement, any transaction conducted with us in connection with an account or this Commercial Bank Services Agreement, or any aspect of our relationship, including disputes concerning the use or disclosure of information about You or us, as well as disputes concerning communications involving telephones, cell phones, automatic dialing systems, artificial or prerecorded voice messages, text messages, e-mails, or facsimile machines, such as alleged violations of the Telephone Consumer Protection Act and other statutes or regulations involving telemarketing. "Claim" has the broadest possible meaning and includes initial claims, counterclaims, cross-claims, third-party claims, and federal, state, local, and administrative claims. It includes disputes based in contract, tort (including fraud and other intentional torts), consumer rights, a state or the federal Constitution, statute, regulation, ordinance, common law, and equity, and includes claims for money damages and injunctive or declaratory relief.

**Special Definition of "We," "Us," "Our," and "Parties."** Solely for purposes of this Mutual Arbitration Agreement, the terms "Truist," "we," "us," "our," and "Parties," in addition to the meanings set forth in this Commercial Bank Services Agreement, also refer to Truist Bank and its past, present, and future parents, subsidiaries, and affiliates, as well as Truist Bank's and each of these entities' employees, agents, officers, directors, predecessors, successors, and assigns. The "Parties" refers to both You and Truist. "We," "us," "our," and "Parties" also apply to third parties if You or Truist assert a Claim against such third parties in connection with a Claim You assert against us or Truist asserts against You.

**Excluded Claims and Proceedings.** As an alternative to arbitration, either You or we may bring claims in small claims court or Your state's equivalent of small claims court, so long as the action is brought on an individual basis (*i.e.*, not a class, consolidated, collective, or representative basis) and is not transferred, removed, or appealed to a different court. Nothing in this Mutual Arbitration Agreement prevents You or us from exercising any self-help rights, including set-off as described in the Bank Services Agreement section titled "Right of Setoff." You or we also may bring an action on an individual basis in court if the action does not seek monetary relief of any kind and is limited either to preventing the

other party from using a self-help remedy or to seeking temporary or preliminary injunctive relief pending the outcome of arbitration. Pursuing any such right, action, or litigation in court shall not constitute a waiver of any party's right to compel arbitration of any other dispute or Claim(s). The term "Claim" excludes any disagreement over the arbitrability of a dispute including whether a dispute can or must be arbitrated, disputes regarding whether this Mutual Arbitration Agreement or any part of it is unenforceable, or disputes regarding the provisions labeled "Notice of Pre-Arbitration Dispute" or "Requirement of Individual Arbitration and Relief," including whether these provisions are unenforceable or have been breached; such disputes or disagreements must be decided only by a court of competent jurisdiction rather than by an arbitrator or administrator unless all Parties otherwise agree in writing.

**Federal Arbitration Act.** Notwithstanding any choice of law or other provision in this Commercial Bank Services Agreement, the Parties agree and acknowledge that this agreement evidences a transaction involving interstate commerce and that the procedural and substantive provisions of the Federal Arbitration Act (Title 9 of the United States Code) ("FAA") shall govern its interpretation and enforcement. The Parties expressly agree that this Mutual Arbitration Agreement shall be governed by the FAA even if either party is otherwise exempted from the FAA. If for whatever reason the rules and procedures of the FAA cannot apply, the state law governing arbitration agreements in the state in which You reside shall apply.

**Requirement of Individual Arbitration and Relief.** The Parties mutually agree that if You or we elect to arbitrate a Claim, such Claim must be resolved in individual arbitration. The Parties further agree that, to the maximum extent allowable by law, they each waive the right to bring or participate as a class member in a class, consolidated, collective, representative, or private attorney general proceeding, and an arbitrator shall not have any authority to hear or arbitrate any class, consolidated, collective, representative, or private attorney general proceeding for any Claim subject to arbitration under this Mutual Arbitration Agreement. The arbitrator may award relief (whether monetary, injunctive, or declaratory) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. That means that the Parties waive the right to seek public injunctive relief, other non-individualized injunctive relief, or any other remedy (such as damages) on behalf of others. In addition, except in the case of joint account owners, the arbitrator may not consolidate more than one person's claims unless all parties agree. This waiver of class, consolidated, collective, representative, and private attorney general proceedings and non-individualized relief does not prevent You or us from participating in a settlement of Claims on a class-wide, consolidated, collective, representative, or private attorney general basis, to the extent You or we do not exercise a right to opt out of such settlement. Nor does this waiver prohibit the use of a process arbitrator to decide administrative or other non-merits issues if permitted by the mass arbitration rules or other rules of the administrator and the rest of this Mutual Arbitration Agreement. If, after exhaustion of all appeals, any of these prohibitions on class, consolidated, collective, representative, or private attorney general claims or proceedings or on public or non-individualized relief is found to be unenforceable with respect to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the Parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**Arbitration Procedures.**

a) **Notice of Pre-Arbitration Dispute:** The Parties agree that good faith, informal efforts to resolve a dispute often can result in a prompt, low-cost, and mutually beneficial outcome. As a result, before commencing arbitration, the Parties must engage in a good faith effort to resolve any Claim covered by this Mutual Arbitration Agreement by providing a written notice of dispute and participating in any requested informal dispute resolution conference. The party who wishes to assert a Claim ("claimant") must first give written notice to the other party of their intent to initiate arbitration (a "Notice of Pre-Arbitration Dispute"). A Notice of Pre-Arbitration Dispute must contain all of the following: (1) the claimant's name, telephone number, and mailing address and any preferred e-mail address for communications; (2) the account number of any account at issue; (3) a detailed factual description of the nature and basis of the dispute, including the legal claims asserted; (4) the relief sought, including the basis and amount of any alleged damages; (5) the personal handwritten signature of the claimant (an electronic signature is not sufficient unless the other party agrees); and (6) if You are the claimant and have retained counsel, a statement with Your personal handwritten signature authorizing us to share information about the account and the Claim with Your counsel. The claimant agrees to cooperate with any reasonable request by the other party to verify the claimant's identity and the fact that the claimant authorized

submission of the Notice of Pre-Arbitration Dispute or the disclosure of account information to their counsel. If You are the claimant, the Notice of Pre-Arbitration Dispute must be clearly marked "Notice of Pre-Arbitration Dispute" and delivered to Truist Bank Legal Department, Attn: Notice of Pre-Arbitration Dispute, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224. If Truist is the claimant, Truist will send the Notice of Pre-Arbitration Dispute to the most recent address for You in our files.

b) **Informal Dispute Resolution Conferences:** After the Notice of Pre-Arbitration Dispute containing all of the information required in section (a) above is received, a sixty (60) day period during which the Parties must engage in good faith efforts to resolve the Claim informally ("Informal Resolution Period") will begin. During the Informal Resolution Period, either party may request a telephone or video conference to discuss resolution of the Claim ("Informal Dispute Resolution Conference") and both You and a Truist representative must personally participate in the conference. If either party is represented by counsel, that party's counsel may participate in the Informal Dispute Resolution Conference, but both You and a Truist representative must also personally participate in the conference unless You and we agree otherwise in writing. For the protection of Your confidential account information, multiple customers who are not joint account owners cannot participate in the same Informal Dispute Resolution Conference unless agreed to by all Parties in writing. The Informal Dispute Resolution Conference will take place at a mutually agreeable time, including after the sixty (60) day Informal Resolution Period if needed to accommodate the Parties' schedules in which case the Informal Resolution Period shall be extended until either the Informal Dispute Resolution Conference is held or the request for it is withdrawn. Nothing in this Mutual Arbitration Agreement shall prohibit the Parties from engaging in informal communications to resolve the Claim at any time, including before the Informal Resolution Period or the Informal Dispute Resolution Conference. Settlement discussions, including offers of settlement and the sharing of any account information, will not be disclosed in the arbitration. The Parties agree that any applicable contractual or statutory limitations period for the Claims and requests for relief set forth in the Notice of Pre-Arbitration Dispute will be tolled during the Informal Resolution Period.

c) **Commencing Arbitration:** Arbitration cannot be commenced until after the Informal Resolution Period has ended. The Notice of Pre-Arbitration Dispute and Informal Dispute Resolution Conference requirements are essential in order to give the Parties a meaningful chance to resolve Claims informally. If any aspect of these requirements has not been met, the Parties agree that a court can enjoin the filing or prosecution of an arbitration, and, unless prohibited by law, no arbitration provider shall either accept or administer the arbitration or assess fees in connection with such an arbitration. After the Informal Resolution Period has ended, if the Claim remains unresolved, either You or Truist may initiate arbitration by submitting a demand for arbitration to the arbitration administrator. The demand must include or attach all of the following to be accepted for administration: (1) the name, telephone number, and mailing address of the party initiating arbitration and any preferred e-mail address for communications; (2) the account number of any account at issue; (3) a statement of the legal claims being asserted, the detailed factual basis of those claims, and the remedies sought; (4) the personal handwritten signature of the party initiating arbitration (an electronic signature is not sufficient); and (5) a copy of the Notice of Pre-Arbitration Dispute. If the party initiating arbitration is represented by counsel, counsel must also sign the demand for arbitration under a certification that, to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Any demand for arbitration by You must be delivered to Truist Bank Legal Department, Attn: Arbitration Demand, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224, and any demand for arbitration by us must be sent to the most recent address for You in our files.

d) **Electing Arbitration:** If a Claim subject to arbitration is asserted in a lawsuit in court (whether in a complaint, counterclaim, cross-claim, or third-party claim, or in any other way), the party against whom the Claim is asserted may elect arbitration of the Claim, including by making a demand that the other party arbitrate their Claim or by filing a motion to compel arbitration with the court. No actions taken by the parties in a lawsuit shall constitute a waiver of any rights under the Mutual Arbitration Agreement. If arbitration is elected, the party bringing the Claim must follow the arbitration procedures set forth in the Mutual Arbitration Agreement, including the Notice of Pre-arbitration Dispute.

e) **Arbitration Administrator and Rules:** The arbitration will be administered by JAMS, 18881 Von Karman Ave., Suite 350, Irvine, CA 92612, www.jamsadr.com, 800-352-5267. The rules and forms of JAMS may be obtained by writing to JAMS at the address listed above or by visiting their website. If JAMS cannot or will not administer the arbitration in accordance with this Mutual Arbitration Agreement, the Parties may agree upon another administrator, or if they are unable to agree, a court shall determine the administrator. No entity may serve as administrator if it fails to abide by the terms of this Mutual Arbitration Agreement unless all Parties otherwise consent in writing. The arbitration will proceed in accordance with this Mutual Arbitration Agreement and the administrator's rules and procedures in effect when the arbitration commences, including any streamlined or expedited arbitration rules and any mass arbitration procedures such as the JAMS Mass Arbitration Procedures and Guidelines. In the event there is a conflict between the administrator's rules and procedures and this Mutual Arbitration Agreement, the Mutual Arbitration Agreement shall supersede any and all conflicting arbitration administrator's rules or procedures. To the extent there is a dispute over which arbitration provider shall administer the arbitration, only a court (and not an arbitrator or arbitration administrator) can resolve that dispute, and the arbitration shall be stayed until the court resolves that dispute.

f) **Arbitration Fees:** Unless a different allocation is required for this Mutual Arbitration Agreement to be enforceable, the rules of the administrator will govern the allocation and payment of filing, administrative, and arbitrator fees. Each party agrees that they will not oppose or interfere with any negotiations or agreements between the other party and the arbitration administrator relating to that party's portion of the fees. The arbitrator, however, may disallow any private agreement between an administrator, on the one hand, and the negotiating party, on the other hand, if the arbitrator believes that the private agreement undermines his or her neutrality as arbitrator.

g) **Arbitrator Selection:** A single arbitrator will be selected in accordance with the rules of the administrator. Unless You and we agree otherwise, the arbitrator must be a practicing attorney with ten or more years of experience or a retired judge. Either party may also request appointment of a process arbitrator if permitted by the administrator's rules or procedures.

h) **Arbitration Hearings and Awards:** The arbitrator may conduct the proceedings by telephone, video conference, or in-person hearing. The arbitrator must allow the parties to submit dispositive motions, such as motions to dismiss or for summary judgment, for ruling. Before the hearing, the arbitrator may issue orders allowing the Parties to conduct discovery, including of third parties, sufficient to allow each party to prepare their claims and defenses. The arbitrator shall take into consideration that arbitration is designed to be a speedy and efficient method for resolving disputes. The arbitrator must apply the same state or federal substantive law that a court would apply and honor all privileges recognized by applicable law, including the attorney-client privilege and attorney work product doctrine. The arbitrator, however, is not bound by judicial rules of procedure and evidence that would apply in a court or by state or local laws that relate to arbitration provisions or proceedings (unless required for this Mutual Arbitration Agreement to be enforceable). Except as provided in the Requirement of Individual Arbitration and Relief section above, the arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law under the circumstances, including statutory awards of attorneys' and expert witness fees and punitive damages. If the arbitrator determines that a party's claim or counterclaim violates the standards set forth in Federal Rule of Civil Procedure 11(b), the other party is entitled to recover its attorneys' fees, costs, and expenses associated with defending against the claim or counterclaim. The arbitrator may also impose sanctions on counsel if appropriate. An arbitrator may consider awards from arbitrations involving other parties, but an arbitration award is not binding and has no preclusive effect in any proceeding, whether in court or arbitration, involving different parties. The arbitrator's decision or award shall be in writing with findings of fact and conclusions of law. A judgment on the award may be entered by any court having jurisdiction. If at any time the arbitrator or arbitration administrator fails to enforce the terms of this Mutual Arbitration Agreement, either party may seek to enjoin the arbitration proceeding in a court of competent jurisdiction, and the arbitration shall automatically be stayed pending the outcome of that proceeding.

i) **Appeal of Arbitration Awards:** The arbitrator's award shall be final and binding on all Parties, except for any right to judicial review provided by the FAA. However, if the amount of the Claim exceeds $1,500,000, or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit exceeding $1,500,000, either party can, within thirty (30) days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel

7

administered by the administrator. The panel shall reconsider any aspect of the initial award requested by either party. The decision of the panel shall be by majority vote. References in this Mutual Arbitration Agreement to "the arbitrator" means the panel if an appeal of the arbitrator's decision has been taken. Any filing fees and other similar and usual administrative costs of such an appeal will be borne by the party taking the appeal subject to reallocation by the arbitrator panel as justice requires. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

**Forum Selection.** To the greatest extent permitted by law, in addition to any other court that may have jurisdiction, You and we agree that an action to enforce or challenge any part of the Mutual Arbitration Agreement may be brought in North Carolina federal or state court. You and we consent to the jurisdiction of those courts and waive any objections as to personal jurisdiction or the laying of venue.

**Survival and Severability.** This Mutual Arbitration Agreement shall survive the closing of Your account and the termination of any relationship between us, including the termination of this Commercial Bank Services Agreement. Except as specified in the Requirement of Individual Arbitration and Relief section, if any portion of this Mutual Arbitration Agreement is found unenforceable, it shall be severed from the Mutual Arbitration Agreement such that the remainder of this Mutual Arbitration Agreement shall be enforceable to the fullest extent permitted by law. A determination that this Mutual Arbitration Agreement is unenforceable or void in its entirety shall have no effect on the validity or enforceability of any other arbitration agreement between or applicable to the Parties. If a court determines that a public injunctive relief claim may proceed notwithstanding the Litigation Class Action Waiver, and that determination is not reversed on appeal, then the public injunctive relief claim will be decided by a court, any individual claims will be arbitrated, and the parties will ask the court to stay the public injunctive relief claim until the other claims have been fully decided on their merits.

