**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

|  |  |  |
|---|---|---|
| **BASKLOOFS STONE, INC. d/b/a** | ) | |
| **DEBEER GRANITE & MARBLE,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | **Civil Action No.** |
| **v.** | ) | |
|  | ) | **3:25-cv-00256-LMM** |
| **TRUIST BANK, INC., and** | ) | |
| **TECHNOLOGY INSURANCE** | ) | |
| **COMPANY d/b/a AMTRUSTCYBER,** | ) | |
|  | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND INTEGRATED MEMORANDUM OF
LAW IN SUPPORT**

Baskloofs Stone, Inc. d/b/a De Beer Granite & Marble ("de Beer") hereby files this response to Defendant Truist Bank, Inc.'s ("Truist") Motion to Compel Arbitration and to Dismiss or Stay.

**DISCUSSION**

Defendant Truist has moved this Court to compel arbitration. In doing so, it has cited liberally -and not incorrectly- to several U.S. Supreme Court precedents extolling federal policies favoring arbitration. But Truist has overlooked a much more mundane inquiry, specifically whether the purported arbitration agreement between Truist and Plaintiff de Beer is a valid and properly formed contract. Unfortunately for Truist, the purported arbitration agreement fails at a much more

basic level, viz. for lack of consideration. As a result, this Court may not compel arbitration on the basis of that purported agreement. Truist's motion must be denied.

### A.    *Legal Standard*

"In order to determine whether arbitration should be compelled, the Court must assess whether: (1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." *Lomax v. Woodmen of World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002) (internal quotation marks deleted).

### B.    *This Court Has the Authority to Resolve Threshold Questions of Arbitrability.*

The question of whether it ought to be a court or an arbitrator who decides threshold questions of arbitrability can sometimes become contentious. *See, e.g., In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195 (10th Cir. 2016) (holding that questions concerning the enforceability of an entire contract, as opposed to the enforceability of an arbitration agreement alone, are for an arbitrator to decide). But in this case there is no such issue, because the purported arbitration agreement itself carves out threshold issues from arbitral jurisdiction and leaves them in the realm of the courts: *see* Declaration of Andraco Bohannon ("Bohannon Decl."), Ex. C, p. 4 ("the term 'Claim' . . . does not include any

disagreement over the arbitrability of a dispute, whether a dispute can or must be arbitrated, or whether this Mutual Arbitration Agreement or any aspect thereof is unenforceable."); *see also* Bohannon Decl., Ex. D, p. 5 ("The term 'Claim' excludes any disagreement over the arbitrability of a dispute including whether a dispute can or must be arbitrated, disputes regarding whether this Mutual Arbitration Agreement or any part of it is unenforceable.") Under the circumstances, these threshold questions are properly within the jurisdiction of this Court, regardless of whether the challenge is to the sufficiency of the consideration for the arbitration clause alone, or the Commercial Bank Services Agreement ("CBSA") in its entirety.

In any event, it is only the 2025 iteration of the CBSA that differentiates between the arbitration clause and the rest of the agreement regarding the effect of limitations imposed on Truist's discretion to modify the agreement at will (through the addition of a clause entitled "Future Changes to Mutual Arbitration Agreement," Bohannon Decl., Ex. D, p. 8). In contrast to the 2025 version, which includes a specific clause governing any changes to the arbitration agreement, the 2023 version of the CBSA gives unfettered discretion to Truist to modify virtually any clause of the 2023 CBSA at will, including the arbitration clause. This means that an attack on the sufficiency of the consideration for the arbitration clause in the 2023 CSBA will inescapably call into doubt the sufficiency of the consideration for the entire agreement.

### C.     *Georgia Law Governs the Question of Whether the Arbitration Agreement is Valid*

Substantively, the issue of the validity of the arbitration agreement is determined according to state law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987)). As for which state's law to apply, this case would be governed by Georgia law, either through the application of this court's default choice of law rules, or by way of adopting the CSBA's choice-of-law clause. If the CBSA *is* valid and binding, then its choice of law clause points to the law of the state where the account was opened, if the account was opened in person. Bohannon Decl., Ex. C., p. 28, ¶11; *Id.* at Ex. D., p. 30, ¶12. (Even though neither party has spoken explicitly to whether the account was opened in person or where, it is understood from the internal-use section of the Resolution for Deposit Account (Bohannon Decl., Ex. B) that the document was signed by Mr. DeBeer and Ms. Griffies in person in Bank No. 404 in Georgia.) If the CBSA is *not* valid and binding, then the default choice-of-law rule under Georgia law, which this court must apply in a case it hears under diversity jurisdiction, *see Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998), again points to Georgia law because Georgia is the

4

place where the last act necessary to make the contract binding occurred, *id.*, which is the signing of the signature card, which was presumably done in Georgia.

