IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE, ) | | |
| ) | | |
| **Plaintiff,** ) | | **CIVIL ACTION NO.** |
| ) | | |
| v. ) | | **3:25-cv-00256-LMM** |
| ) | | |
| TRUIST BANK, INC., and TECHNOLOGY INSURANCE COMPANY d/b/a AMTRUSTCYBER, ) ) ) ) | | |
| **Defendants.** | | |

**DEFENDANT TRUIST BANK'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY**

As established in Truist Bank d/b/a Truist Bank, Inc. ("Truist")'s Motion to Compel Arbitration (Doc. 13), Plaintiff Baskloofs Stone, Inc. d/b/a de Beer Granite & Marble ("de Beer") agreed to arbitrate its claims against Truist. De Beer now argues, citing Virginia law, that it cannot be bound by the arbitration provisions contained Truist's 2023 Commercial Bank Services Agreement ("CBSA") because it is based on illusory promises, and that it is not bound by the 2025 CBSA because de Beer never accepted the revised terms. These theories fail for several reasons. First, Georgia law makes clear that the arbitration provision is supported by adequate consideration because it requires both parties to resolve their disputes via binding arbitration. Second, de Beer is bound by the 2025 CBSA because it received written

1

notice of changes to the CBSA – specifically the arbitration provision – and that continued operation of its account would constitute acceptance of the same. Because de Beer continued to operate its account after receiving this notice, there can be no doubt that de Beer consented to the 2025 CBSA and the arbitration provision within the same. Accordingly, whether under the 2023 or 2025 versions of the CBSA governing de Beer's account and relationship with Truist, the Court must compel de Beer to arbitrate its dispute with Truist and deny de Beer's attempts to avoid the valid and binding arbitration agreements to which it affirmatively agreed.

## RELEVANT FACTS

When it executed the Signature Card in connection with its account with Truist ending in -0274 (the "Account"), de Beer acknowledged receipt of and agreement to each and every term, condition, and provision in the 2023 CBSA, and agreed to be bound by its terms. (Ex. B to January 23, 2026 Declaration of Andraco Bohannon ("Bohannon Decl.") (ECF 13-1), at 1). In the 2023 CBSA, de Beer also agreed that the terms of the CBSA could be amended, and that those amended terms and conditions would govern the Account and future transactions. (Bohannon Decl., Ex. C at 3.) Specifically, the 2023 CBSA explains:

> The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included in your account statement. The notice may explain what change has occurred and

2

> instruct you to obtain a current version of the Agreement at your local branch or online at our website . . . Continuing to maintain your account following a notice constitutes your acceptance of our changes . . . Upon the effective date of a change by the Bank, the current revised version of the Agreement will govern your account[.]

(Bohannon Decl., Ex. C at 3.) De Beer acknowledged and agreed that it would receive notice of these changes in a number of ways, including in its account statements. (*Id.*)

Truist did amend the terms of its CBSA, including the arbitration agreement, between 2023 and 2025. Prior to doing so, Truist notified de Beer that changes were being made and gave it an opportunity to ask questions about them. Specifically, Truist provided de Beer with a September 30, 2025 account statement for the Account listed with de Beer's principal office located at 145 Mallory Court, Tyrone, Georgia, 30290. (Supplemental Declaration of Andraco Bohannon ("Supp. Bohannon Decl.") attached hereto as **Exhibit 1**, Ex. E at 1; *see also* Doc. 1 at ¶ 2 (alleging that the 145 Mallory Court address is de Beer's principal office)). Contained within this account statement is a notice stating the following:

> Changes are being made effective October 31, 2025 to the Commercial Bank Services Agreement ("CBSA") that governs your account, including revisions to Section B (Arbitration Agreement) and Section I (Certificates of Deposit). ***Continued use of your account after the effective date constitutes your acceptance of these changes***.

(Supp. Bohannon Decl., Ex. E at 3 (emphasis added).) The notice also explained where the current CBSA could be found and identified the steps de Beer should take

3

to address any questions it had about the changes. (*Id.*) De Beer continued to use its Account following this notice, as evidenced by the October and November 2025 account statements. (Supp. Bohannon Decl., Ex. F and G.)