**Right to Opt Out (New Accounts) – Please Read.** You may opt out of this Mutual Arbitration Agreement within thirty (30) days of opening Your account. In order to opt out, You must personally notify Truist of Your intention to opt out by submitting a written notice to Truist stating that You are opting out of this Mutual Arbitration Agreement. This written notice must be signed by You with Your personal handwritten signature (an electronic signature or signature of an attorney, agent or representative of Yours is not sufficient) and include Your name, address, account name, and account number and sent, via certified mail or by overnight carrier mail, return receipt requested, to Truist Bank Legal Department, Attn: Arbitration Opt Out, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224. In order to be effective, Your opt out notice must be received by Truist within thirty (30) days of opening Your account. This is the sole and only method by which You can opt out of this Mutual Arbitration Agreement and You may only opt out on behalf of yourself and not any third parties. Any attempt to reject this Mutual Arbitration Agreement on Your behalf by any other person or through any other method or form of notice, including the filing of a lawsuit, will be ineffective. If You opt out as provided in this subparagraph, You will not be subject to any adverse action as a consequence of that decision and You and we may pursue available legal remedies without regard to this Mutual Arbitration Agreement. If You do not send Truist proper and timely notice of Your opt out, You are agreeing to the terms of this Mutual Arbitration Agreement. Your decision to opt out of this Mutual Arbitration Agreement will not relieve You of any obligation to arbitrate disputes under other agreement(s) with Truist that contain an arbitration provision to which You may be bound as a customer. Similarly, Your decision to opt out of another arbitration provision contained in any other account or agreement shall not relieve You of Your obligation to arbitrate disputes pursuant to this Mutual Arbitration Agreement.

**Future Changes to Mutual Arbitration Agreement.** Notwithstanding any other provision in this Commercial Bank Services Agreement, if Truist makes a change to this Mutual Arbitration Agreement (other than a change to the address to which Notices of Pre-Arbitration Dispute or Demands for Arbitration must be sent), You may reject the changes by sending Truist written notice via certified mail or by overnight carrier mail to Truist Bank Legal Department, Attn: Arbitration Change Rejection, Mail Code 306-40-01-15, 1001 Semmes Avenue, Richmond, VA 23224. To be valid, Your rejection must (1) include Your name, address, account name, and account number; (2) be signed by You with Your personal handwritten signature (an electronic signature or signature by any attorney, agent, or other representative of Yours is not sufficient); and (3) be received by Truist within thirty (30) days of the first notice of the change. Any rejection of a future change does not alter, change or affect Your agreement to arbitrate in accordance with the language of any prior version of the Mutual Arbitration Agreement (as modified by any amendments that You did not validly reject).

**Impact on Pending Litigation.** This Mutual Arbitration Agreement shall not affect Your existing rights with respect to any litigation between Truist and You that is pending in a state or federal court or arbitration as of the date of this Mutual Arbitration Agreement. However, if on such date You were bound by an existing arbitration agreement with Truist, then that agreement shall continue to apply.

**Right to Consult with an Attorney.** You have the right to consult with private counsel of Your choice, at Your own expense, with respect to any aspect of, or any Claim that may be subject to, this Mutual Arbitration Agreement.

## C. JURY TRIAL WAIVER

TO THE EXTENT PERMITTED BY APPLICABLE LAW, FOR ANY MATTERS NOT SUBMITTED TO ARBITRATION, DEPOSITOR AND BANK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF THIS COMMERCIAL BANK SERVICES AGREEMENT, RELATING TO THE ACCOUNT, OR ANY OTHER DISPUTE OR CONTROVERSY BETWEEN YOU AND US OR ANY OF TRUIST'S EMPLOYEES, OFFICERS, DIRECTORS, PARENTS, CONTROLLING PERSONS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, AND ASSIGNS.

## D. LITIGATION CLASS ACTION WAIVER

TO THE EXTENT PERMITTED BY APPLICABLE LAW, FOR ANY MATTERS NOT SUBMITTED TO ARBITRATION, DEPOSITOR AND BANK HEREBY AGREE THAT ANY LITIGATION ARISING OUT OF THIS COMMERCIAL BANK SERVICES AGREEMENT, RELATING TO THE ACCOUNT, OR ANY OTHER DISPUTE OR CONTROVERSY BETWEEN YOU AND US OR ANY OF TRUIST'S EMPLOYEES, OFFICERS, DIRECTORS, PARENTS, CONTROLLING PERSONS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, AND ASSIGNS WILL PROCEED ON AN INDIVIDUAL BASIS AND WILL NOT PROCEED AS PART OF A CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION AND THE DEPOSITOR AND BANK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE ANY RIGHT TO PROCEED IN A CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION OR TO SERVE AS A CLASS REPRESENTATIVE.

## E. ACCOUNT OPENING

**Required Information.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When you open an account, or when you are added to an existing account, we will ask for your full legal name, permanent physical street address, social security number or tax identification number, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license, state ID, passport, or other primary identification documents. If you are a nonresident alien, we will record your passport number, the name of the country that issued the passport and your foreign address. We will accept a post office box only as a mailing address. You may also be asked to provide such information at other times (and on any qualifying account) upon request of the
Bank. You agree to assist the Bank in gathering information to meet any bank reporting requirements. You further agree to notify us immediately if there are any changes to the information you have provided us so we maintain the currency and accuracy of this information. If at any time we determine that the information you provided to us was false, incorrect, or of concern to the Bank, or if you refuse to provide us with the information when requested, we may close or freeze any or all of your accounts.

**Foreign Account Tax Compliance Act ("FATCA").** If interest from your account is payable to certain foreign financial institutions, investment funds, or other non-financial foreign entities you are required to certify your FATCA status and provide any other applicable information at the Bank's request. Failure to provide such certification or information may result in a 30% withholding on the payment of interest. The Bank shall not be liable for any additional amounts you may owe as a result of your failure to comply with FATCA.

**IRS Requirements.** The Internal Revenue Service (IRS) requires the Bank to obtain the taxpayer identification number (TIN) applicable to an account. We require you to certify under penalty of perjury that the TIN provided is correct and whether you are subject to backup withholding. The certification is completed on the Bank's signature card, or on IRS Form W-9, Request for Taxpayer Identification Number and Certification. Federal law requires that the Bank withhold a statutory amount of interest payments or dividend payments (referred to as backup withholding) if you:

- Fail to furnish a Taxpayer Identification Number ("TIN"), or
- The Internal Revenue Service notifies us that you furnished an incorrect TIN, or
- You or we are notified by the Internal Revenue Service that you are subject to backup withholding.

If a correct TIN is not provided at the time the account is opened, backup withholding will commence immediately. You must provide us with your TIN promptly after you receive it. After sixty (60) days, if a certified TIN is not furnished, the account may be closed.

Certain additional Internal Revenue Service penalties may also apply if you fail to provide your TIN.

The TIN for a U.S. citizen or an eligible resident alien individual is a Social Security number. For resident or non-resident alien individuals who do not have, or are ineligible for, a Social Security number, the TIN is an IRS Individual Taxpayer Identification Number ("ITIN"). For legal entities, estates and trusts the TIN is their Employer Identification Number. For an account to be classified as a "non-resident alien account" all owners of the account must certify their foreign status at the time the account is opened on a Form W-8. Non-resident aliens must recertify their foreign status every three years. Non-resident aliens from Cuba, Iran, and other comprehensively sanctioned jurisdictions may be required to provide additional documentation to support Truist's compliance with applicable sanctions regulations.

**Sanctions Compliance.** The Department of the Treasury's Office of Foreign Assets Control (OFAC) administers and enforces economic sanctions programs implemented by the government. We are required to comply with all OFAC and other applicable U.S. sanctions, which may include rejecting or blocking transactions or funds of certain individuals and entities. Such restrictions may include transactions involving the government of or a citizen of Cuba or with the governments of or individuals or entities located in comprehensively sanctioned jurisdictions, which as of the date of this agreement includes Cuba, Iran, North Korea, Syria, and the Crimea Donetsk, and Luhansk regions of Ukraine, or other jurisdictions as designated by OFAC in the future. By opening an account with us, you agree and affirm that you are not a prohibited individual or entity under any of the sanctions programs, particularly those administered or enforced by OFAC, including those restrictions listed in the previous sentence. In addition, you agree that if you (or another joint owner or authorized person) are ever located within any comprehensively sanctioned jurisdiction, you (or another joint owner or authorized person) will not use, access or attempt to use or access, any account you have with us by any means we make available. If you do so, the Bank shall have the right to close your account. You agree that we can freeze and/or reject any transaction we reasonably believe violates any of the applicable sanctions programs or Bank policy or procedure. You acknowledge and agree that any transaction to or from your account may be delayed or suspended and that a hold may be placed on your account while a transaction is reviewed for possible violations of any of the applicable sanctions programs and that we will have no liability for any such delays, suspensions, holds and/or any resulting unavailability of funds.

**Unlawful Transactions.** You certify that you will not use your account or any Bank service for any illegal transactions or activity including but not limited to those activities prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et. seq. Further, you represent and warrant that all transactions initiated or conducted by you are legal and not in violation of the Unlawful Internet Gambling Enforcement Act or any other law. Transactions reasonably believed by the Bank to be used for or associated with unlawful activity may be rejected or stopped and the associated account(s) closed immediately and without prior notice. Obligations owed before any improper transaction or account closure will remain in full force. All liabilities and costs associated with rejected or stopped transactions or closed accounts are assumed by the account owner.

**Collateralized Accounts.** If you hold an account that has been collateralized by the Bank with securities, letters of credit or other assets, upon account withdrawal, you relinquish any claim on the collateral associated with the withdrawn balances.

**Agreement to Receive Electronic Communications.** We may provide all legal or regulatory communications associated with your account, including communications about a change in the terms of your account electronically, although you must complete a separate enrollment if you would like to stop receiving paper statements.

We may deliver the communications to you electronically by any of the following methods: (a) via email to an address you have provided to us; or (b) via a wireless device you have designated; or (c) to the extent permissible by law, via a web site that we will generally designate in advance for such purpose; or (d) any other electronic means we have mutually agreed upon. Delivery of electronic communications by any of these methods will be considered "in writing"

and you agree that the electronic communications have the same legal effect as written and signed paper communications. You agree to promptly notify us of any change in your contact information, such as your email address or mobile phone number. You may update your contact information by contacting us at 844-4TRUIST.

You may withdraw your consent to receive electronic communications by contacting us at 844-4TRUIST. You may

obtain paper copies of the electronic communications by calling us at 844-4TRUIST.

The minimum system requirements to access and retain the electronic communications are: an internet-enabled computer or telecommunications device with 128-bit encryption, sufficient storage capacity and software that enables you to view files in  the Portable Document Format ("PDF").

**Privacy Policy.** Our privacy policy, which is provided at the time you open an account, is described in our publication, "The Truist Consumer Privacy Notice". For current privacy practices, you may access our website at www.Truist.com.

**Sharing Information.** To allow Truist to analyze your potential financial needs, or as part of the qualifying and maintenance process for depositors, you authorize Truist, to the extent permitted under applicable law, to obtain information from credit reporting agencies, Early Warning Services, LLC., or similar agencies, as we deem necessary. You understand such information will be used by Truist for internal purposes only. Further, you authorize us to share with our Truist affiliates your non-public or confidential information for marketing or other purposes. If you do not wish us to share confidential information with Truist affiliates (referred to as "opting out" of information sharing), you can make that election by calling 1-888-800-3420.

**Telephone Monitoring and Recording.** You agree that Truist may monitor and/or record any telephone conversation with you for any legal reason, including to monitor the quality of service you receive and to verify transaction related information. You agree that Truist is not required to remind you before or during each telephone call that the conversation is subject to being monitored and/or recorded in accordance with applicable state and federal law.

**Bank Reporting Requirements.** Banks are required to file a report called a Currency Transaction Report (CTR) with the Internal Revenue Service whenever it has currency transactions that exceed $10,000 in one business day. This includes both single and multiple transactions, transactions to or from or on behalf of any one individual or other entity, or in or out of any one account, and exchanges of currency. Banks are also required to file other reports with the U.S. Treasury Department when a transaction is conducted or attempted by, at, or through a bank, involves or aggregates at least $5,000 in funds or other assets, and the bank knows, suspects, or has reason to suspect that: (a) the transaction involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement under federal law or regulation; (b) the transaction is designed to evade any requirements of this part or of any other regulations promulgated under the Bank Secrecy Act; or (c) the transaction has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage, and the Bank knows of no reasonable explanation for the transaction after examining the available facts, including the background and possible purpose of the transaction. Banks are also required to maintain a record of: (i) sales of certain negotiable instruments such as cashier's checks, money orders, traveler's checks, and other similar instruments when the amount of cash involved is $3,000 to $10,000 inclusive; and (ii) fund transfer of $3,000 or greater. These records must be made available to the U.S. Treasury Department upon request.

Other crimes under the Bank Secrecy Act are: (i) causing or attempting to cause a financial institution to fail to file a currency transaction report; (ii) causing or attempting to cause a financial institution to file an inaccurate report; and (iii) structuring or attempting to structure large transactions with financial institutions into several smaller transactions in an attempt to avoid reporting. Financial institutions, financial institution employees, and individuals may all be subject to prosecution for evading the reporting requirements. There are both civil and criminal penalties associated with violations of these regulations that may carry significant monetary fines and imprisonment. You agree to assist the Bank in gathering information to meet Bank Secrecy Act requirements.

You may be eligible for a qualified exemption from some of the Bank Secrecy Act reporting requirements. To qualify for such exemption, you agree to cooperate with the Bank in collecting the necessary information to meet the exemption certification requirements.

**F. ACCOUNT TYPES**

You agree that when you open an account, you have instructed us as to the correct type of account applicable to your organization. You further represent to the Bank that you are authorized to do business in the manner indicated and that the acts of person(s) opening the account have been ratified. You agree that the Bank may rely on such representations without requiring additional information or documentation and that you will furnish such information upon request. You are solely responsible for meeting any legal requirements to establish and maintain the type of account requested and have a duty to inform us of the status of any change to the Organization. Federal regulations require that you provide us with information concerning the beneficial owners of a legal entity at account opening. You may also be asked to provide such information at other times (and on any qualifying account) upon request of the Bank. If at any time we determine that the beneficial ownership information you provided to us was false, incorrect, or of concern to the Bank, or if you refuse to provide us with the information when requested, we may close or freeze any or all of your accounts.

If you have opened a deposit account on behalf the beneficial owner(s) of the funds in an account (for example you are acting as a trustee, agent, nominee, guardian, executor, conservator, custodian, or in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass through" insurance from the Federal Deposit Insurance Corporation ("FDIC") in the event of Bank failure. FDIC "pass through" deposit insurance is federal deposit insurance coverage that applies to the interests of owners or beneficiaries. This means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership right and capacity). As the account holder, you must be able to provide a record of the interest of the beneficial owner(s) in accordance with the FDIC's requirements. The FDIC has published a guide and an Addendum to the guide, Section VIII, explaining the process to follow and the information you will need to provide in the event of Bank failure, including the type of information you, as the account holder, must keep regarding the beneficial owner(s) of the funds, as well as the format and process you must follow for submitting those records to the FDIC. The guide and Addendum can be accessed on the FDIC's website at https://www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html. You have an opportunity to validate the capability to deliver the required information in the appropriate format so that a timely calculation of deposit insurance coverage can be made. You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of Bank failure, you agree to provide the FDIC with the information described above in the required format within 24 hours of that event. As soon as the FDIC is appointed, a hold may be placed on your account so that the FDIC can conduct the deposit insurance determination; that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which could delay when the beneficial owners would receive funds. Notwithstanding other provisions in this Agreement, this section survives after the FDIC is appointed as our receiver, and the FDIC is considered a third party beneficiary of this section. Not all accounts may be available in your area or through the method in which your account is opened. The definitions of account or ownership styles outlined in this section are not meant to be all inclusive and additional accounts or styles may be offered by the Bank. The Bank, in its sole discretion, shall not be required to open a particular account type or style. The manner in which you open an account indicates your ownership rights in the account. You agree that when you open an account the titling of the account is correct and that the Bank has no responsibility to inform you as to how the titling may affect your legal interests. If you have any questions as to the legal effects of an account, you should consult with your own attorney or advisor. If a signature card or other document contains a notation or indication that your account is established for a particular purpose (other than an account type listed below) you agree that such notation or indication creates no additional duties on the Bank and is solely for your personal recordkeeping.

The Bank accepts no liability with respect to an account except to the Depositor, and shall not be liable to the Depositor's officers, directors, stockholders, partners, joint venturers or other interested persons. The Bank will rely upon the signature card, resolution or other written designation of Authorized Signers on an account until we have received notice in a form acceptable to the Bank that the authority has been terminated and we have had a reasonable time to act upon the notice. Depositors referenced on the Bank's records as a Designated Representative can add or remove Authorized Signers from the account and can enter into a night depository agreement, enter into an agreement for cash management or treasury services, lease a safe deposit box, enter into an agreement for deposit access devices, enter into an agreement for credit cards, enter into an agreement relating to foreign exchange and obtain online foreign exchange services related thereto, or enter into any other agreements regarding an account of Depositor. If the Authorized Signers on your account change, the Bank may continue to honor items and instructions given earlier by any previously appointed Authorized Signer until we receive specific written notice from you not to do so and have had a reasonable amount of time to act. In such cases, we may require that you close the account and

open a new one or place stop payment orders to prevent transactions from occurring.