"Under Georgia law, a contract is enforceable if there is (a) a definite offer and (b) complete acceptance (c) for consideration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise. *Id.* (citing O.C.G.A. § 13–3–42). But "words of promise which by their terms make performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." *Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc.*, 215 Ga. App. 194, 198 (1994) (citing Restatement, Second, Contracts, § 2, Comment (e)).

As movant, the burden is on Truist to establish the presence of a valid arbitration agreement, *Collins v. Rent-A-Ctr. E., Inc.*, 2023 WL 8725939, at *2 (N.D. Ga. Oct. 31, 2023) ("Under Georgia law, the party seeking to compel arbitration has the burden to demonstrate that a valid agreement to arbitrate exists") (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). To meet this burden, Truist has filed two versions of the Commercial Bank Services Agreement ("CBSA") together with the Bohannon Declaration. *See* Bohannon Decl., Exhibits C and D.

Unfortunately for Truist, neither version of the purported arbitration agreement meets all of the elements required for the formation of a valid contract. As far as the arbitration clauses in these iterations are concerned, the 2023 version fails for lack of consideration, as the counterpromises made by Truist are illusory; and the 2025 version fails for lack of proper acceptance.

Truist claims that the two versions, the former dating from 2023, and the latter from 2025, contain "nearly substantively identical" arbitration provisions, Motion to Compel Arbitration, p.3 n.3, but in reality the two versions differ from one another in one very significant respect: the 2023 version reserves to Truist the unfettered ability to modify the agreement, including its arbitration clause, the only exception being instances where "the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement," where "the Bank will provide such notice by written or electronic notice to you." Bohannon Decl., Ex. C, p. 3. In contrast, the 2025 version of the CBSA includes a new addition to the arbitration agreement which gives the counterparty an opportunity to reject any modifications to the arbitration agreement that may be proposed by Truist. *See* Bohannon Decl., Ex. D, p. 8.

These two versions of the CBSA present two distinct problems which Truist cannot overcome: the 2023 version of the CBSA includes only illusory promises from Truist in the name of consideration, meaning that the 2023 version is not a fully

formed contract under Georgia law and is therefore not binding on de Beer. Perhaps motivated by an awareness of this deficiency, Truist appears to have revised the CBSA at some point between 2023 and 2025, whereby Truist functionally separated the arbitration agreement from the operative clauses of the bank services agreement, and appeared to give account holders the opportunity to reject proposed changes to the arbitration clauses. This addition may or may not have resolved Truist's problem with illusory promises in the arbitration agreement, but having made this significant update to the CBSA, Truist now has to prove that de Beer accepted the new version of the CBSA, which it cannot do. This maneuvering has put Truist in a bind: on the one hand, it cannot argue that it did not need to give notice of such an important change, because doing so would highlight the fact that it had complete, unfettered discretion over any changes to the terms of the CBSA. On the other hand, Truist also cannot establish that de Beer assented to the change, because under the terms of the 2023 CBSA "Continuing to maintain your account *following a notice* constitutes your acceptance of our changes," Bohannon Decl., Ex. C, p. 3 (emphasis added), but there is not even an allegation that any notice was sent to de Beer.

### D.    The 2023 CBSA is Not Binding on de Beer Because It Is Based on Illusory Promises

In the 2023 version of the CBSA, Truist reserved for itself a virtually unlimited authority to revise the CBSA at its sole discretion. The relevant clause

read as follows:

> The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included on your account statement. . . . Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of this Agreement with or without notice.

Bohannon Decl., Exh. C, p. 3.