**ARGUMENT AND CITATION TO AUTHORITY**

### I. The 2023 CBSA is supported by consideration and constitutes a valid contract that is binding on de Beer.

There can be no dispute that the 2023 CBSA—to which de Beer affirmatively agreed to be bound when it executed the Signature Card—is a valid contract to which de Beer is bound. De Beer's argument that it is not bound by the 2023 CBSA because it lacks consideration misses the mark. (Doc. 15 at 7–13.)

The arbitration agreement within the 2023 CBSA is supported by adequate consideration under Georgia law because it requires both parties to engage in arbitration to resolve disputes. *Martinez v. Checkr, Inc.*, No. 1:19-cv-4369-WMR, 2019 WL 8135598, at *6 (N.D. Ga. Dec. 19, 2019), *adopted by* 2020 WL 1041088 (N.D. Ga. Jan. 9, 2020) (granting defendant's motion to compel arbitration); *see Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005) ("Under Georgia law, a mutual exchange of promises constitutes adequate consideration."); *see also Attenborough v. Dillard's Dep't Store*, No. 1:06-CV-0291-TWT, 2006 WL 1663299, at *2 (N.D. Ga. June 9, 2006) (holding that the arbitration agreement was supported by consideration because "it required both the Plaintiff and Defendant to submit all

discrimination and retaliation disputes related to the Plaintiff's employment to 'final and binding arbitration'").

In *Martinez v. Chekr, Inc.*, the plaintiff made similar arguments to de Beer's in opposing the defendant's motion to compel arbitration. 2019 WL 8135598. The plaintiff argued that the operative agreement and specifically the arbitration clause was illusory because it allowed the defendant to unilaterally change the terms without the plaintiff's notice or consent. *Id.* at *6. This Court quickly disposed of this argument, holding that "the arbitration provision is supported by consideration because it requires both parties to resolve disputes through binding arbitration." *Id.* This Court additionally pointed out that arguing that the arbitration agreement was illusory was "really a challenge against the [agreement] as a whole[,]" as the reservation-of-rights provision appeared at the beginning of the agreement and outside of the arbitration provision. *Id.* at *7.

Here, the 2023 CBSA requires ***both*** Truist and de Beer to arbitrate their disputes. (Bohannon Decl., Ex. C at 4 ("You and we mutually agree that, ***if either party demands arbitration***, the Parties will resolve any and all disputes between them exclusively through final, binding, and individual arbitration under the terms of this Mutual Arbitration Agreement[.]" (emphasis added); Bohannon Decl., Ex. D at 4 (same).) Because the 2023 CBSA requires both parties to resolve disputes

through binding arbitration, the arbitration provisions are supported by adequate consideration under Georgia law.

De Beer relies primarily upon a factually distinguishable case decided under Virginia law, *Kiser v. Truist Fin. Corp.* 796 F. Supp. 3d 207 (E.D. Va. 2025). But there are significant distinctions between *Kiser* and the instant case. In *Kiser*, the individual plaintiffs brought suit against Truist alleging that Truist forged their signature and added false information on the signature cards binding them to Truist's deposit agreements. *Id.* at 214. The court in *Kiser* denied Truist's motion to compel arbitration in part because Truist did not prove that the Kisers received the 2019 arbitration agreement, and the court could not "conclude that the Kisers agreed to the 2020 account agreement." *Id.* at 225. Additionally, *Kiser* highlighted a specific particularity in Virginia law regarding the implied covenant of good faith and fair dealing (*Id.* at 239), a covenant that is strong within Georgia's case law. *McGee v. Patterson*, 323 Ga. App. 103, 112 (2013) ("Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement.") (citation omitted); *Augustin v. Walker Lake Emergency Grp., PC*, 364 Ga. App. 856, 861 (2022) ("[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.") (citation omitted).

6

The *Kiser* court was also persuaded by the fact that the notice Truist provided to the plaintiffs of changes being made to the operative deposit agreement did not alert the plaintiffs that the continued use of their accounts would constitute their consent to these changes. *Id.* at 231–34. *Kiser* cited to case law granting defendants' motions to compel arbitration in relevant part because the plaintiffs in those cases received notices that changes were being made to the operative account agreements and that continued maintenance of the account constituted acceptance of the changes. *Id.* at 231; *see Gillam v. Branch Banking and Trust Co. of Va.*, 2018 WL 3744019, at *3 (E.D. Va. Aug. 7, 2018); *see also Klein v. Verizon Comm'ns, Inc.*, 2017 WL 5071306 (E.D. Va. Aug. 9, 2017).