Each signer named on your signature card is authorized to obtain information on your account, endorse and deposit items payable to your account, sign checks, drafts, items or other written orders and execute Bank's wire transfer agreements used to initiate wires in Bank's branch offices, close an account, place and remove stop payment requests and make withdrawals. The Bank does not, however, verify the signatures on every check paid against your account, which is in accordance with industry standards and you agree that this is not a failure by the Bank to exercise ordinary care. When you receive your monthly statement, you should carefully and promptly examine it to verify that only authorized checks have been paid and/or that only authorized transactions have occurred. The Bank will not be liable if we refuse to honor any item that we believe, in our discretion, does not contain a genuine authorized signature.

You agree that the Bank may verify your signature through the signature card or a check or other document that bears your signature. We may use an automated process to obtain an image or sample of your signature from a check that bears your signature. If you create your own checks or obtain them from another source, and we cannot accurately verify your signature on a check by comparing the signature to a check posted to your account, you are responsible for any losses that may result from our inability to use that check to verify your signature.

Accounts are not transferable except on the Bank's books and records. In order to transfer title or to pledge an account as collateral for a loan, a written request must be provided in a form accepted and acknowledged by the Bank. Any pledge of an account to a third-party remains subject to the Bank's right of set-off and security interest. The Bank may determine ownership of an account from the information in our records. Any changes you request us to make to your account are not effective until accepted by us and we have had a reasonable time to act on the new information. If ownership of an account is to be changed, the account should be closed and a new account opened to reflect the ownership designation.

**Corporation Account.** An account owned by a corporation, which performs transactions through its officers.

**Escrow Account.** An account opened by attorneys, brokers, realtors or agents for the purpose of holding funds in escrow (trust) for their clients. If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events. Additionally, you authorize us to remit the interest paid on an attorney trust account to the designated Bar Foundation by ACH pre-authorized debit or by check or by any other method approved by the Federal Reserve System. The terms of any agreement or other document under which the account is opened will govern the account, and the Bank has the right, but not the obligation, to review any such document. The Bank assumes no liability for the administration of any fiduciary relationship whether or not the Bank has been provided with a copy of such document. You agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or third party with respect to the authority, actions, or inaction taken by the authorized individuals in handling or dealing with the account.

**Limited Liability Company Account.** An account for a limited liability company, which is owned by its members and managed by those members, a manager, or a board, as designated in the company's operating agreement or articles of organization.

**Partnership Account.** An account for an unincorporated business owned by two or more individuals or entities referred to as partners. The partners may designate Authorized Signers and such authority is revoked upon the Bank's receipt of notification of the dissolution of the partnership.

**Public Funds Account.** An account owned by a U.S. government agency, a State, a County, a local government or any political subdivisions thereof, for which the Bank must pledge securities.

**Receivership Account.** An account opened by a court-appointed receiver to manage the affairs of a designated person, partnership or corporation.

**Sole Proprietorship Account.** An account for an unincorporated business owned by one proprietor or by two legally married partners. The proprietor (owner) may designate Authorized Signers and such authority is revoked upon the Bank's receipt of notification of the proprietor's (owner's) death.

## G.  ACCOUNT RULES

Unless this Agreement otherwise indicates: the term "item" means any instrument or a promise or order to pay money handled by a bank for collection or payment, but does not include a payment order for a wire transfer, cash, documentary drafts, notes, credit or debit card slips, or other instruments of a type not routinely accepted for collection or payment to deposit accounts by a Bank. The term "account" means any deposit or credit account with the Bank, and includes a demand, time, savings, or like account other than an account evidenced by a Certificate of Deposit. Although excluded from the definition of account, Certificates of Deposit, whether evidenced by a certificate or book-entry, are subject to the terms and conditions of this Agreement. The term "available balance" refers to the money in your checking or savings account that is currently available to you to make purchases, withdrawals, etc. The available balance reflects any processed and pending transactions, and any holds. It does **not** include any checks you have written that have not posted, if applicable to your account. (Checks are processed during the nightly posting and will be reflected the next day.) Checks cashed by a Truist teller will be reflected in the available balance. This balance is **updated throughout the day with** transactions you make. The term "collected balance" refers to the collection of non-cash items (checks) deposited by you. The term "Current (Ledger) Balance" refers to your current balance (also called ledger balance) and is the actual amount in your account and does not change throughout the day. It does not include holds or pending transactions.

1. **STATEMENTS.** Statements for your account, notices, or other information regarding your account will be mailed, sent electronically, or otherwise made available to you at regular intervals depending on your account type. The statement or account information will be delivered to the postal or electronic address of the primary account owner as reflected in our records or per instructions you have provided to us. Mailed statements shall be deemed received by you on the earlier of the actual date of receipt or within ten (10) calendar days of the date appearing on the statement.

   Electronic statements shall be deemed received on the date they are transmitted to the e-mail address you provided or, the date the statement is provided within your online or mobile banking service. The primary owner shall be responsible for providing copies of statements to any co-owners of the account. If a language preference is selected for your statement, only the primary account owner may change the preference.

   You agree to notify us immediately of any change in your contact information, including address, e-mail address, and/or telephone number. The Bank may rely on any instructions purportedly made by you, or on your behalf, to change your contact information without liability. You also agree that we may rely on an address change notification received by us from a third party vendor or the U.S. Postal Service and other governmental sources to update your address on our records. The Bank will have no liability to you for changing your address based on such information, even if such information is in error. If any of your statements or account information is returned to us because of an incorrect postal address or an incorrect, changed, or expired e-mail address, we may stop delivering statements or account information until a valid address is provided. If your account is classified as dormant, we may elect not to provide further account statements. Copies of such statements or any enclosures can be reproduced upon request, subject to applicable fees. Any statements or account information that is returned as undelivered shall be destroyed without notice and subject to applicable fees. Any statements held for you at a branch office shall be destroyed after a limited time and subject to applicable fees.

   You shall notify the Bank if you have not received your first statement within thirty (30) calendar days of account opening or within ten (10) calendar days of your regular statement date. The Bank will not be liable to you for any damages as a result of; your failure to promptly notify us of a change in your address, your failure to notify us that you did not receive your statement, or your failure to make arrangements to receive your statement. You are responsible for the accuracy of your statement whether or not reviewed and it shall be deemed final and correct upon thirty (30) days from the statement date.

   All business accounts, and the majority of fees associated with deposit and treasury management services, are billed through Account Analysis. In addition to your statement of account information, an Account Analysis statement is available upon request and can be mailed, sent electronically, or made available through one of the Bank's digital platforms. The information on the Account Analysis statement includes name and address, along with information on deposit and treasury management services utilized on the account. If the Bank has received instructions to group your business account with other business accounts owned by you or owned by other entities with some relationship or association to you, all accounts in the grouping will be included in one Account Analysis statement. The Bank will notify you if your account is grouped for the purpose of Account Analysis.

2. **DEPOSITS AND CREDITS.** The Bank, in its discretion, may accept or refuse a deposit, or a part of a deposit, to your account at any time. We may accept deposits to your account from any source without questioning the authority of

the person making the deposit. The Bank may require that the person making a deposit provide identification or impose other conditions prior to accepting a deposit. We may give cash back to any authorized account signer or agent in connection with an item payable to the account owner, whether or not the item has been endorsed by the payee. The Bank, in its discretion, may also reverse a deposit even after provisional credit has been granted without prior notice. You agree that any deposit is subject to verification and confirmation notwithstanding your possession of a deposit receipt or acknowledgement. We may reverse or adjust any transaction, credit or debit we believe we erroneously made to your account at any time without prior notice. In addition, if any deposit or other credit is made to your account which we determine should not have been made, we may reverse that credit without prior notice and without any liability to you.

When you deposit or negotiate an item made payable to or endorsed by another party, you guarantee and warrant that all endorsements are valid and that all necessary endorsements are included. In the event any such item is deposited and returned to us for any reason, you authorize us to place a hold on or debit your account for the amount of the item and you agree to be responsible for the full amount of the item. We may require you to verify an endorsement on an item through the appearance in person of the endorsee with proper identification and/or obtain an endorsement guarantee or ratification. At or after the time of the cashing, negotiation, or deposit of an item with multiple or third-party endorsements is made, we may return the item unpaid or place a hold on your account for the amount of the item until such a verification is complete to our satisfaction.

In the case where a deposited item is lost, stolen, or destroyed before presentment to the paying bank, you agree to fully assist the Bank in obtaining a replacement or reconstruction of such item. Failure to cooperate may result in the credit to your account being revoked or, if deposited but not credited, the credit withheld. You further agree that the Bank may impose a fee for, or decline to cash a check drawn on your account and payable to a third party. The Bank can direct the third party to deposit the check at another financial institution for payment.

The Bank's night depositories may not be used to deliver or deposit checks, money, payments and other items. We assume no liability for any such delivery or deposit unless Bank has approved your use of this service. In our sole discretion, we may process your delivery or deposit and you agree to indemnify and hold the Bank harmless from any alleged loss, claim, or damage. You agree that the Bank in its discretion may charge a fee for this service, which you agree to pay on demand, or it can be deducted from any of your accounts. Delivery of checks or money through a night depository is not considered a deposit until it is posted to your account.

Deposits are considered accepted in the state in which your account is maintained. If you did not open your account in person at a branch, but through the mail, by phone, or over the internet and you do not reside in a state or maintain a residence in a state where the Bank operates a branch office, your deposit(s) will be considered accepted in the state of North Carolina.

**Mail-in Deposits:**
Mailed deposits should be mailed directly to our Special Handling Department to ensure prompt posting to your account using one of the addresses below.

| **First Class Mail** | **Express Delivery** |
|---|---|
| Truist Bank<br>Central Processing<br>MC: 306-40-04-25<br>P.O. Box 27572<br>Richmond, VA 23261-7572 | Truist Bank<br>Central Processing<br>MC: 306-40-04-25<br>1001 Semmes Avenue<br>Richmond, VA 23224-2244 |

The date your deposit will be considered received will be the date the deposit is accepted by the Bank at the above noted addresses. In the event you mail a deposit to another Truist address, the deposit will not be considered received until it is accepted by the Bank at the above noted addresses.

3. **Night Deposit Services.** Upon Bank's approval, and subject to the terms and conditions set forth in this section, business clients may utilize the night depositories located at Bank branches to make night deposits using tamper-evident bags meeting our specifications ("Bags"). The use of other Bag types and envelopes is prohibited. You grant full authority to your agents to deliver deposits, receive receipts, additional Bags and other documents and items from Bank and we may act upon the instructions of these individuals. Any individual referenced as a Designated Representative on the Bank's records is authorized to designate, add, or delete individuals who are authorized to deal with the Bags and their contents.

If you use a key to access the night depository, you agree to keep the key(s) secure and available only to authorized individuals. You agree to give Bank written notice of the loss of any key within two (2) business days of the day in which you become aware that such key is lost. You are responsible for successfully placing Bags in the depository and relocking the outer door of the depository. You agree to report any unusual conditions immediately to us at 844-4TRUIST or to local law enforcement.

Instead of placing Bags into the night depository, there may be occasions where authorized individuals deliver Bags to a Bank Teller or other Bank employee inside a branch office or through the drive through window during regular banking hours and do not wait inside the branch for the Bags to be processed ("Over the Counter Transaction"). In these instances, you agree that the terms and conditions set forth in this section related to Night Deposit Services apply to the Over the Counter Transactions and that such transactions do not place any additional liability on the Bank. Bank, in its sole discretion, can refuse to accept any Bags that are delivered as an Over the Counter Transaction, regardless of whether the Bank has previously accepted such Over the Counter Transaction Bags.

Deposits, along with a properly completed deposit ticket, must be delivered in Bags. Account name and number must be indicated on the outside of the Bag along with itemized deposit information. Unsealed, damaged or improperly labeled Bags will be returned unprocessed. If you have arranged for us to not process the deposit or the deposit is in a locked Bag for which we do not have a key, you must retrieve the Bag during regular business hours. If you request a receipt for deposits, it will be available at the branch location for five business days following the date the deposit is processed. The receipt will be discarded if not picked up on the fifth business day.

You agree that "delivery" of a Bag placed in the night depository shall mean that a Bag and its contents have fallen down the interior chute of the night depository and landed on the floor of the interior vault. Placement of the Bag and its contents in the exterior door of the night depository or in the mouth or upper portion of the interior chute shall not constitute "delivery" of the Bag to the Bank. You agree that "delivery" of any bag in an Over the Counter Transaction shall mean when an authorized individual has placed the Bag into the hands of any Bank employee or its authorized agents and has completed any necessary documentation of the delivery that the Bank in its sole discretion deems necessary. Placement of any Bag on the counter without completing the required documentation, if any, does not constitute "delivery" of the Bag to the Bank. You also agree that you shall bear the entire risk of loss until the Bag and its contents have been delivered into the exclusive custody and control of the Bank.

You agree to give Bank written notice of any irregularity in or the loss of any Bag or its contents within thirty (30) calendar days of the day in which the Bag is alleged to have been delivered to the Bank. Thereafter, the Bank's records as to the receipt or non-receipt of the Bag or the amount of the contents of the Bag shall be conclusively presumed to be correct.

In the event that you give timely written notice that either a Bag or its contents have been lost, stolen, or otherwise mysteriously disappeared after delivery to the Bank, or that the amount of the contents of a Bag does not agree with your records, then you agree to have the burden of proving by clear and convincing evidence that (a) the Bag and its contents were in fact delivered into the exclusive custody and control of the Bank; (b) the exact dollar amount of the money and items in the Bag; and (c) that the Bank was grossly negligent. You also agree to take all reasonable steps to mitigate any loss or damages.

Bank reserves the right to withdraw the night depository from use at any time without notice in case of emergency or need for repairs. Bank shall not be liable for any loss suffered by you due to the unavailability of the night depository.

Bank is not responsible for any loss or damage sustained by you in the use of Night Deposit Services or Over the Counter Transactions that results from an act or omission by your agents, any third party, or any cause beyond our control. We shall be responsible for loss or damage sustained by you only if the result of our gross negligence or willful misconduct. Bank makes no representation or warranty, whether statutory, express or implied, including without limitation any warranties of merchantability or fitness for a particular purpose. Bank shall not be responsible for any special, consequential, indirect or punitive damages suffered by you or any third party even if we were aware of the possibility of such damages.

The terms and conditions set forth in this section supersede and replace any prior agreement or other documents between you and the Bank which address or deal with Night Deposit Services or Over the Counter Transactions.

**Correction of Errors.** The Bank has no duty to compare the items listed on the deposit slip with the items accompanying the slip when the deposit is received by the Bank for accuracy as the Bank relies upon the information you provide on your deposit slip when initially processing your deposit. Therefore, you have a duty to accurately

record cash, each item being deposited, and the total amount of your deposit on your deposit slip or at the ATM. If an error in your deposit is later detected, it will be corrected by the Bank unless otherwise agreed. Final credit to your account is based on the total sum of the cash and items actually received by the Bank.

You will be sent a notice of any adjustment we make to your deposit that is more than $10 dollars. Any correction made to your deposit of $10 or less will be reflected on your bank statement. You may confirm the final credit

amount of your deposit and your account balance at any time. Under this Agreement, you are required to review your bank statement and report any errors within thirty (30) days from the statement date. Your statement will be deemed final and correct on the thirtieth (30th) day from the date of the statement.

**Missing Endorsements.** The Bank may accept for deposit items made payable to any one or more of the parties in whose name the account is established, with or without endorsement. If you fail to endorse an item for deposit, the Bank may supply the missing endorsement.

**Items Payable Jointly.** If an item is drawn so that it is unclear whether one payee's endorsement or two is required, only one endorsement will be required and you shall be liable for any loss incurred by the drawer as a result of there being only one endorsement.