Courts considering reservations of authority to unilaterally revise agreements to with such little limitation have routinely found them to constitute illusory promises, and declared them insufficient consideration to support any return promises. The U.S. District Court for the Eastern District of Virginia recently surveyed the lay of the land on this very point, in a case where Truist was a party and Truist was moving to compel arbitration on the basis of language that is very similar to the language at issue in this case. Here is what the court found:

> Generally, "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (collecting cases). Most agree that where one party is "free to exercise or not exercise the arbitration clause at its whim," its "performance is entirely optional," and thus the arbitration agreement is illusory. *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540, 545 (E.D. Pa. 2019) (citing *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 783 (7th Cir. 2014)); *see also . . . In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058,

8

1065–66 (D. Nev. 2012) ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract."); *ACE Cash Express, Inc. v. Cox.*, No. 5-15-1425CV, 2016 WL 4205850, at *5 (Tex. Ct. App. Aug. 9, 2016) (holding that, under Texas law, if one party "can unilaterally modify or terminate the purported arbitration agreement without prior notice to [the other party], that agreement is based upon an illusory promise and thus not enforceable").

. . .

When faced with an arbitration agreement that includes a unilateral change-in-terms provision, courts in the Fourth Circuit have consistently found such an agreement to be illusory, unless the empowered party is limited in some way. *See, e.g., . . . Johnson [v. Continental Finance Co.*, 131 F.4th 169 (4th Cir. 2025)] at 179 (holding that, under Maryland law, a change-in-terms clause that allows one party to "change *any* term of [the] Agreement in [its] *sole discretion*, upon such notice to [the other party] as is required by law" was illusory (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 835 A.2d 656 (2003)); *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 728 (4th Cir. 2025) (holding that, under West Virginia law, "the unilateral right to modify a contract, including an arbitration agreement, does not render an underlying promise illusory *if the modifying party must give reasonable notice of modification*" (emphasis added) (citing *Citizens Telecomms. Co. v. Sheridan*, 239 W.Va. 67, 799 S.E.2d 144, 152–53 (2017))); *Am. Gen. Life & Acc. Ins. v. Wood*, 429 F.3d 83, 91 n.5 (4th Cir. 2005) (rejecting an argument that an agreement that permitted unilateral modifications was illusory because, among other things, the empowered party's discretion to modify was "limited to prospective disputes and by specific notice requirements"); *Lovinfosse v. Lowe's Home Centers, LLP*, No. 1:23cv574, 2024 WL 3732436 (E.D. Va. Aug. 8, 2024) (finding a change-in-terms clause that permitted the defendant to modify the terms and conditions "in its sole and absolute discretion . . . at any time with or without notice" rendered an arbitration agreement contained therein illusory); *Forbes v.*

9

*SeaWorld Parks & Ent.*, No. 4:16cv172, 2017 WL 2437348, *5 (E.D. Va. June 2, 2017), *aff'd*, 707 F. App'x 168 (4th Cir. 2017) (noting that although "the arbitration agreement only allowed[ed] Defendant . . . to modify its terms, *the agreement require[d the d]efendant to provide [the p]laintiff with '30 calendar days' notice of any such modifications*" (emphasis added)).

A change-in-terms clause that provides that a party can unilaterally modify any term, and must provide notice only when required by law, is similarly illusory. The Fourth Circuit, citing a general contract law treatise, made this clear in *Johnson*: "The plain language of the clause merely commits Continental to do what it is already required to do by law. That cannot furnish consideration. A bargained-for-exchange by definition assumes that each party will undertake some obligation beyond those already imposed by law." 131 F.4th at 180 (citing 3 Williston on Contracts § 7:42 (4th ed. 2024)).

*Kiser v. Truist Fin. Corp.*, 796 F. Supp. 3d 207, 235-37 (E.D. Va. 2025).

Even though *Kiser* does not cite any cases out of the Eleventh Circuit, the doctrine in this Circuit is not out of line with the general trend. The most prominent case cited in the context of illusory promises in the Eleventh Circuit is *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005). In *Caley*, the Eleventh Circuit considered whether a dispute resolution policy that could be modified by the defendant employer seemingly at will was binding; in concluding that it was, the court relied explicitly on the fact that the defendant had to give notice of changes, and that a claim that was lodged locked into place the then-prevailing terms of the dispute resolution policy. *Id.* at 1376-77. Thus, the Eleventh Circuit is also aligned with its sister circuits that discretion to make changes must not be unlimited in order for a return promise to be considered not illusory.