Here, de Beer is a corporation, not an individual plaintiff. There is also no dispute that de Beer did execute the Signature Card to open the Account, and that in executing the Signature Card, de Beer acknowledged its receipt of the 2023 CBSA. (*See* Bohannon Decl., Ex. B ("We have received the 'Commercial Bank Services Agreement' and the 'Business Deposit Accounts Fee Schedule' and on behalf of the Depositor agree to the terms of each document[.]'"). Additionally, this case is not pending in Virginia or governed by Virginia law, and Georgia law requires Truist to make changes to the CBSA consistent with the covenant of good faith and fair dealing. *See Augustin*, 363 Ga. App. at 861. More to the point, Truist's notices to de

Beer informed de Beer that continuing to use its account would constitute acceptance of the changes to the CBSA. (Supp. Bohannon Decl., Ex. E at 3.)

De Beer's argument fails, as the arbitration provision within the 2023 CBSA is supported by adequate consideration because they require both Truist and de Beer to resolve their disputes through binding arbitration. Additionally, the 2023 CBSA as a whole is unequivocally supported by adequate consideration, as it is a contract between the bank and de Beer for an exchange of goods and services. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195–96 (11th Cir. 2008) ("[M]utual promises and obligations of the parties constitute[] sufficient consideration for the contract.") (citation omitted). Thus, de Beer is bound by the terms of the 2023 CBSA, and the Court should compel arbitration and stay or dismiss the litigation.

II.    **De Beer accepted the terms of the 2025 CBSA after it received notice of the changes and continued to use the Account.**

De Beer is additionally required to arbitrate under the terms of the 2025 CBSA to which it consented. De Beer alleges that Truist made a "significant" revision to the CBSA in the 2025 version, and that "Truist now has to prove that de Beer accepted the new version of the CBSA, which it cannot do." (Doc. 15 at 7.) Contrary to de Beer's suggestion, the record establishes that de Beer accepted the 2025 version of the CBSA.

Truist provided de Beer with its September 30, 2025 Account Statement, which notified it that "[c]hanges [we]re being made effective October 31, 2025 to

8

the Commercial Bank Services Agreement that governs your account, including revisions to Section B (Arbitration Agreement)[.]" (Supplemental Bohannon Decl., Ex. E at 3.) De Beer was informed that "[c]ontinued use of [its] account after the effective date constitute[d its] acceptance of the changes." (*Id.*) De Beer ***did*** continue to use its account following October 31, 2025, as evidenced by its October 2025 and November 2025 account statements (Supplemental Bohannon Decl., Exs. F and G.)

Thus, Truist has shown unequivocally that de Beer was notified of a change being made specifically to the arbitration provision, where it could locate the current version of the CBSA, what it should do if it had questions about the change, and that continued use of its Account would constitute acceptance of the change. (Supp. Bohannon Decl., Ex. E at 3.) De Beer was specifically informed that "[a]ll future transactions on [its] account w[ould] be governed by the amended CBSA," and given instructions to gain additional information on the changes being made. (*Id.*) Therefore, contrary to de Beer's assertion, de Beer ***did*** have notice of the changes to the 2025 CBSA and ***did*** consent to these changes.

Even if de Beer had not received notice of this change, de Beer's argument fails as a practical matter. As highlighted by de Beer, the change Truist made to the arbitration agreement was in de Beer's favor – in de Beer's words, to allow "the counterparty an opportunity to reject the modifications to the arbitration agreement that may be proposed by Truist." (Doc. 15 at 6.) The change had no impact on the

substantive rights and duties in the arbitration agreement, but merely provided a procedure by which an accountholder could reject future changes to the arbitration agreement. Specifically, the revised language in the 2025 CBSA states, in relevant part:

> Notwithstanding any other provision in this Commercial Bank Services Agreement, if Truist makes a change to this Mutual Arbitration Agreement . . . You may reject the changes by sending Truist written notice . . . Any rejection of a future change does not alter, change or affect Your agreement to arbitrate in accordance with the language of any prior version of the Mutual Arbitration Agreement (as modified by any amendments that You did not validly reject.[1]

(Bohannon Decl., Ex. D at 8.) Indeed, de Beer *was* given notice of this change and provided with instructions to reject the changes, but did not to do so. (Supp. Bohannon Decl., Ex. E at 3.) If this new provision were deemed unenforceable, the Court could strike it and proceed to compel de Beer to arbitration on the remainder of the 2025 CBSA's arbitration agreement, which is substantively the same as that of the 2023 CBSA. (Ex. D to Bohannon Decl. at 8 ("if any portion of this Mutual Arbitration Agreement is found unenforceable, it shall be severed from the Mutual Arbitration Agreement such that the remainder of this Mutual Arbitration Agreement shall be enforceable to the fullest extent permitted by law.").)

---

[1] Contrary to de Beer's implication (Doc. 15 at 7), Truist does not concede that this change was made due to any deficiency in the previous version of the CBSA.

De Beer is therefore bound by the terms of the 2025 CBSA, and must arbitrate its claims against Truist. But even if the Court finds that de Beer is not bound by the 2025 CBSA, the 2023 CBSA is a valid and binding contract under Georgia law and requires de Beer to resolve its claims through arbitration.

**III.   Both the 2023 CBSA and the 2025 CBSA require de Beer to arbitrate its disputes against Truist.**

When de Beer executed the Signature Form for the Account in 2023 and when de Beer filed this action in 2025, the applicable CBSA contained a provision that requires arbitration of de Beer's dispute against Truist. The arbitration provisions in both agreements cover de Beer's claims here—based upon allegedly fraudulent transactions conducted with the bank—because they relate to "any transaction" with Truist. (Bohannon Decl., Ex. C at 4; Bohannon Decl., Ex. D at 4.)

De Beer's continued operation and maintenance of the Account throughout 2025 following receipt of the notice of upcoming changes to the CBSA evidences its agreement to the arbitration provision contained in the 2025 CBSA. (*See* Supp. Bohannon Decl., Ex. E at 3; *see also* Supp. Bohannon Decl., Exs. F and G.) Therefore, de Beer is bound to arbitrate its disputes in this matter with Truist under the 2023 and 2025 CBSA for all of the same reasons explained in Truist's Motion. Because de Beer already agreed to arbitrate any dispute with Truist in 2023 and 2025, Truist's Motion should be granted and this Court should compel arbitration and stay or dismiss the instant litigation.

## **CONCLUSION**

Given that de Beer has asserted claims in this case that are subject to mandatory arbitration under the parties' clear and binding arbitration agreement in the 2023 and 2025 CBSAs, the Court should enter an order enforcing the terms of the parties' agreement by compelling arbitration and dismissing or staying the instant litigation. De Beer has not shown that it did not consent to arbitrate the dispute, nor that it is not bound by the CBSAs. On the contrary, it affirmatively consented to arbitration in 2023 when it executed the Signature Form, and again in 2025 when it continued to use its Account after receiving notice of the changes to the CBSA. Thus, the Court must compel de Beer's claims to arbitration and stay or dismiss this lawsuit.

Respectfully submitted this 20th day of February, 2026.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Nancy H. Baughan*
Nancy H. Baughan
Georgia Bar No. 042575
Rachel C. Bramblett
Georgia Bar No. 896738
Promenade Tower, Suite 2000
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Email: nbaughan@bradley.com
    rbramblett@bradley.com

*Counsel for Defendant Truist Bank*

12

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared in compliance with Local Rule 5.1(B). The undersigned further certifies that this reply brief does not exceed fifteen (15) pages, as set out in Local Rule 7.1(D).

This 20th day of February, 2026.

/s/ Nancy H. Baughan
Nancy H. Baughan

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a copy of the within and foregoing **DEFENDANT TRUIST BANK'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY** upon all parties of record to this matter by filing same with the Clerk of Court using the Court's eFile system which will send email notification to all parties of record in this action.

This 20th day of February, 2026.


/s/ Nancy H. Baughan
Nancy H. Baughan