**Provisional Credit.** In receiving items for deposit or collection, the Bank acts as your collection agent and any settlement given for an item is provisional and may be revoked if payment of the item is not received. When you accept an item for payment or otherwise, and deposit or negotiate the item, you are liable for the entire amount of the item if it is returned for any reason, even if you paid a portion to a third party or there is a difference between the amount of the item and the amount owned by you. You agree that for any item not paid, returned unpaid, that we believe will be returned unpaid, or is returned pursuant to any applicable operating or clearinghouse rules, the Bank may charge back the item against your account without regard to whether such item was returned within any applicable deadlines. If you cash an item that is later returned, you are liable for the item in the same manner as if the item had been deposited to your account and we will charge back the item to your account. At our option and without notice to you that an item has been returned, we may resubmit any returned item for payment. You waive notice of nonpayment, dishonor, and protest regarding any items credited to or charged against your account.
You further agree that regardless of any final settlement, if an item is cashed against your account or deposited to your account and is unpaid or is returned to us based upon a breach of warranty claim or any other reason, we may deduct the amount of the item from your account, or place a hold on your account for the amount of the item until liability for the item is determined.

You acknowledge and agree that at the time you deposit or negotiate an item the Bank cannot determine whether it will be paid or returned. You therefore acknowledge and agree that the Bank and its employees or agents will not be liable for any statement or action, express or implied that an item is "paid", "cleared" "good" or any other such indication. To determine the status of an item you have deposited or negotiated you must contact the bank on which the item was drawn.

**Foreign Checks.** We may refuse to accept for deposit or collection items payable in a currency other than U.S. dollars. If we accept such an item, you assume the risk associated with currency fluctuation. Items drawn on foreign banks are subject to final payment by the foreign bank and as such may be returned unpaid later than a similar item drawn on a U.S. bank. U.S. laws and regulations governing the time for returns and collections are not applicable and you bear the entire risk of a returned item which can be charged back to your account at any time. You agree that we may use our current buying or selling rate, as applicable, when processing such an item, inclusive of any domestic or foreign bank fees.

**Inconsistent Name and Account Number.** If a fund transfer instruction for credit or debit from your account lists the name or account number of the beneficiary, the name or routing and transit number of beneficiary's bank or any intermediary bank in an inconsistent or incorrect manner, payment may be made by relying upon the account number, even if it identifies a different person or bank from the one named in the instructions received. You agree that we have no obligation to verify whether the name and the number refer to the same person.

**Receipt of RTP® Network Payment.**1 When you receive a payment through the RTP Network provided by The Clearing House Payments Company L.L.C., you confirm, by not rejecting the payment, that you are not receiving the payment on behalf of someone who is not a resident of or otherwise domiciled in the U.S.

1 RTP® is a registered service mark of The Clearing House Payments Company L.L.C.

**Incoming International Wire Transfers.** When you receive money in a foreign currency via a wire transfer, the currency exchange rate used to convert such funds for deposit into your account may be determined by us in our discretion without prior notice to you. You agree to this procedure and accept our determination of the currency exchange rate. The exchange rate that we offer you may include a commission, will be different from (and usually less favorable to you than) the exchange rate for institutions that is usually quoted in newspapers or online services,

and may be different from our daily published rate. Currency exchange rates can be highly volatile and may change frequently during a day. You assume all risks relating to or arising from fluctuations in the exchange rates between currencies for international wire transfers deposited to your account.

**Return of Direct Deposits.** If, for any reason, we are required to reimburse the payer for all or a portion of any payment deposited into your account through a direct deposit plan, you agree that we may, without prior notice, deduct the amount to be returned from your account or from any other account you have with us, unless prohibited by law. This right is in addition to any other rights the Bank has under this Agreement, including the right of setoff and its security interest in your account.

4. **WITHDRAWALS AND DEBITS.**

**Payment of Items.** For purposes of this subsection, an "item" is a debit to your account which includes a check, substitute check, purported substitute check, electronic item or transaction, draft, demand draft, remotely created item, image replacement document, indemnified copy, ATM withdrawal or transfer, PIN-based point of sale transaction, signature-based point of sale transaction, preauthorized payment, automatic transfer, telephone-initiated transfer, ACH transaction, Online Banking transfer or bill payment instruction, withdrawal slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, any other instruction or order for the payment, transfer, or withdrawal of funds, and an image or photocopy of any of the foregoing.

Transactions are processed each business day during nightly processing. Once your transactions are processed, the results are posted to your account.

Truist will post items to your account based on your available balance. The available balance can be impacted by pending transactions. Examples of common pending transactions include the following but is not an exhaustive list and there may be other pending transactions that have not been included.

- Transfers from another Truist account, Visa Money Transfer Credits, and Zelle Payments that are made before nightly processing begins (generally around 11:59 p.m. ET) will be added to your available balance.

- Authorization holds affect the availability of funds by reducing the available balance. Truist deducts authorized holds from the funds you have available to cover any outstanding items, including checks drawn on your account as well as other withdrawals such as ACH transactions. Your account history reflects the current balance, not the available balance.

- If you use your ATM Card or Debit Card to purchase goods and services, including Internet purchases (point-of- sale transactions), you authorize us to debit your deposit account, and you agree that your authorization may result in an immediate memo debit reducing the account's available balance, even though the transaction may not be finally posted to that account until a later date. You also understand that you may overdraw your account if you make a withdrawal, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have been authorized but not yet posted to your account.

- Based on account type, overdraft fees may be charged when adequate funds are not available in the account to cover all pending transactions and items being posted, debit card transactions being posted, or outstanding checks, ACH, transfers and all other withdrawals when transactions post during nightly processing.

- It remains very important to keep records of all payments you've authorized from your account. Authorization holds will help track your debit card purchases and reserve the funds before they post to your account. However, we have no record of outstanding checks or ACH transactions you've authorized.

Once the available balance is determined, prior day credits and debits will post before current day credits and debits. Once prior day credits and debits are determined, if any, transactions will post in order according to the groupings below:

1. **Deposits and Credits –** all deposits and credits will be posted to your account first. This includes cash and check deposits and incoming transfers, received before the cutoff time at the location the deposit or transfer was made.

2. **Bank-initiated transactions –** such as corrections and Deposited Item Returned Checks.

3. **Client-initiated withdrawals and debits –** withdrawals/payments that have been previously authorized and cannot be returned unpaid, such as debit card purchases, ATM withdrawals, account transfers, and teller-cashed checks. If we receive more than one of these transactions for payment from your account, we will generally sort and pay them based on the date and time you conducted the transactions. For a debit card transaction, if a merchant does not seek authorization from the Bank at the time of the transaction, we will use the date the transaction is received for payment from your account.

4. **Client-initiated withdrawals and debits such as ACH (automated payments) –** such as bills you pay by authorizing a third party to withdraw funds directly from your account. If there is more than one of these types of transactions, they will be sorted by the date and time that they are received. Multiple transactions that have the same time will be sorted and paid from lowest to highest serial number.

5. **Client-initiated Checks –** Checks will be posted and sorted in sequential order.

6. **Bank Fees –** Fees, such as monthly maintenance fees, will post to your account last. Please note that some fees will be posted to your account at the time they are incurred and others, like maintenance fees, will post last.

If sufficient funds are not present to cover all presented transactions, Truist will:

**Determine if Overdraft Protection is available:** Any overdraft protection source that has sufficient availability to cover the presented transactions, will be transferred to cover the presented transactions. (see page 17)

**If no Overdraft Protection Source is available:** At our sole discretion, we may pay a check or automatic payment into overdraft, rather than return it unpaid. If the transaction is paid into overdraft, it may help you avoid additional fees that may be assessed by the merchant. If the item is returned, you will incur a Returned Item Fee.

The Bank has the discretion to process items even if your account has an insufficient available balance to pay such items. Your "available" balance represents the amount of funds available for withdrawal or to pay items presented against your account. The "available" balance may not be the same as your "current" or "posted" balance. For example, your available balance may be reduced by a POS transaction in which the merchant has obtained authorization from the Bank but that has not been presented for payment. We consider such pending transactions in the calculation of your available balance.

In the payment clearing process, the Bank employs techniques to assist in the detection of unauthorized items that may be presented against your account for payment. If a particular item appears to represent unusual activity on your account, you authorize the Bank, in its discretion, to reject the item and return it unpaid. If the returned item was, in fact, properly payable, you agree to hold the Bank harmless from any claims, loss, or damages as a result of the Bank not paying the item.

We may change the priority or order in which items are processed at any time without notice to you. If you do not have sufficient funds available in your account to pay all items presented on a given day, our processing methods may result in more overdraft/returned item fees (based on account type), or other fees or penalties. We may choose our processing method at our sole, unilateral and absolute discretion, regardless of whether additional fees or penalties may result. We may refuse any check or other item drawn against your account or any method of presentment, including electronic presentment, attempting to withdraw funds from your account if it is not presented on a form and through a procedure approved by the Bank.

It is your responsibility to reconcile your account and to avoid overdraft situations. For more detail on Truist's processes refer to our Facts About Banking website at Truist.com/TheFacts.

You agree to hold the Bank harmless and indemnify us for any liability we may incur for reasonably acting, in our discretion, upon any instructions you may provide to us by telephone, telecopier (fax machine), e-mail, or other electronic means.

In the event you voluntarily give your account number to a third party by telephone or any other method, you authorize the recipient of the information to initiate debits to your account and you will be liable for all debits initiated by such person or company. Likewise, you will be liable for all debits initiated by any service provider hired by you to draft your account to pay third parties, whether your signature is on the drafts or not.

When you give signed checks to another party with the payee, amount, date or other provision left blank, you agree that your account may be charged for the check as completed.

We may honor items drawn on your account by authorized signers, even if the items are made payable to them, to cash or for deposit to their personal accounts. You agree that the Bank has no duty to investigate or question items, withdrawals or the application of funds.

Payment made to a person presenting an account withdrawal receipt signed by the Depositor, shall be conclusively deemed to be good and valid on the account of the Depositor. We will have the right to assume that any such person is acting as a messenger for the Depositor, unless the withdrawal receipt has been lost and notice in writing has been given to us. Receipt of such notice must be acknowledged in writing and signed by an officer of the Bank before such payment is made. This paragraph does not grant you the right to make withdrawals by messenger. We reserve the right to refuse withdrawals by messenger.

**Multiple Signatures.** The Bank does not offer accounts on which two or more signatures are required for a withdrawal of funds from your account. Any attempt to include such requirement on your checks, signature card or other governing account documents will be for your internal purposes or controls only and will not be binding on the Bank. The Bank may pay checks, items, electronic debits, wires, debit card transactions, online banking transactions, or other withdrawal instructions signed or approved by any one of the authorized signers on the account who are named on the signature card.

**Deduction of Fees.** Fees may be deducted from your account without prior notice to you. Maintenance, activity fees and applicable fees for returned deposited checks, returned items, overdrafts (based on account type), stop payment orders, charges for check printing, and other service charges made in accordance with the rules of the Bank in effect at the time of such charge shall be deducted from your account and may be posted prior to other debits. The Bank shall not be liable for refusing to honor items presented for payment because of insufficient funds as a result of deducting such fees. Any fees (or portions thereof) that were not posted due to insufficient funds at the time of posting may be collected at a later date without prior notice when sufficient funds are available in the account. Fees are subject to change from time to time at the Bank's discretion. The current Business Deposit Accounts Fee Schedule is available at www.Truist.com.

**Stale Dated Items.** The Bank maintains the option to either pay or dishonor any stale dated item, which is an item more than six months old, upon presentation to the Bank. If the item is paid by the Bank in good faith, we will not be liable for any loss, fees or damages you suffer as a result of the item being charged to your account.

**Preauthorized Demand Drafts.** A preauthorized demand is a type of bank draft used by telemarketers and sales representatives who sell goods and services through the telephone, mail, or other electronic means. Drafts are used to obtain funds from your account without you issuing a check or getting your signature on the draft. In lieu of a signature, a legend such as "Payment Authorized" or "No Signature Required" may appear on the draft. If you give a telemarketer or any other party information about your account or account number, and the information is thereafter used to debit your account, the Bank is authorized to pay such item. If you wish to stop payment on the draft, you must revoke your authorization by giving notice to the telemarketer or the third-party.

**Remotely Created Checks.** A remotely created check is an item that appears to authorize payment to be made but which is not actually signed by the drawer. You agree that if you cash, negotiate or deposit a remotely created check, you warrant to us that the check is authentic and is authorized by the drawer according to the terms contained on the check. If a remotely created check is returned to us at any time and for any reason, we may debit the amount of the check from your account.

**Electronically Created Items.** An electronically created item is defined under federal regulation as an electronic image that has all the attributes of an electronic check or electronic returned check but was created electronically and not from a paper check. You are not permitted to deposit these items. However, if you deposit an electronically created item, you agree to be liable for any losses that result from the fact that (i) the electronic image or electronic information is not derived from a paper check; (ii) the person on whose account the electronically created item is drawn did not authorize the issuance of the item in the amount, or to the payee, stated on the item, or (iii) a person receives a transfer, presentment, return of, or otherwise is charged for an electronically created item such that the person is asked to make payment based on an item or check already paid.

**Death or Incompetence.** Neither a depositor's death nor a legal adjudication of incompetence revokes the Bank's

authority to accept, pay, or collect items until the Bank is notified of the fact of death or of an adjudication of incompetence and has a reasonable opportunity to act on it. Even with knowledge the Bank may, for ten (10) days after the date of death, or adjudication of incompetence, pay checks drawn on or before said date unless ordered to stop payment by a person claiming an interest in the account.

**Delayed Return of Item.** The Bank will not be liable if an item deposited into your account is returned after the time set by applicable law if the delay is caused by an improper endorsement. You will be liable to the Bank for any loss or expense we incur because we are unable to timely return an item drawn on your account caused by any markings or damage to the item.

**Postdated Items.** You agree not to issue a postdated check and the Bank may disregard such date on the item when it is presented for payment. The Bank is authorized to pay any check prior to the date on the item even if you have given us notice that it is postdated. If the Bank agrees to re-credit your account after paying a postdated check you agree to transfer to the Bank all of your rights against the payee or other holder of the check, and to assist in any legal action taken against that party.

**Conditional Items.** You agree not to issue a check that is conditional. For example, you may not issue a check with the notation "void after 30 days." The Bank has the right, however, to pay or reject an item where payment is conditional and the condition has not been satisfied. For example, we may pay a check which says "void after 30 days" even though the check is presented more than thirty (30) days after its date.

**Large Cash Withdrawals.** For security reasons and in order for us to properly prepare for such requests, we require advance notice for large cash withdrawals. We can refuse an order to withdraw funds in cash or to cash an item if we believe that the request is a security risk or will result in a hardship on the Bank. We may require you to accept an Official Check or electronic transfer to receive the funds. If we agree to a large cash withdrawal, you may be required to employ a courier service acceptable to us and at your risk and expense. If a large cash withdrawal is completed at a branch you will be required to sign a cash withdrawal agreement or affidavit. Refusal to sign the agreement is grounds for us to revoke the cash withdrawal and require an alternate delivery for the funds. You understand and agree that the Bank is not responsible for providing any security regarding any cash withdrawals or deposits.

**Substitute Checks.** To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check. Some or all of the checks that you receive back from the Bank may be substitute checks. This notice describes rights you have when you receive substitute checks from the Bank. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other laws with respect to those transactions.

**Your Rights Regarding Substitute Checks.** In certain cases, federal laws provide a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that the Bank withdrew the wrong amount from your account or that the Bank withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, returned item fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other laws.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within ten (10) business days after the Bank received your claim and the remainder of your refund (plus interest if your account earns interest) not later than forty-five (45) calendar days after the Bank received your claim. The Bank may reverse the refund (including any interest on the refund) if it later is able to demonstrate that the substitute check was correctly posted to your account.

**How to Make a Claim for a Refund.** If you believe that you have suffered a loss relating to a substitute check that was posted to your account, please contact the Bank at 844-4TRUIST or you can visit your local branch. You must contact

the Bank within forty (40) calendar days of the date that the Bank mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the statement for your account showing that the substitute check was posted to your account, whichever is later. The Bank will extend this time period if you were not able to make a timely claim because of extraordinary circumstances. We may require that you submit your claim in writing. Your claim will still be timely if we receive your oral claim within the 40 day time period, and we receive your written claim no later than the 10th business day after you submitted your oral claim.

Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- Copies of the substitute check or the following information to help the Bank identify the substitute check: the check number, the name of the person to whom you wrote the check, the amount of the check.