10

As for the specific facts of *Kiser*, the Kisers were a couple who held 15 accounts with Truist. *Id.* at 215. Like de Beer here, Kiser was required by Truist to sign signature cards at the time that they opened new accounts there. *Id.* at 216. As in this case, the signature cards signed by the Kisers asked the signatory to confirm receipt of the broader agreement containing the arbitration provision in question. *Id.*

The Kisers signed various signature cards that certified receipt of various iterations of Truist's account agreement. *Id.* at 217. Two versions of the account agreement that the Kisers admitted to having received contained the following language:

> When the laws governing your Account require the Bank to provide you written advance notification of a change to the rules and regulations, the Bank will provide such notice through a letter, account statement message or other written or electronic notice. Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of these rules and regulations with or without notice.

> When these rules and regulations change, a copy of the revised rules and regulations will be available at any office of the Bank or on the Bank's website at www.suntrust.com/rulesandregulations....

*Id.* at 237. On the basis of this language, the court in *Kiser* held that "Truist's right to unilateral modification is essentially unfettered. The plain language of the change-in-terms clause permits Truist to unilaterally modify the arbitration agreement *without providing notice*. . . . By promising to provide notice only when

11

required by 'applicable law or regulation,' Truist merely commits to do what the law already requires it to, taking on no additional obligation as consideration for the agreement." *Id.* at 237-38 (emphasis in original) (footnote removed).

This language is functionally equivalent to the language in this case, which, to recall, reads as follows (in the 2023 version):

> The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included on your account statement. The notice may explain what change has occurred and instruct you to obtain a current version of the Agreement at your local branch or online at our website, www.Truist.com. Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of this Agreement with or without notice. Continuing to maintain your account following a notice constitutes your acceptance of our changes. This Agreement cannot be changed or modified by you. Upon the effective date of a change by the Bank, the current revised version of the Agreement will govern your account, regardless of whether you obtained a copy from your branch or online.

Bohannon Decl., Ex. C, p. 3.

Thus, similarly to *Kiser* and the cases cited in *Kiser*, in the 2023 version of the CBSA Truist reserved for itself the authority to make any changes to the CBSA that it deemed proper. This reservation of unilateral right to modify the contract did not distinguish between the arbitration clause and the substantive parts of the agreement. *Id*. As such, the reservation of rights in the 2023 Truist CBSA was a

12

quintessential example of the type of illusory promise that so many courts deemed rendered arbitration agreements unenforceable. Respectfully, this Court must consider the 2023 CBSA to be not binding on de Beer, and must not order to compel arbitration on the basis of that agreement.

> **E.      The 2025 CBSA is Not Binding on de Beer Because It Was Never Accepted**

Truist cannot establish that de Beer assented to the 2025 version of the CBSA, because under the terms of the 2023 CBSA "Continuing to maintain your account *following a notice* constitutes your acceptance of our changes," Bohannon Decl., Ex. C, p. 3 (emphasis added). Even if it were assumed that the 2023 CBSA were binding on de Beer,  there is not even an allegation that any notice was sent to de Beer, and so the revised language cannot be binding on de Beer.

The most that Truist is able to say about the notice given to de Beer is that "the 2025 version is "available on Truist's website, which is accessible to the public." Bohannon Decl., ¶ 11, but to say that a document is "accessible to the public" is a far cry from establishing that de Beer ever received the agreement or agreed to be bound by its terms. *See Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 180 (4th Cir. 2025) (criticizing the ex-post-facto posting of an updated cardholder agreement on the financial institution's website as "ineffectual notice" and "likely

13

to elude" the intended recipient, as well as placing "no constraint on [a financial institution's] ability to escape its contractual obligations whenever it sees fit.").

## **CONCLUSION**

This Court has jurisdiction to resolve questions regarding the existence and validity of any arbitration agreement between Truist and de Beer. Applying Georgia law, this Court should conclude that there is no valid arbitration agreement that has been concluded between the parties, and for that reason deny Truist's motion to compel arbitration.

Respectfully submitted, this 6th day of February, 2026.

FGP LAW, LLC

/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530
fpodesta@fgplaw.com

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for de Beer*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Response in Opposition to Defendant's Motion to Compel Arbitration** was prepared using 14 Point Times New Roman Font, and that on February 6, 2026, I filed and served the foregoing with the Clerk of Court and upon all counsel of record via this Court's CM/ECF Electronic Case Filing System.

Respectfully submitted, this 6th day of February, 2026.

FGP LAW, LLC

/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530

15