**Non-Sufficient Funds.** An overdraft is created when you have non-sufficient funds in your account to cover a check, withdrawal, automatic transfer, electronic transaction (e.g., ATM or point-of-sale purchase), returned deposited item, or any other electronic purchase, payment, or debit when it is presented for payment. If your account is linked to Overdraft Protection, the overdraft will be paid, pursuant to the terms of the Overdraft Protection Service section stated in this Agreement (and subject to the funds available in your Overdraft Protection protector account). Overdraft Protection transfer fees as described in the Business Deposit Accounts Fee Schedule will also apply.

**Your responsibility when your account has an overdraft.** Only you are in the position to ensure that your account has sufficient funds to cover all of your checks, debits and fees by maintaining an accurate record of your outstanding credits and debits. CHECKS OR OTHER ITEMS DRAWN AGAINST NON-SUFFICIENT FUNDS IN YOUR ACCOUNT, WHICH HAVE NOT BEEN COVERED BY OVERDRAFT PROTECTION, ARE SUBJECT TO A FEE, SET FORTH IN THE BANK'S THEN CURRENT BUSINESS DEPOSIT ACCOUNTS FEE SCHEDULE. This fee will be charged to your account in accordance with the terms of this Agreement or any applicable regulations and laws in effect at the time the penalty/fee is incurred. We may determine whether your account contains sufficient funds to pay a check or other item at any time between the time the check or other item is received by us and our return deadline and by using any means we choose in our sole, unilateral and absolute discretion, and only one determination of the account balance is required. The Bank under no circumstances shall be required to examine or consider balances which you may maintain in your other accounts. If that determination reveals non-sufficient funds to pay the check or other item, we will not be required to honor the check or other item and may return it. Alternatively, we may honor the check or other item and create an overdraft.

However, honoring one or more overdrafts does not obligate us to honor any future overdrafts, and you should not rely on us to honor an overdraft.

We are not required to send you prior notice on any items, such as ACH debits or checks, returned for non-sufficient funds. You agree to deposit sufficient funds immediately to cover any overdraft and any penalties assessed, and to reimburse us for any costs, including but not limited to reasonable attorney's fees, we incur in collecting any overdraft from you. The amount of the overdraft shall constitute an indebtedness to the bank and shall be due and payable immediately, without notice or demand.

**Overdraft Protection Service.** Overdraft protection is an optional service you can add to your checking or money market account by linking one eligible account. We will use available funds in your linked account, (the "protector" account), to authorize or pay your transactions if you don't have enough money in your checking or money market account (the "protected" account). You can enroll in Overdraft Protection by calling 844-4TRUIST.

Eligible protected accounts include a checking or money market account. Savings accounts are not eligible to enroll in the Overdraft Protection Service as a protected account.

Eligible protector accounts include a Truist deposit account, Truist credit card, or Truist Line of Credit.

A single Overdraft Protection Transfer or Advance Fee will be assessed any day a transfer/advance is made regardless of the number of transactions covered. Also, we will not charge a fee unless the transfer/advance covered at least one pending item, or helped you avoid at least one overdraft or returned item. The fees associated with Overdraft Protection may be less expensive than the fees for overdrafts and returned items. The Business Deposit Accounts Fee Schedule explains the fees and other charges that apply to Overdraft Protection. Please review the Business

Deposit Accounts Fee Schedule carefully. Your protector account can provide Overdraft Protection for more than one deposit account, but a protected account can have only one protector account. We may cancel your Overdraft Protection service at any time by sending you notice. Your request to add or cancel Overdraft Protection is effective immediately. Transfers will be made in exact increments from the protector account to your protected account. This information is detailed below. Any owner of both the protected account AND the protector account may enroll in Overdraft Protection without the consent of other owners by calling 844-4TRUIST. Any owner of the protected account OR the protector account may cancel Overdraft Protection without the consent of other owners by calling 844-4TRUIST. If you link a jointly owned account, you authorize us to share information about your account with each owner of the other linked account, such as type of protector account and partial protector account number.

**Overdraft Protection from Another Deposit Account** allows you to link your checking or money market account (the "protected" account) to another Truist deposit account (the "protector" account), for Overdraft Protection. The protector account can be a second checking account, savings account, or money market account. When you do not have enough available funds in your protected account to cover a debit item, we may automatically transfer funds from the available balance in your protector account to your protected account. We generally charge an Overdraft Protection transfer fee for each day a transfer is made. Transfers will be made for the exact amount of the overdraft plus applicable fees from the protector account to your protected account. If the balance in the protector account is not sufficient to cover the entire overdraft, the Bank may make transfers to pay individual debit items up to the available balance in the protector account. However, the Bank reserves the right to not initiate transfers to cover such overdraft and to return the debit item(s) for non-sufficient funds. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. Funds you deposit into your protected account may not be available immediately for Overdraft Protection transfers. Overdraft Protection will be cancelled if your protected account or the protecting account is closed, or if the linked account has a zero balance. Please see the Business Deposit Accounts Fee Schedule for more information about Overdraft Protection from another deposit account.

**Overdraft Protection from Your Credit Card** allows you to link your checking or money market account (the "protected" account) to an eligible Truist credit card (the "protector" account) for Overdraft Protection. When you do not have enough available funds in your protected account to cover a debit item, we may automatically advance available funds from your protector account and transfer the funds to your protected account. Transfers will be made in exact increments from the protector account to your protected account. If the available credit on the protector account is not sufficient to cover the entire overdraft together with the related fees, the Bank may make transfers to pay individual debit items up to the available credit on the protector account. However, the Bank reserves the right to not initiate transfers to cover  such overdraft and to return the debit item(s) for non-sufficient funds. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. An Overdraft Protection advance is made under, and is subject to, the terms and conditions described in the applicable credit card agreement. We ordinarily do not make an advance if you are in default under your credit card agreement or if the advance would cause you to exceed the amount of credit available for that type of transaction. As examples, we may decide not to advance funds from your credit card account if you fail to make a credit card payment by its due date or if you exceed any credit card limit on your credit card account. The funds advanced are subject to fees and finance charges under your credit card agreement. Overdraft Protection advances do not have a grace period and will begin accruing finance charges from the date the advance is posted to your credit card account. We may also charge an additional Overdraft Protection transfer fee to your protected account for each day a transfer is made, as disclosed in the Business Deposit Accounts Fee Schedule.

Advances from a Credit Card may be charged at a higher Cash Advance rate of interest. Please see your credit card agreement for more information about Overdraft Protection from your credit card account.

**Overdraft Protection from Your Line of Credit** allows to you link your checking or money market account (the "protected" account) to an eligible Truist line of credit (the "protector" account) for Overdraft Protection. When you do not have enough available funds in your protected account to cover a debit item, we may automatically advance funds from your protector account and transfer the funds to your protected account. Transfers will be made in exact increments from the protector account to your protected account. If the available credit on the protector account is not sufficient to cover the entire overdraft together with the related fees, the Bank may make transfers to pay individual debit items up to the available credit on the protector account. However, the Bank reserves the right to not initiate transfers to cover such overdraft and to return the debit item(s) for non-sufficient funds. A transfer may not be available if the line of credit is blocked due to a late payment. An overdraft or returned item fee, as disclosed in the Business Deposit Accounts Fee Schedule, for each debit item will be charged. The Overdraft Protection advance is made under, and is subject to, the terms and conditions described in the line of credit agreement. We ordinarily make

the advance as long as you are not in default under the line of credit agreement and as long as the advance does not cause you to exceed the amount of your available credit on your line of credit. The funds advanced are subject to fees and finance charges under the line of credit agreement. Overdraft Protection advances do not have a grace period and will begin accruing finance charges from the date the advance is posted to your line of credit account. We may also charge an additional Overdraft Protection transfer fee to your protected account for each day a transfer is made, as disclosed in the Business Deposit Accounts Fee Schedule.

Please see your line of credit agreement for more information about Overdraft Protection from your line of credit.

5. **FRAUD AND UNAUTHORIZED TRANSACTIONS.**

**Duty to Safeguard Account.** You have a duty to safeguard access to your account (including any credit accounts), account information, checks, signature stamps, account security codes, passwords, or personal identification numbers ("PIN") and personal identification. If there are any unauthorized transactions or suspicious activity on your account, including unauthorized checks or debits on your account or lost, stolen or missing checks, we strongly advise that you close your current account and open a new one, and if available, implement a service that is designed to help detect and/or deter fraud. If you do not close your account, or if you fail to implement the service that was recommended to you after a fraud occurred of the kind the service was designed to prevent, you agree that the Bank is not liable to you for any subsequent debits, unauthorized transactions, losses or damages that occur on your account.

You agree to report any lost or stolen check(s) or any unauthorized transaction(s) on your account immediately upon discovery. We may require that you close the account and open a new account. If you fail to report such a theft or loss, you will assume full responsibility if the Bank should pay such items. If you permit any person to have access to any place in which you store your checks, you agree that the failure to keep your checks locked and secure shall constitute negligence and the Bank shall not be responsible for any such checks that are subsequently stolen and forged.

To guard against the disclosure and unauthorized use of personal information, you agree not to pre-print or write your Social Security Number, date of birth, driver's license number or other personal information on your checks or other items issued on your account. If such information is included on your checks or other items drawn on your account, you agree that the Bank will not be liable for the improper use of any such information by an individual or entity, regardless of how the individual or entity obtained or used the information.

You agree to place a stop payment on any lost or stolen check if such item has not already been paid. The Bank shall also not be responsible for paying any such item had you reported or stopped payment in a timely manner.

You agree to keep any account information, security code, password, PIN or personal identification used to access your deposit or credit account(s) secure and strictly confidential and not to disclose such information to any other person. You must notify the Bank immediately if this information is lost or has become known to, or been used by, an unauthorized person. You acknowledge that the Bank has no method to determine whether a transaction conducted with use of a valid name, account number, and security code or personal identification was proper, and therefore authorize the Bank to complete any transaction involving your account made with the use of such information. Subject to applicable law, you agree to be responsible for any transaction initiated with the use of a valid name, account number, security code, or personal identification, and agree that the Bank shall have no liability for any loss, claim, or damage you sustain as a result of the use of your security code or personal information described above whether such transaction was authorized or not. These rules apply to all checking, savings, or credit accounts in which a check, draft, or other item is used to withdraw or transfer funds.

**Fraud Detection Products.** Bank offers products and services that are designed to detect and/or deter fraudulent activity that can occur on your account (the "Mitigation Services"). At account opening and at various times during the life of your account, the Bank may recommend certain Mitigation Services based on your account type, services, activity, or anticipated activity. If you decide not to enroll in the recommended Mitigation Services, or fail to use the Mitigation Services as intended, you will be treated as having assumed any risk of loss that could have been prevented by the Mitigation Services. Except for the Bank's gross negligence or bad faith, if you refuse to enroll in Mitigation Services when offered, you will be precluded from asserting against the Bank any claim for an unauthorized or fraudulent transaction on your account that the Mitigation Services were designed to detect or that may have likely given you an opportunity to detect an unauthorized or fraudulent transaction and possibly stop or reject such transaction, and we will have no duty to re-credit your account for any losses you thereafter incur, and you waive any right to assert a claim against the Bank for such losses. At your request, Bank may attempt to recover funds from an unauthorized or fraudulent transaction. In such cases, you agree to indemnify and hold Bank harmless from any liabilities,

costs and expenses Bank may incur for its efforts in attempting to recover such funds on your behalf. Bank's attempts to recover funds are handled as a courtesy and shall not be an acceptance of responsibility for the unauthorized or fraudulent transaction, and Bank does not guarantee the recovery of any funds.

**Duty to Review Account Statement.** You agree to review your account statement within thirty (30) days from the statement date. Because you are in the best position to discover an unauthorized signature, any alterations that include an alteration to the amount of a check, a counterfeit item, or other error on the statement itself (including any item improperly charged to your account, any deposit not credited to your account, any unauthorized transaction, or any incorrect or improper amount, fee or interest calculation), you agree that, without regard to care or lack of care by you or the Bank, and except as otherwise may be required by applicable law, **we will not be liable for any such items or transactions and you will be precluded from any recovery from the Bank if you have not reported such items or transactions in writing to the Bank within thirty (30) days from the statement date of the earliest statement containing those items or transactions**. Additionally, we will not be liable for any alteration that involves only the payee name(s) on a check, any unauthorized, forged, improper or missing endorsements, or other defects affecting title on any item charged to the account if you fail to notify the Bank within 180 days from the statement date of the earliest statement containing those items or transactions. The Bank will also not be liable for forgeries on your account committed by the same person if you fail to report the first forgery(s) within thirty (30) days from the statement date containing the first forgery(s). If you choose not to receive your statements, you remain responsible to review and report any errors within thirty (30) days from the statement date. If you are absent from your account mailing address, you are responsible to make arrangements to have your statements reviewed for errors and report them in a timely manner.

**Duty of Care.** You agree that you will exercise ordinary care in handling your account. In exercising ordinary care, you shall have the duty to: carefully examine your bank statements [and any other notice(s)] for fraudulent or unauthorized transactions and promptly notify the Bank of fraudulent or unauthorized transactions; timely reconcile your bank statement to detect any other account discrepancies including any missing or diverted deposits; implement security precautions regarding the use and access to your account by use of any access device including checks, drafts or security codes, passwords, or other personal identification numbers; implement security precautions regarding the use and access to any signature stamp; conduct background checks on any individual who has authority to prepare your checks or reconcile your bank statements; independently review the work of any person who is responsible for reconciling your bank statement and preparing checks on a monthly basis; and comply with all other duties imposed on you under this Agreement or under applicable state law. Your failure to exercise ordinary care will constitute negligence and will preclude you from asserting against the Bank any unauthorized transaction on your account.

You acknowledge that the Bank processes its checks by automated means and is under no duty to examine each item presented for payment. You acknowledge that the Bank's automated check payment and notification procedure applies to all items presented for payment against your account including checks or other withdrawal orders presented directly over the counter at any branch location. You agree that such automated check payment and notification procedure is commercially reasonable. You and the Bank, pursuant to applicable law, therefore agree that the Bank shall be deemed to have exercised ordinary care if it adheres to a standard of manual or mechanical examination of a random sampling of items being processed for payment. These items may represent a sampling or selection of items drawn on all accounts, or items which meet certain minimum criteria established by the Bank for manual or mechanical inspection (such as large amounts). The Bank shall be deemed to have acted in good faith and in accordance with reasonable commercial standards in paying any items forged or altered so cleverly (as by unauthorized use of a signature stamp, facsimile machine or otherwise) that the unauthorized signature, endorsement, or alteration could not be detected by a reasonable person.

The Bank's policies and procedures are general internal guidelines for the sole benefit of Bank and do not establish a higher standard of care for the Bank than is otherwise established by the laws governing your account. A clerical error or honest mistake will not be considered a failure of the Bank to perform any of its obligations. If the Bank waives any of its rights as to you or your account on one or more occasions, it will not be considered a waiver of the Bank's rights on any other occasion.

**Limitation to File Claim.** You agree that no legal proceeding or action may be commenced against the Bank to recover any amounts alleged to have been improperly paid out of the account due to any unauthorized signature or endorsement, any alteration, or any other fraudulent or unauthorized transaction unless: (a) you have timely reviewed your account statement and provided the written notices as required above and (b) such proceeding or action shall have been commenced within one year from the date the statement containing the unauthorized transaction was made available to you. As used herein, a proceeding or action is commenced when you file suit in a court of

competent jurisdiction, or if the action is subject to arbitration, when you give the Bank written notice of such action. Any proceeding or action not brought within one year from the date of the first statement containing the unauthorized transaction is forever barred.

**Duty to Cooperate.** If you report any unauthorized transaction on your account, you agree to cooperate with the Bank in its investigation of the claim. This includes preparing an affidavit or statement containing whatever information the Bank requires concerning the account, the transaction, and the circumstances surrounding the loss. You also agree to file a criminal report and upon our request, to provide us with a copy of the report, and testify against any suspected wrongdoer and waive any claims against the Bank if you fail to do so or if you enter into any settlement, compromise, or restitution agreement with the wrongdoer without the consent of the Bank. The Bank may reverse any credit or reimbursement should you fail to file the criminal report or refuse to testify against the wrongdoer.

You agree that you cannot and will not bring any legal action or arbitration claim against us unless you have first provided the affidavit or statement described within this section.

**Duty of Insurance.** You agree to pursue all rights under any insurance policy you maintain before making a claim against the Bank in connection with any unauthorized banking transaction. You agree to provide the Bank with all reasonable information about any insurance coverage, including the name of the insurance carrier, the policy number, policy limits, and applicable deductibles. The Bank's liability, if any, will be reduced by the amount of any insurance proceeds you are entitled to receive. At the Bank's request, you agree to assign your rights under any insurance policy to the Bank.

**Limitation of Liability.** You agree that the Bank has a reasonable time to investigate the facts and circumstances surrounding any claimed loss and that the Bank has no obligation to provisionally credit your account before or during the investigation, unless required by law. If we do credit your account, you agree that such credit is not considered final payment. If a credit is given to your account at any time and the Bank determines that the original debit to your account was proper, you agree that the Bank may reverse the credit to you at any time whether it originally advised that the credit was provisional. The Bank's maximum liability is the lesser of actual damages proved or the amount of the unauthorized withdrawals, reduced by an amount which could not have been realized by the use of ordinary care. In no event will the Bank be liable for special or consequential damages, including attorneys' fees incurred by you. The Bank will not be liable for any items that are forged or altered in such a way that such forgery could not be reasonably detected.

If you request a stop payment on a check that is presented to us for payment electronically (such as a substitute check, converted check, remotely created check, or imaged check) that does not contain the check number, we will attempt to stop payment based on the information you provided. We will have no liability for our inability to stop payment on such an electronic item as our stop payment process is dependent upon the ability to read a check number. You may be charged a stop payment fee even if we are unable to affect your stop payment order.

**Facsimile Signatures.** The Bank may refuse to accept a request from you to use a machine or "facsimile signature" on your account. If we do agree, you must provide us with a specimen of any machine or facsimile signature and your name must be listed on the signature card for the account. Regardless of whether you have provided a specimen of the facsimile signature, if you use a machine or facsimile signature, you are responsible for any check, draft, item or other written order when bearing or purporting to bear a machine or facsimile signature of any of the authorized signers, regardless of by whom or by what means the item was created. You assume all liability for and indemnify us from the unauthorized use of any machine or facsimile signature. If you use any type of machine or facsimile endorsement on any item, you agree that we may accept any future machine or facsimile endorsement on an item as your endorsement regardless of by whom or by what means the actual or purported machine or facsimile endorsement may have been affixed.

**Bookkeepers.** In the event you authorize any third person, such as a bookkeeping service, an employee, or agent of yours to retain possession of or prepare items or make deposits, issue payments, wires or other transfers, you agree to assume full responsibility for any errors or wrongdoing by such third party or any of their employees, including if the Bank should pay such items or allow the negotiation of any part of a deposit, including receiving any cash back. You agree that we may deny a claim for loss due to forged, altered or unauthorized checks, endorsements or unauthorized payments, wires or other transfers if you fail to follow these procedures.

6. **BANK'S STIPULATIONS/RIGHT TO CLOSE ACCOUNT.** We may at any time, in our discretion, refuse to open an

account, refuse any deposit, refuse to cash a check, limit the amount which may be deposited, or return all or any part of a deposit. Further, the Bank may discontinue or refuse to offer you any account, service or product at any time. In addition, the Bank may close your account at any time and for any reason or for no reason without advance notice. If a determination by the Bank is made to close your account, a hold may be placed on the account until the funds are released to you. If we close your account we may give you either oral or written (includes electronic) notice of our intention to close the account. If given in writing, the notice will be sent to your address or e-mail shown on our records. Upon notice, you must stop conducting transactions on your account. We shall not be liable for dishonoring any items initiated after the date of the notice. In the event that you have not closed your account, we will close the account and mail you a check for the remaining balance in the account after deducting any applicable fees and charges to the address we have on record, or you may arrange delivery of the check at a mutually agreeable location. We may also deliver the remaining balance in any business or organization account to any authorized representative listed on our records for the business or organization. Closing the account does not release you from the payment of accrued fees or liability for items in process. The Bank may in its discretion close your account without prior notice if the account has a zero or negative balance, or if we believe it necessary to protect the Bank, its employees or others from risk, harm or loss. Any waiver by the Bank of its right to close an account for cause shall not be a waiver of our right at a later time to close your account for the same or similar reasons. Once we have closed your account, we can, without liability to us, refuse to honor any withdrawal requests, checks, or other items presented for payment after we closed your account. We further reserve the right to reject any deposit that is made to a closed account by returning the item or by crediting the item to another active account of yours. We reserve this right notwithstanding that the deposit may have been processed and/or that you were given a receipt for the deposit. The deposit receipt shall not constitute acceptance of funds in such instance and we shall have no liability for any items returned unpaid which are drawn on a closed account even if you attempt to make a deposit to the account. You may close your account at any time but must first notify the Bank in writing, or by contacting one of our branches or offices of your intent to close the account. Your failure to notify us may result in additional fees or charges on the account and you shall remain liable for any items in process. A notation written on the face of a check does not constitute the required notification to the Bank. We may accept deposits to an account after it is closed in order to pay any fees or charges due and any amounts outstanding and unpaid. Acceptance of any deposit does not require us to reactivate or reopen the account.

You agree that the Bank may report your account to Early Warning Services, LLC., or other consumer reporting agencies if it is closed due to a negative balance, fraud, or other inappropriate activity. If we close your account because the account has an overdrawn balance, which we charged off, you agree we may report this closure. Such reporting may adversely affect your ability to open an account at another financial institution or to write or negotiate checks at retailers or merchants. For disputes regarding credit information provided by the Bank to Early Warning Services LLC., or other consumer reporting agencies you must send the dispute information to P.O. Box 849, Wilson, NC 27894.

7. **RIGHT TO FREEZE ACCOUNT.** We may suspend payment and/or place a hold on your account in our sole discretion and under any circumstance including, but not limited to: (a) if the Bank determines that the ownership of funds or the right to debit or make withdrawals from your account is in dispute. For purposes of this section, "dispute" may include such disputes between you and the Bank involving the account, disputes between you and an authorized signer or other joint owner, or any situation where a third party takes action or gives notice to the Bank of any claim on the account or funds contained therein, regardless of whether the Bank is involved in such dispute, as well as any other situation in which there is an allegation of fraud or mistake or the Bank is uncertain as to the ownership or payment of funds; (b) you owe the Bank or any of its affiliates money, or the Bank or any of its affiliates has a claim against you for the payment of money, regardless of whether such claim is disputed, unliquidated, or contingent; (c) we detect or suspect any unauthorized, unlawful or irregular activity related to your account including but not limited to transactions prohibited by any law, rule or regulation, including the Unlawful Internet Enforcement Act; (d) you have committed or are suspected of committing an allegedly fraudulent act, or, if any claim, whether oral or written, has been made upon the Bank due to your actions; or (e) upon notice of a bankruptcy filing. Payment will be suspended and/or a hold will remain on your account until the dispute, allegation, or problem is resolved or determined to the Bank's satisfaction. In no event will the Bank be liable for any delay or refusal to follow instructions or for returning items unpaid that occur as a result of a dispute or uncertainty over the ownership or control of your account or the suspension or freezing of your account for any of the reasons stated above. In the event we receive a documented claim for a forged, irregular, altered (including payee and dollar amounts), or unauthorized endorsement on a check or draft deposited into your account, the Bank is authorized to debit your account for the amount of the claim, without prior notice to you. The Bank will have no liability for honoring the claim.

You agree to be liable to the Bank for any loss, costs, including but not limited to reasonable attorney's fees, or expenses, to the extent permitted by law that we incur as a result of any dispute brought by a third party involving your

account. You authorize us to deduct any such loss, costs, or expenses from your account without prior notice to you.

8. **RIGHT OF SETOFF.** You hereby assign and grant to the Bank a security interest in all accounts as security for your obligations to the Bank existing now or in the future. As is lawfully permitted and without prior notice to you, the Bank may exercise its right of setoff against your accounts to repay any debt you or any co-owner as principal, endorser, guarantor or otherwise owe to us (herein defined to include, the Bank, our parent, affiliates, subsidiaries, divisions and departments). This means that we have the right to apply part or all of the funds in your account for the satisfaction of any debt you or any co-owner of the account owes us. You agree that our right of setoff applies to any debt or obligation owed to the Bank (whether present or future, contingent or otherwise, as principal or surety or otherwise) and is not conditioned on, or limited by, the complete mutuality of the parties obligated on the debt and owners on the account, the maturity of the debt, giving notice to you, or the availability of any collateral securing the debt. If you open a new deposit account, we may use any funds in this new account to offset balances previously owed to us. If your account is an individual account, our right of setoff may be exercised to repay your debts, whether they are owed by you individually or jointly with others. All of the funds in a joint account may be used to repay the debts of any co- owner, whether they are owed individually, by a co-owner, jointly with other co-owners, or jointly with other persons or entities having no interest in your account. Debts subject to our right of setoff include those owed by you from another joint account in which you are a co-owner even though the debt may not have been directly incurred by you, as well as debts for which you are only secondarily liable. Our security interest and our right of setoff also applies: (i) when we give you credit for or cash a third-party check which is returned to us unpaid for any reason or is counterfeit regardless of the timing of said return; (ii) to cover overdrafts created in any account held by you or in which you have an interest whether or not you consented to the overdraft or are otherwise responsible for it; (iii) to recover service charges or fees owed by you or any joint owner of your account; and (iv) to reimburse the Bank for any costs or expenses in enforcing its rights, including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law. We may exercise our right of setoff or security interest even if the withdrawal results in an early withdrawal penalty or the dishonor of subsequent checks. You agree that the Bank will not be responsible for dishonoring items presented against your account when the exercise of our right of setoff or security interest results in insufficient funds in your account to cover the items. Our right of setoff or security interest may be exercised before or after the death of an account owner and can follow the proceeds to any other account held at the Bank. Failure of the Bank to exercise its right of setoff as provided herein on any occasion when the right arises does not affect the Bank's right to exercise its right of setoff at a later time for the same occurrence or for any subsequent occurrence. The security interest granted by this Agreement is consensual and is in addition to the Bank's right of setoff and any rights under applicable law. Certain federal or state laws may be interpreted to protect funds received from federal or state agencies from setoff. You agree that our right of setoff includes the right to use proceeds from all funds deposited into your account, including funds received from the Social Security Administration and other federal or state agencies, to pay debts, including overdrafts and account fees. By continuing to deposit these funds into your account you agree to allow the Bank to exercise its right of setoff against these funds, and not to assert any claim or defense that these deposits are exempt from setoff based on any federal or state law, rule, or regulation.

9. **STOP PAYMENT ORDERS.** Any authorized signer on an account may stop payment on a check or draft drawn on the account, if the check or draft has not already been paid or cashed by the Bank.

You may request a stop payment on an Automated Clearing House (ACH) debit to your account if the item has not already been paid. You are responsible for notifying the originator/sender that you have revoked your previous authorization for ACH debits.

You may not stop payment on a Debit Card point-of-sale transaction, ATM transaction or a transaction that you initiate by check, which a merchant converts to an electronic transfer at the point of sale. We may, but are not required to, accept oral or written stop payments, even though the person who is requesting the stop payment is not the authorized signer who signed the item. You must describe with certainty the check or draft to be stopped. If you do not provide the check number, payee and the exact amount of the item, we will not be liable for misidentification or payment of the item and failure to honor the stop payment order.

A stop payment order must be received in such a manner that affords us a reasonable opportunity to act upon it. In some cases, we may pay an item even if a stop payment order is in process. For example, if one of our banking offices, without notice of your request, cashes a check that you have asked us to stop, we may still pay the check. If the Bank pays an item over a valid and timely stop payment order, the Bank is responsible only to the extent that you can establish that you have incurred actual damages. If your account is re-credited, you agree to transfer to us all of your rights against the payee or other holder of the item, and to assist us in legal action taken later against that person.

There is a fee for the special handling involved with a stop payment order. If you make an oral stop payment, you will be required  to confirm the request in writing within 14 days after the Bank received the oral stop payment, unless the Bank sends a stop payment confirmation, which will suffice as the written request. A stop payment order on a check or a non-consumer account will be effective for six months from the date of the written request unless renewed prior to the expiration of the request. If not renewed, an item that is presented or re- presented to the Bank for payment may be paid. Each renewal is treated as a new stop payment order and subject to the Bank's stop payment fee. A release or cancellation of a stop payment order may be given by any Depositor or authorized signer on the account; however, such a release or cancellation must be delivered to us in writing.

10. **LEGAL PROCESS ON YOUR ACCOUNT.** You acknowledge and agree that because the Bank has offices in multiple states, if any legal process is served upon the Bank, we may honor such service, regardless of where or how served. You agree that we may accept any legal process we believe to be valid and that we may, in our discretion, waive such service and accept legal process by mail, electronic mail, facsimile or other means. If we receive any court order or similar process, or if we are required to suspend payment by any law or regulation including, but not limited to those issued by the Office of Foreign Assets Control, we may suspend payment or comply with the terms of the order or similar process on any account that we reasonably believe to be affected by the order. Payment will be suspended until final resolution of such court order or similar process or until the applicable law or regulation authorizes resumption of payments, even though such suspension or compliance may be due to inadvertency or error due to the similarity of names of Depositors or other mistakes. If your account is attached, garnished, or otherwise subject to levy by a court order or similar lawful legal action, we will not be liable to you for any sums we reasonably determine to pay or freeze because of such attachment, garnishment, or other levy, even if paying or freezing the money from your account leaves non-sufficient funds to pay a check you have written. After receiving legal process, if we reasonably determine that are required to freeze or remove the funds at issue from your account, you agree that we are not required to pay interest on such funds. If we incur any expenses including, without limitation, reasonable attorney's fees in responding to a court order or similar process in which we are not a named party that is not otherwise reimbursed, we may charge such expenses to your account without prior notice to you. Any attachment, garnishment or other levy against your account is subject to the Bank's right of setoff and security interest. The Bank's fees for garnishment, levy, or other attachment against your account are due when the garnishment, levy or other process is issued, and the Bank may offset these fees from your account prior to honoring any garnishment, levy, or other attachment. All funds held in a joint account may be subject to satisfy any legal process against you or your account pursuant to applicable law notwithstanding any claim or assertion of actual ownership of the funds in the account.

11. **POWER OF ATTORNEY.** The Bank may in its sole discretion refuse to honor or accept a Power of Attorney to open, close, deposit, or withdraw funds from your account or to supply endorsements on checks or any other item or to take any other action with respect to your account. We may require the agent or attorney-in-fact to confirm in an affidavit that the power has not been revoked or terminated or that you are not deceased. We may continue to recognize the authority of your agent or attorney-in-fact until we receive and have a reasonable opportunity to act upon notice of your death or written notice of revocation or termination of the Power of Attorney. We may require that you register the Power of Attorney with the appropriate recording authorities. As may be permitted, we reserve the right to restrict the nature or size of the transactions the agent or attorney-in-fact may conduct on your behalf and we may require that you personally authorize such transactions. The Bank may permit the principal or an authorized signer to conduct transactions against the account even if the Bank has recognized a Power of Attorney to the account. The principal shall have access to an account opened in his/her name under a Power of Attorney despite not having signed a signature card. The Bank in its sole discretion may refuse to recognize a Power of Attorney executed by one joint owner of a Joint Account without the consent of the other Joint Account owner(s). You agree to indemnify and hold Bank harmless for accepting and/or honoring any Power of Attorney, or copy thereof, which Bank accepts in good faith and believes is valid and authorized by you.

12. **GOVERNING LAWS.** Your account is governed by the terms of this Agreement, the laws and regulations of the United States and, to the extent state law is applicable, the laws of the state where your account is located. The Bank determines where your account is located as follows:

• If you opened your account in person, it is located in the state where you opened it;
• If you opened your account by telephone, mail, online or other remote means, and you resided in a state where we had branch offices at that time, it is located in that state;
• But if, at the time your account was opened, you resided anywhere other than a state where the Bank has a branch office, your account is located in North Carolina and the applicable state law will be North Carolina.

If state and federal law are inconsistent, or if state law is preempted by federal law, federal law governs. Additionally, the account is subject to the Uniform Commercial Code, except as specifically amended herein, applicable Federal laws and regulations, and Federal Reserve and clearing house rules and procedures in effect from time to time. In the event no party elects to arbitrate a Claim, you and the Bank agree that any lawsuit or other such proceedings arising from or relating to a Claim (other than small claims, as provided in the arbitration provision of this Agreement) shall be subject to the exclusive jurisdiction of the courts of the state whose law governs your account without regard to any conflicting choice of law rules and that venue shall lie in the same state as the law governing your account exclusive of any other state or jurisdiction.

13. **LIABILITY LIMITATION.** To the extent permitted by applicable law: (a) we shall not be liable for any liability, loss, or damage that may arise when we are acting in accordance with applicable laws, regulations, rules, this Agreement, or our agreements with any financial institutions regarding the transaction of your business under the account or by any acts or conditions beyond our control: (b) **IN NO EVENT AND UNDER NO CIRCUMSTANCES SHALL ANY PARTY BE LIABLE TO EACH OTHER OR ANY THIRD-PARTY FOR SPECIAL, PUNITIVE, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL, OR INDIRECT DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES;** and (c) we shall only be liable for your damages, as provided in this section, caused by our gross negligence or wanton and intentional misconduct.

14. **CONTACT AND ALERTS.** In order for us to service your account, we may contact you by phone, text, email or mail. You give the Bank and its agents express consent to contact you at any telephone number, email address or physical address that you have provided to us. When we call you, you agree that we may leave prerecorded or artificial voice messages. You also agree that we may use automatic telephone dialing systems in connection with calls or text messages sent to any telephone number you give us, including wireless numbers that may result in charges to you.

15. **DORMANT ACCOUNTS.** An account may be classified as "dormant" if there has been no owner generated activity on the account, including any deposits to or withdrawals from the account, or other account related contact for a period of twelve months or more. Recurring or Automatic Clearing House (ACH) or other similar electronic deposits or debits are not considered to be owner generated activity except where allowed by applicable state law. For an account classified as "dormant" we may, at any time in our discretion, reject any transaction in order to protect the account against unauthorized activity. For any "dormant" account, we reserve the right to cease charging any non-transaction based account fees previously assessed to the account if required by state law. Assessment of such fees will recommence without additional notice when the account is no longer "dormant". In accordance with governing state law, accounts for which there have been no owner generated activity for the statutory number of years will be closed and transferred to the state or other designated governmental agency under its escheatment laws. To recover funds from your account following escheatment, you must file a claim with the applicable agency. You agree that we may rely on an address change or notification received by us from a third party vendor or the U.S. Postal Service and other governmental sources to update your address on our records (though such update will not be considered owner generated activity).

16. **AUTHORIZATION OF TRANSFERS.** You authorize the Bank to make transfers of funds from time to time from any deposit or credit account upon instruction of any individual using a correct account name, account number, security code, confidential identification number, or other information the Bank has on file about you, your account or any other authorized signer on your account, and whether given orally, by telephone, in person, in writing, through an ATM, point-of-sale terminal, or any other method. Any such transfers may also be governed by separate agreement with the Bank pertaining to such services. You acknowledge that the Bank has no method to determine whether a transaction conducted with the use of a valid account name, account number security code or other information which the Bank has on file about you or your account was proper and therefore authorize the Bank to complete any such transaction in which the Bank receives such identifying information.

## H. RULES APPLICABLE TO CERTAIN ACCOUNTS

1. **CHECKING SUB-ACCOUNTS.** All interest bearing and non-interest bearing checking (transaction) accounts offered by the Bank are designated as "Money Management Accounts." Savings and "money market" deposit accounts are not considered "Money Management Accounts." For most purposes, Money Management Accounts are treated as a single account for certain record keeping, fees, minimum balances, and paying items.

For regulatory accounting purposes, your checking account will consist of two "subaccounts" on our records. One sub-account is a checking account of the type designated by the account title ("Checking Sub-Account"). The other

sub-account is a money market account ("Money Market Sub-Account"). If the checking account is interest bearing, interest will accrue on the combined collected balance on deposit in both of these sub-accounts at the interest rate established for the applicable checking account. Therefore, the Annual Percentage Yield (APY) earned for the account is based on the combined collected balance on deposit in both sub-accounts during the statement cycle. If the checking account is non-interest bearing, no interest will be paid on the sub-account.

The Checking Sub-Account is classified as a "transaction" account from which an unlimited number of transfers of funds may be made; the Money Market Sub-Account is classified as a "money market" account in which case the number of transfers of funds from the account may be limited to six (6) per statement cycle. The limitation on transfers from the Money Market Sub-Account during a statement cycle is the determining factor for the procedure for transfers between the sub-accounts described below.

Funds on deposit in the Money Market Sub-Account may be maximized during each monthly statement cycle by automatic transfers from the Checking Sub-Account, which will minimize Funds on deposit in the Checking Sub-Account. In order to accomplish this goal, funds on deposit in the Checking Sub-Account in excess of the Target Balance, which is defined below, may be automatically transferred to the Money Market Sub-Account until such time in each monthly statement cycle that a total of six (6) transfers have been made from the Money Market Sub-Account back to the Checking Sub-Account to cover checks presented for payment or debits made from the Checking Sub-Account. Following the sixth such transfer from the Money Market Sub-Account to the Checking Sub-Account, no further transfers will be made from the Checking Sub-Account to the Money Market Sub-Account until the beginning of the next monthly statement cycle.

The Target Balance is a designated balance which is maintained in the Checking Sub-Account by automatic transfer of funds from the Money Market Sub-Account. The Target Balance is established for each Checking Sub-Account based on the type of checking account designated by the Bank as a Money Management Account and is subject to change from time to time without notice.

If checks presented and debits made against the Checking Sub-Account during the monthly statement cycle exceed the established target balance in the Checking Sub-Account, a transfer from the Money Market Sub-Account to the Checking Sub-Account will automatically be made by the Bank in an amount sufficient to pay the check(s) presented or debits made and to re-establish the Target Balance. The remaining balance in the Money Market Sub-Account will be transferred to the Checking Sub-Account, when the amount of the item(s) presented or debits made to the Checking Sub-Account plus the Target Balance exceeds the balance on deposit in the Money Market Sub-Account. Upon the sixth transfer from the Money Market Sub-Account to the Checking Sub-Account during any monthly statement cycle, the entire balance remaining in the Money Market Sub-Account shall be transferred to the Checking Sub-Account. At the end of each monthly statement cycle all funds on deposit in the Checking Sub-Account in excess of the Target Balance will be automatically transferred to the Money Market Sub-Account and the transfer process will begin anew.

The structure of the Money Management Accounts has no effect on the applicability of FDIC insurance coverage to the account.

2. **NON-INTEREST BEARING CHECKING ACCOUNTS.** The Bank offers several non-interest bearing business checking accounts. Most accounts come with a standard monthly maintenance fee. Some accounts also offer certain qualifiers to avoid the monthly maintenance fee. Others have benefits that help reduce or eliminate fees. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Transfers and Withdrawals.** You may make transfers or withdrawals to or from these accounts in any amount, at any time, and by any means acceptable to the Bank, with no limitation on the number of transfers, including third- party transfers.

3. **INTEREST BEARING CHECKING ACCOUNTS.** The Bank offers several interest bearing business checking accounts. Most accounts come with a standard monthly maintenance fee. Some accounts also offer certain qualifiers to avoid the monthly maintenance fee. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Transfers and Withdrawals.** You may make transfers or withdrawals to or from these accounts in any amount, at any

time, and by any means acceptable to the Bank, with no limitation on the number of transfers, including third- party transfers.

**Compounding and Crediting of Interest.** The Bank will begin to accrue interest on items deposited in an interest bearing transaction account no later than the first business day on which the Bank receives credit for such items. Interest is compounded daily and credited on the last day of the statement cycle. If the account is closed before interest is credited, you will not receive the accrued interest. For IOLTA accounts only, interest is not compounded but it is based on simple interest and it is credited to a separate legal services account on the first business day after the 5th of the following month. For Analyzed Interest Checking accounts only, interest is not compounded but it is based on simple interest and credited to the account on the first business day after the 20th of the following month.

**Balance Calculation.** Interest is calculated on the full amount of the collected balance in the account each day. The daily balance method is used to calculate the interest in accounts. Under this method, a daily periodic rate of interest is applied to the collected balance in the account each day. (For IOLTA accounts only, interest is calculated on the full amount of the average monthly collected balance. For Analyzed Interest Checking accounts only, interest is calculated on the average positive monthly collected balance less balances required to offset or reduce balance-based service fees.)

**Variable Interest Rate.** All interest bearing business checking accounts are variable rate accounts, and may be a rate of zero. The Bank, at its discretion, may change the interest rate on the account at any time. Interest may be calculated on certain interest bearing business checking accounts based upon a tiered rate schedule where different rates may apply according to the balance maintained in the account.

4. **MONEY MARKET AND SAVINGS ACCOUNTS.** The Bank offers business money market and savings accounts. Each account comes with a standard monthly maintenance fee or has certain qualifiers to avoid monthly maintenance fee. Refer to the Business Deposit Accounts Fee Schedule for the account details and fees associated with your deposit account, including monthly maintenance fee, balance requirements to avoid the monthly maintenance fee, and other fees that may apply to your account and how certain fees can be avoided.

**Limitations on Withdrawals and Transfers.** For money market and savings accounts, you are permitted to make transfers or withdrawals to or from the account in any amount and at any time subject to the Bank's right to require seven (7) days written notice prior to withdrawal of all or part of the funds on deposit. Withdrawals and transfers are subject to fees as disclosed in the Business Deposit Accounts Fee Schedule.

**Compounding and Crediting of Interest.** Interest begins to accrue no later than the first business day the Bank receives credit for the deposit of non-cash items. Interest is compounded daily and credited on the last day of the statement cycle. If the account is closed before interest is credited, you will not receive the accrued interest.

**Balance Calculation.** Interest is on the full amount of the collected balance in the account each day. The daily balance method is used to calculate the interest in these accounts. Under this method, a daily periodic rate of interest is applied to the collected balance in the account each day.

**Variable Rate Accounts.** Except as otherwise provided, money market and savings accounts will be variable rate accounts. The interest rate may change at any time and in our sole discretion. Interest may be calculated on certain money market and savings accounts based on a tiered rate schedule where different rates may apply according to the balance maintained in the account.

I. **CERTIFICATES OF DEPOSIT**

**General Applicability.** The terms, conditions, and disclosures set forth in this section apply to all Certificates of Deposit, whether they are represented by a written certificate or are book entry Certificates of Deposit (collectively, "Certificates of Deposit"), unless it is indicated that they are applicable to a specific type of Certificate of Deposit only, or where the terms and conditions are superseded by terms and conditions set forth on the Certificate, or on the receipt for a Book Entry Certificate of Deposit, or in some other written contract entered into at the time of the initial deposit.

**Definitions.** For purposes of this section, "term" shall refer to the number of days or months for which the Depositor agrees to have funds remain on deposit at the Bank; "maturity" and "maturity date" refer to the last day of the term of the Certificate of Deposit. This disclosure is in addition to the Truist New Account Opening Client Summary or

Truist Interest Rate and APY Schedule, and the Certificate of Deposit Receipt.

**Calculation of Interest.** Compounding and Crediting. Interest on Certificates of Deposit begins to accrue on the day of deposit for cash and on us items and no later than the first business day following the day of deposit for non-cash items. We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day. The Annual Percentage Yield ("APY") assumes interest will remain on deposit until maturity. A withdrawal prior to maturity will reduce earnings.

Client initiated accounts opened or renewed before June 9, 2025, and automatic renewals before June 9, 2025:

- By default, interest on all Certificates of Deposit is simple interest and is credited to the principal annually on the anniversary date of the Certificate of Deposit unless it has a term of less than a year in which event interest is credited to principal at maturity. Client has the option to request a different frequency of interest payment as well as the option to have the interest paid to a different account.

Client initiated accounts opened or renewed on or after June 9, 2025, and automatic renewals on or after June 9, 2025:

- By default, interest on all Certificates of Deposit is compounded daily and is credited to your account according to its specific term. All Certificates of Deposit with terms of greater than one (1) year pay interest at least annually. If the term of your Certificate of Deposit is thirty (30) days or less, interest will be credited to principal at maturity. Client has the option to request a different frequency of interest payment as well as the option to have the interest paid to a different account.

**Fixed Interest Rate.** Fixed Interest Rate Certificates of Deposit pay the rate of interest and APY for the term of the certificate as provided at account opening or in the renewal notice for each automatic renewal.

**Variable Interest Rate.** Variable Interest Rate Certificates of Deposit pay the initial rate of interest and APY disclosed at account opening or in the renewal notice for each automatic renewal period. After the expiration of the initial interest rate, each Certificate of Deposit is subject to interest rate and APY changes determined at our discretion, based upon the terms of the individual type of Certificate of Deposit and geographical location.

**Renewal.** All Certificates of Deposit automatically renew at maturity upon the same terms and conditions as set forth for the original Certificate except for the interest rate and APY and for any terms and conditions that may have been modified by the Bank prior to renewal, notice of which has been given in accordance with this Agreement. If the Certificate of Deposit has a term of less than thirty-two (32) days, you have one grace day beginning the calendar day after the maturity date to change the term of the Certificate of Deposit. If the Certificate of Deposit has a term of thirty-two (32) days or more, you may change the term of a Certificate of Deposit by notice to the Bank during the ten (10) calendar day grace period beginning the day after the maturity date. Changes in the principal amount of the Certificate of Deposit are subject to the restrictions set forth below. Modifications will be reflected on the renewal notice. Interest on Certificates of Deposit begins to accrue on the day of deposit for cash items and on us items and no later than the first business day following the day of deposit of non-cash items. Certificates of Deposit of any term shall be automatically renewed for the same time period as the original term at the standard interest rate and APY based on your geographical location and the renewal balance at the time of each renewal.  Unless specifically stated otherwise, bonus or promotional interest rates and APY offered at the time of renewal will not apply to automatically renewable Certificate of Deposit. Additional deposits or partial withdrawals may be permitted at maturity and during the grace period subject to the following:

**Certificates of Deposit with a Term of Less Than 32 Days.** Additional deposits or partial withdrawals of principal and interest may be made on the maturity date or during the one-day grace period after the maturity date. If the last day of the grace period falls on a Saturday, Sunday, or Federal holiday, clients may renew, modify, withdraw, or redeem without penalty on the next business day. Interest on Certificates of Deposit begins to accrue on the day of deposit for cash items and on us items and no later than the first business day following the day of deposit of non-cash items.

**Certificates of Deposit with a Term of 32 Days or More.** Additional deposits and partial withdrawals of principal and

interest may be made on the maturity date or during the ten (10) calendar day grace period beginning on the day after the maturity date.  If the last day of the grace period falls on a Saturday, Sunday, or Federal holiday, clients may renew, modify, withdraw, or redeem without penalty on the next business day. Interest on Certificates of Deposit begins to accrue on the day of deposit for cash items and on us items and no later than the first business day following the day of deposit of non-cash items.

Minimum Opening Deposit
$1,000 for 32 Days – 60 Months Regular, Stepped Rate, or Can't Lose Certificates of Deposit
$2,500 for 7-31 Days Certificates of Deposit
$5,000 for Treasury Certificates of Deposit

**Redemption.** The following restrictions apply to the redemption of a Certificate of Deposit without penalty and the payment of interest after maturity:

**Automatically Renewable Certificates of Deposit with a Term of Less Than Thirty-Two (32) Days.** Redemption without penalty may be made on the maturity date or during the one day grace period following the maturity date. If the last day of the grace period falls on a Saturday, Sunday, or Federal holiday clients may renew, modify, withdraw, or redeem without penalty on the next business day. If the Certificate of Deposit is redeemed within the grace period, interest will only be paid to the maturity date. If not redeemed or modified within the grace period, the Certificate of Deposit shall accrue interest at the standard interest rate and APY based on geographical location and the renewal balance at the time of each renewal. If modified within the grace period, the Certificate of Deposit shall accrue interest at the standard interest rate and APY based on geographical location and the renewal balance until a modification is processed.  Upon modification, the new interest rate and APY will align with the terms provided on the Certificate of Deposit (CD) Renewal Modification Notice.

**Automatically Renewable Certificates of Deposit with a Term of Thirty-Two (32) Days or More.** Redemption without penalty may be made on the maturity date or during the ten (10) calendar day grace period beginning the day after the maturity date. If the last day of the grace period falls on a Saturday, Sunday, or Federal holiday, clients may renew, modify, withdraw, or redeem without penalty on the next business day. If the Certificate of Deposit is redeemed within the grace period, interest will only be paid to the maturity date.  If not redeemed or modified within the grace period, the Certificate of Deposit shall accrue interest at the standard interest rate and APY based on geographical location and the renewal balance at the time of each renewal, based on your renewal balance. If modified within the grace period, the Certificate of Deposit shall accrue interest at the standard interest rate and APY based on geographical location and the renewal balance until a modification is processed.  Upon modification, the new interest rate and APY will algin with the terms provided on the Certificate of Deposit (CD) Renewal Modification.

**Withdrawal of Interest.** With the Bank's consent, you may make a withdrawal of all or part of the accrued interest on a Certificate of Deposit prior to its maturity date provided that the remaining balance is at least equal to the original principal amount of the Certificate of Deposit.

**Withdrawal of Principal Prior to Maturity.** Withdrawals of principal from a Certificate of Deposit prior to maturity may be permitted provided the principal balance remaining in the account continues to meet the Bank's minimum deposit requirement. In addition, certain early withdrawal penalties will apply and the interest rate may also be reduced.

**Early Withdrawal Penalties.** Except as otherwise disclosed:

- Certificates of Deposit with a term of less than 3 months, the penalty shall be all interest that would have been earned.
- Certificates of Deposit with a term of 3-12 months, the penalty shall be an amount equal to 3 months simple interest earned on the principal amount withdrawn.
- Certificates of Deposit with a term of 13-23 months, the penalty shall be an amount equal to 6 months simple interest earned on the principal amount withdrawn.
- Certificates of Deposit with a term 24 months or greater, the penalty shall be an amount equal to 12 months simple interest on the principal amount withdrawn.

**Medical Emergency.** An early withdrawal of principal for a medical emergency may be permitted without an early withdrawal penalty if: the initial deposit and any additional deposit have been on deposit at least seven (7) calendar days prior to withdrawal; there have been no partial withdrawals for six (6) calendar days preceding the withdrawal; and the

owner of the Certificate of Deposit maintains a Vantage Checking, Private Vantage Checking, Asset Management Account, Golden Advantage, Elite Gold, or Senior Checking account at the time of the withdrawal.

**Death or Incompetency.** If a Depositor dies or is judicially declared mentally incompetent after purchasing a Certificate of Deposit, the Bank may honor one (1) request for withdrawal of the deposit prior to maturity without penalty.

**NOTE:** If the amount of the penalty exceeds the actual interest accrued for the term, whether paid or unpaid, the penalty shall be withheld from the principal of the Certificate of Deposit.

**ADDITIONAL TERMS FOR THE FOLLOWING COMMERCIAL CERTIFICATE OF DEPOSITS**

**Business Treasury CD.** The interest rate will be determined at the Bank's discretion but shall not be less than one percent below the discount rate of the preceding month's last auction of the United States Treasury Bill with a maturity of 3 months. The Bank may make changes to the interest rate on your Truist Business Treasury CD at any time. Additional deposits of at least $100.00 are allowed at any time and may be made in person or by draft from a Truist deposit account. Electronic deposits from non-Truist accounts are not permitted. Interest will accrue on all additional deposits at the interest rate on the account at the time of the additional deposit. During the term of the CD, and for any subsequent renewal, you are permitted one "penalty free" withdrawal each month provided that the funds have remained on deposit for at least seven (7) calendar days and there have been no partial withdrawals for six (6) calendar days preceding the withdrawal.

**Public Fund Treasury CD.** The interest rate will be determined at the Bank's discretion but shall not be less than one percent below the discount rate of the preceding month's last auction of the United States Treasury Bill with a maturity of 3 months. The Bank may make changes to the interest rate on your Truist Public Fund Treasury CD at any time. No additional deposits are allowed except at renewal, following the guidelines described in the previous section titled "Additional Deposits and Partial Withdrawals." However, during the term of the CD, and for any subsequent renewal, you are permitted one "penalty free" withdrawal each month provided that the funds have remained on deposit for at least seven (7) calendar days and there have been no partial withdrawals for six (6) calendar days preceding the withdrawal.

## J. AVAILABILITY OF FUNDS

**Policy.** Truist Bank's policy applies to Business Checking Accounts, Interest Checking, Money Market and Savings Accounts.

**Deposit Received.** For Business Accounts, please see the section below titled "Collected" Funds Availability for Business Accounts.

If a check is deposited, we may place a hold on the funds which will delay the availability of the funds. The hold may be based upon how long your account has been open, amount of the deposit, type of item(s) deposited, how your deposit is made and how you manage your account. If checks are presented or withdrawals made against funds that are not yet available or are subject to a longer hold, a returned item or overdraft fee may be assessed to your account and the checks may be returned unpaid.

This policy does not apply to deposited items drawn on financial institutions located outside of the United States.

**Determining the Business Day of a Deposit.** For determining the business day of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit during regular business hours on a business day that we are open, we will consider that day the day of your deposit. However, if you make a deposit after the end of a current business day, a Saturday or Sunday, a federal holiday, or on a day we are not open; we will consider the deposit made on the next business day we are open.

The Bank determines when deposited items are considered collected or available for the payment of checks or withdrawal based on the number of business days from the day of your deposit.

The business day of your deposit is indicated on the deposit receipt. Our earliest business- day cutoff time at a banking office is 2:00 p.m. local time. Later business-day cutoff times may apply in certain offices or locations. Inclement weather, natural disasters, or computer or electronic failures may also affect the business day and business hours.

**Immediate Availability.** Funds from the following deposits are available on the business day we receive the deposit.
- Wire Transfers
- Electronic Deposits
- Cash deposited at a branch or ATM (excludes coins until counted and verified)
- Checks deposited at the ATM or with the Mobile app using immediate availability service (IAS); fees will apply. Refer to the Business Deposit Accounts Fee Schedule for additional details.

**Next Day Availability.** Funds from the following deposited items are available for withdrawal on the first business day after the day of your deposit, unless we delay your availability as described in the Longer Delays May Apply section. These checks must be payable to you, deposited to your account, (other than a U.S. Treasury check), and made in person to a Truist employee:

- SunTrust Bank checks
- BB&T Bank checks
- Truist Bank checks
- U.S. Treasury checks
- U.S Postal Money Orders
- Federal Reserve Bank checks
- Federal Home Loan Bank checks
- State, local government and U.S. government checks
- Cashier's, Certified, and Teller's checks

In some cases, when you do not make your deposit in person to one of our employees (excluding Treasury checks), funds from these deposits will be available on the second business day after the day of your deposit.

**Second Business Day Availability.** In some cases, we may not make all of the funds from a check available on the first business day after the day of the deposit. Depending on the type of check that you deposit, funds may not be available until the second business day after the day of your deposit. The first $275 will be made available during nightly processing on the business day we receive your deposit. If we are not going to make all of the funds from a check deposit available on the first business day after the day of your deposit, we will notify you at the time you make your deposit. We also will tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice no later than the next business day after we receive your deposit. If you will need the funds from a deposit right away, you should ask when the funds will be available.

**Longer Delays May Apply.** Funds you deposit by check may be delayed for a longer period under the following circumstances:

- We believe a check you deposit will not be paid.
- You deposit checks totaling more than $6,725 on any one day.
- You redeposit a check that has been returned unpaid.
- You have overdrawn(or would have been overdrawn if items were paid on) your account(s) multiple times in the last six months.
- There is an emergency such as failure of computer or communications equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit. When a hold is placed for longer than two business days, you will not have any of the deposited funds immediately available for use.

During the delay, the funds are unavailable, and you may not withdraw the funds. If checks are presented or withdrawals made against unavailable funds, a return item fee or overdraft fee may be assessed to your account and the checks may be returned unpaid.

We may refuse to accept a check for deposit if we believe the check is not collectible. In this case, you may present the check for payment directly to the paying bank or you may request us to send the item to the paying bank for collection in your name.

**The following Section applies to Business Accounts only "Collected" Funds Availability for Business Accounts**

When you deposit a non-Truist Bank check into your account, the Bank must collect the funds from the "paying bank." The check is sent directly to the Paying Bank or to the Federal Reserve Bank (or another clearing bank) and the Bank receives provisional credit (pending final payment by the paying bank). The check is then presented to the paying bank. Once the presentment process is completed, the funds are deemed "collected."

The number of collection days on check deposits depends on the location of the paying bank. You may request a copy of Truist Bank's check-processing availability schedule to determine when checks are considered collected.

Although a check you deposit may be considered collected by us, the paying bank may still return the check to us unpaid.

To ensure there are sufficient funds in your account to cover the check amount if the deposited check is returned, we may place a "hold" on your account for the amount of the check. Refer to the following section in this disclosure for the number of days availability may be delayed when a hold is placed on the account:

**Deposits at Night Depository Facilities, Cash Vault or Automated Teller Machines (ATMs).** If you make your deposit after 7:00 a.m. ET at a Truist Bank night depository or deposit(s) received after 2 p.m. ET at one of our cash vault operations or after 9:00 p.m. ET at a Truist Bank ATM on a business day or on a day we are not open, we will consider that the deposit was made on the next business day we are open.

All cash will be made immediately available, with the remainder of your deposit being available as outlined in this policy, for deposits received at Truist's ATM's.

An IAS offer may be presented for each check deposited and may provide faster access to deposited funds, if accepted. Funds from checks deposited by 11:59 pm ET, with IAS, will be included during nightly processing. Fees will apply. Refer to the Business Deposit Accounts Fee Schedule for additional details.

You should consult your transaction receipt for the exact posting date of any ATM deposit. Your "posting date" will be the same date as the transaction date. However, if the deposit is made after the cut-off time for the transaction date or on a non-business day then the "posting date" will be the next business day after the transaction date on your receipt.

**Mobile Deposits.** Mobile deposits are generally available to you on the first business day after the day we receive your deposit. If you make a deposit before cut-off which is 9:00 p.m. ET on a business day, we will consider that the day of your deposit. If your deposit is after 9:00 p.m. ET, we consider the deposit made on next business day we are open.

An IAS offer may be presented for each check deposited and may provide faster access to deposited funds, if accepted. Funds from checks deposited by 11:59 pm ET, will be included during nightly processing. Fees will apply. Refer to the Business Deposit Accounts Fee Schedule for additional details.

Before making a mobile deposit, please endorse the back of the check with the words "For Truist Mobile Deposit Only" or the check may be refused for deposit.

**Online, Telephone, and In-Branch Electronic Transfers Between Truist Accounts.** Online, telephone, and in-branch electronic transfers between your Truist accounts are considered deposits. These deposits are available to you on the same business day we receive your deposit. Once they are available, you can withdraw the funds in cash and we will use the funds to pay checks that you have written.

If you make a deposit before 9:00 p.m. ET on a business day, we will consider that the day of your deposit. If you make a deposit after 9:00 p.m. ET on a business day we will consider that the deposit was made on the next business day we are open.

**Other Electronic Credits.** Truist offers services that allow clients to process deposits such as Zelle. These are considered electronic credits and are subject to the availability practices outlined in this policy in addition to the terms and conditions of the applicable service agreements. If you are registered with the Zelle service, transactions received through Zelle will be available to you immediately. Credits received as a Real-Time Payment (RTP) will be available to you immediately. Credits received from a Real-time Payment will be considered a same day credit if received prior to 11:59 p.m. ET.

**Special Rules for New Account Holders.** If you are a new customer, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $6,725 of a day's total deposits of cashier's, certified, teller's, travelers, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $6,725 will be available no later than the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $6,725 may not be available until the second business day after the day of your deposit. Funds from all other check deposits may not be available until the ninth business day after the day of your deposit.

ATM deposit functionality may be limited for temporary access devices issued for new deposit accounts.
**Special Rules for Money Market and Savings Accounts.** In some cases, we may not make all of the funds from a check available on the first business day after the day of the deposit. Depending on the type of check that you deposit, funds may not be available until the fifth business day after the day of your deposit. If we are not going to make all of the funds from a check deposit available on the first business day after the day of your deposit, we will notify you at the time you make your deposit. We also will tell you when the funds will be available. If your deposit is not made directly to one of our employees, or if we decide to take this action after you have left the premises, we will mail you the notice no later than the next business day after we receive your deposit.

**Depositor's Responsibility.** We may make funds from deposited checks available to you before the funds are collected. You are still responsible for any deposited checks that are returned unpaid and for any other problems concerning your deposit, even if you have already withdrawn the funds from your account.

**Collection of Rejected and Returned Items.** The collection process is delayed or interrupted if the check rejects during processing. If you deposit a check that rejects during processing, collection of the funds may be delayed one additional business day. If a check you deposit is returned unpaid and charged back to your account, we may hold the amount of the returned check and withhold the use of the funds two business days from the date the returned check is charged back to the account. Returned checks that we automatically represent to the paying bank on your behalf must also go through the collection process again. Therefore, use of funds equal to the amount of the check(s) re-presented may be withheld up to four business days from the date the check(s) is re-presented.

**Holds on Other Checks.** If we cash a check for you that is drawn on another bank, we may place a hold on the availability of that amount of funds already in your account. Those funds will be available for withdrawal at the time funds from the check we cashed would have been made available if you had deposited it. If we accept for deposit a check that is drawn on another bank, we may make funds from that deposit available for withdrawal immediately but delay your availability to withdraw a like amount of funds that you already have on deposit in another account with us. The funds in the other account will be available for withdrawal at the time funds from the check you deposited would have been made available, if we had placed a hold on the deposited check.

**Endorsement Standards.** Checks should be endorsed only within the area indicated as "Customer Endorsement." This area is limited to 1.5" from the trailing edge. The other areas are reserved for bank endorsements. Failure to restrict your endorsement to the indicated area may result in losses to you because of delayed or misrouted items. Truist Bank will not be liable for losses resulting from a delay in return or misrouting of deposited items caused by unreadable endorsements due to other material or markings placed in the "Depository Bank Endorsement" or "Subsequent Bank Endorsement" areas. Truist Bank reserves the right to charge these losses back to your account.

## K. COMMERCIAL FUNDS TRANSFERS

The following rules and regulations apply to payment orders, including Automated Clearing House (ACH) credits and debits, payments received through the RTP® Network operated by The Clearing House Payments Company L.L.C., wire transfers, and other payment orders made or received by commercial depositors, which are not covered by the Electronic Fund Transfer Act as implemented by Regulation E.

**Provisional Payment.** Upon receipt of an ACH credit, or electronic, oral or written instruction for payment, we will give you provisional credit until we receive final settlement through a Federal Reserve Bank, fund transfer system, or otherwise receive payment. If we do not receive final settlement or payment, you agree to refund to us the amount provisionally credited to your Account and the party initiating the credit to you shall be deemed not to have paid you.

Notice of Receipt of Incoming Payments, ACH payments, incoming wire transfers, and other payment orders received into your account will be shown on your statement; therefore, we will not give you next day notice of receipt of such items.

**Choice of Law.** Your rights and obligations concerning payments to or transfers from your account are subject to applicable law and the rules as adopted and amended from time to time by the fund transfer system used to transmit the payment. We may use any of several different fund transfer systems. The systems and their corresponding rules and regulations include, but are not limited to: Automated Clearing House - operating rules of Nacha, Real- Time Payments System – Real-Time Payments Operating Rules, and Fedwire - Federal Regulation J and applicable Federal Reserve Bank Operating Circulars.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS, WRITE OR CALL US AT:**
844-4TRUIST or
Write: Truist Fraud Management
P.O. Box 1014
Charlotte, North Carolina 28201

If you believe an ACH debit to your account is erroneous or fraudulent, you must notify us immediately and in a time and manner that reasonably allows us to attempt to return the transaction before the applicable deadline set forth in the operating rules of Nacha (which in some cases is as short as one (1) or two (2) business days following the date the debit posts to your account). We will use good faith efforts to return the entry but will have no liability to you in the event our attempts to return the entry are unsuccessful. If you do not notify us of the error within the required timeframe, we may not be successful in returning the entry and we will not recredit your account unless we are otherwise required to do so under the operating rules of Nacha or applicable law.

**FOR ADDITIONAL INFORMATION OR FOR QUESTIONS CONCERNING YOUR ACCOUNT:** Telephone:  844-4TRUIST

Truist.com

Truist Bank, Member FDIC

©2025 Truist Financial Corporation

REV 10/31/2025