IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Civil Action No. |
| v. | ) ) | 3:25-cv-00256-LMM |
| TRUIST BANK, INC., and TECHNOLOGY INSURANCE COMPANY d/b/a AMTRUSTCYBER, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE OUT OF TIME**

Baskloofs Stone, Inc. d/b/a De Beer Granite & Marble ("de Beer") hereby files its reply brief in support of its motion to set aside the Clerk's (constructive) Entry of Default, and to file an Answer to the counterclaims of Technology Insurance Company d/b/a AmTrustCyber ("AmTrust") out of time, and states as follows:

**DISCUSSION**

In the face of an all-too-human error by counsel, Defendant Technology Insurance Company ("AmTrust") has refused to extend much graciousness. *See generally* AmTrust's Response in Opposition to Plaintiff's Motion for Leave to File out of Time ("Response") [Doc. 24]. DeBeer understands, but AmTrust's view of

the law rings hollow. That is because cases presenting very similar fact patterns to this case have previously come before the courts of this Circuit and, in the vast majority of these cases, courts have ruled against entering default against the faultless principal.

This much was argued at sufficient length in the Motion for Leave to File out of Time and Response to Application for Default ("Motion for Leave") [Doc. 23] filed by Plaintiff Baskloofs Stone, Inc. d/b/a/ de Beer Granite & Marble's ("de Beer"). In its Response, AmTrust comes back with arguments that are built on general principles and out-of-circuit precedents, and attempts to distinguish on-point authority on the flimsiest of grounds. These arguments are far from convincing. Again, the undersigned does acknowledge having erred, but the consequence of that error, without more, should not be, and in this Circuit ordinarily is not, default being entered against his client. Yes, there are interests to be balanced in this predicament –rules regarding timeliness must be enforced to ensure an orderly dispensation of justice– but in similar circumstances the courts of this Circuit have consistently found good cause to set aside default, and favored resolving disputes on the merits over awarding windfalls on account of an omission by counsel.

### 1. *AmTrust Correctly Identifies the Top-Level Test for "Good Cause" Analysis, But Misapplies the Test for Each Factor.*

In its Response, AmTrust correctly identifies the top-level test for "good cause" in the context of Rule 55, paraphrasing the test as it was expressed in *Savoia-McHugh v. Glass*, 95 F.4th 1337 (11th Cir. 2024). For the sake of guiding the coming discussion, the factors listed in *Savoia* are as follows: (1) whether the default was culpable or willful; (2) whether the defaulting party presents a meritorious defense; (3) whether setting the default aside would prejudice the adversary; (4) whether the defaulting party acted promptly to correct [sic] the default; (5) whether the public interest was implicated; and (6) whether there was significant financial loss to the defaulting party. *Savoia*, 95 F.4th at 1342 (citing *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996)).

But AmTrust erroneously analyzes the factors enumerated there. To take these in turn:

>  a. Courts in the Eleventh Circuit Have Found Good Cause to Set Aside Default in Cases with Very Similar Facts.

First, AmTrust argues that failing to answer a counterclaim because one is accustomed to practicing in Georgia state court "does not constitute good cause; rather, it demonstrates culpable neglect." [Doc. 24 at 3]. AmTrust bases this conclusion on the general proposition that "[f]ederal courts have consistently held

<div align="center">3</div>

that an attorney's unfamiliarity with federal procedural rules constitute culpable conduct, not excusable neglect or good cause" [Doc. 24 at 3], which AmTrust supports with citations to a case out of the Ninth Circuit, a district court case from Louisiana, and a bankruptcy court case out of Georgia.

This support pales in comparison to the authority marshaled by de Beer, who presented two cases out of federal district courts sitting in Georgia that are almost on all fours with the facts of this case, in which it was found that the *precise* failing in question here, viz. failing to timely answer a counterclaim by reason of being accustomed to Georgia state practice, can constitute good cause to set aside default. *See Perez v. Wells Fargo, N.A.*, 2015 WL 13079245 (N.D. Ga. Jan. 27, 2015); *Wortham v. Brown*, 2015 WL 2152826 (S.D. Ga. May 7, 2015).

AmTrust attempts to distinguish these cases, but does so on grounds that were already recognized and addressed in the Motion for Leave. AmTrust argues that *Perez* is "wholly distinguishable," [Doc. 24 at 4] because that action was originally filed in state court, and was only later removed to federal court by the defendant. *Id*. While that is correct, as explained in the Motion for Leave, that factor was absent in *Wortham*, and yet the *Wortham* court explicitly held that Wortham's failure to answer Brown's counterclaim was not culpable or willful while acknowledging this very distinction from *Perez*. *Wortham v. Brown*, 2015 WL 2152826, at *3 (S.D. Ga. May 7, 2015). The *Wortham* court held as follows:

4

As in *Perez* and *Betty K,* Wortham's conduct in this case does not appear to have been willful or contumacious. The record does not reflect a pattern of delay or willful conduct by Wortham, and Wortham has been actively litigating his case. Further, the record suggests that Wortham's attorney, and not Wortham himself, was responsible for the failure to answer the counterclaim. While this Court takes seriously the obligations of parties and their counsel to read and know the procedural rules applicable to the forums in which they litigate and realizes that Wortham—unlike the plaintiff in *Perez*—chose to bring his suit in federal court, Wortham's failure to answer Brown's counterclaim within the required time period was not culpable or willful under the less rigorous Rule 55(c) good cause standard.

*Id*. The same factors relied on by the *Wortham* court are present in this case with equal force: there is no pattern of delay or willful conduct by de Beer; de Beer has been actively litigating its case, as it timely filed a response [Doc. 15] to Truist's Motion to Compel Arbitration even as AmTrust's counterclaim was still pending; and it was de Beer's attorney, not de Beer itself, who was responsible for the failure to answer the counterclaim. Under the circumstances, this Court should follow the lead of the *Wortham* court and hold that de Beer's failure to answer AmTrust's counterclaim within the required time was not culpable or willful.

It is true that *Wortham* differs from the present case in that Wortham's counsel acted the next day after the entry of default to set it aside, *Wortham*, 2015 WL 2152826, at *1, which is a quicker reaction than was observed in the present case. But, as explained in the Consent Motion for Leave to File Response to Application for Default Out of Time [Doc. 20], the reason for the additional delay was a medical episode then being experienced by the undersigned, which was

5

definitely not "willful." Also, it is worth noting that the *Wortham* court took the timeliness of the response merely as "further support" for the claim that the omission was not willful, *Wortham*, 2015 WL 2152826, at *1, and did not necessarily treat it as a dispositive factor.

In any event, and again as explained in the Motion for Leave, this Court has previously held that a delay of a month and a half between the filing of a motion for entry of default and a motion to set aside the default was "not substantial." *Hoang v. A New Chevron Food Mart Inc.*, 2025 WL 3190845, at *2 (N.D. Ga. Mar. 24, 2025). That is a noticeably longer span than here, where only three weeks elapsed between when AmTrust moved for entry of default [Doc. 18 dated February 27, 2026] and when de Beer moved to set it aside [Doc. 23, dated March 20, 2026]. So the delay here was less substantial than in *Hoang*.

As the foregoing demonstrates, courts in this Circuit recognize that a finding of good cause to set aside default is appropriate where there is no pattern of dilatory or willful conduct; where the party is actively litigating its case; where the default is caused by the party's attorney, not the party itself; and where the defaulting party acts reasonably quickly to correct the default. All of these factors are present in this case.

6

b. <u>AmTrust's Claim that Expenses Incurred in Seeking Default Constitute Prejudice Is Misconceived and Is Contradicted by Authority Cited by AmTrust Itself.</u>

AmTrust then argues that it has suffered prejudice as a result of de Beer's failure to timely respond to the counterclaim, because it was deprived of "a single, orderly proceeding" in which "its affirmative claims [would be] adjudicated alongside Plaintiff's claim." [Doc. 24 at 6]. AmTrust claims that it was "forced . . . to take additional procedural steps at its own expense simply to preserve rights it had already properly asserted," such as filing its "Application for Entry of Default, preparing and filing a supporting affidavit, and preparing and filing this opposition to Plaintiff's Motion for Leave." [Doc. 24 at 6-7].

This claim is based on a fundamental misunderstanding of the concept of prejudice. Ordinarily, increased expenses do not amount to prejudice. AmTrust cites *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012) for the contrary proposition, but there are multiple problems with that citation. First, that case considers prejudice in the context of the waiver of a right to arbitrate, and it is not clear that the concept of prejudice is necessarily fully transferable from the waiver context into the default context. Second, the circumstances in *Johnson Assocs.* were so extreme that the case essentially distinguished itself: *Johnson Assocs.* involved a defendant who sat on its right to arbitrate for eight months into a litigation, and only invoked it after the parties had

7

expended significant time and money litigating the case. *Id.* at 715. In making a finding of prejudice under the circumstances, the court emphasized that this was no ordinary case: "This is a case where, in addition to an eight-month delay and expenses involved with numerous scheduling motions and court-supervised settlement discussions, plaintiffs also engaged in discovery. The combination of all of these factors caused plaintiffs to suffer actual prejudice." *Id.* at 720 (internal quotation marks removed). Needless to say, the alleged expenses incurred by AmTrust in this case do not quite rise to the level of wasted expense discussed in *Johnson Assocs.* And third, the *Johnson Assocs.* court's own discussion of the concept of prejudice shows that it requires something more than just expenses, such as a litigant suffering a diminishment of his ability to make out his case: "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration . . . . Prejudice can also be found where a party has gained a strategic advantage by obtaining something in discovery that would be unavailable in arbitration." *Id.* at 719-20.

Ironically, the clearest demonstration that the kinds of expenses alleged by AmTrust do not constitute prejudice is the other case cited by AmTrust in the section it devotes to a discussion on prejudice. Specifically, AmTrust relies on *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) to demand "reimbursement of the

fees and costs AmTrust incurred in filing its Application for Entry of Default, the supporting affidavit, and the instant opposition" so as to "partially remedy the prejudice AmTrust has suffered." [Doc. 24 at 7].

*Coon* involved facts quite unrelated to our own – it concerned a motorist who could not be located for more than three years after a traffic accident, who was served through substituted service, against whom default was entered more than a year after service, and who only came forward after being notified of the default through his insurer's counsel. *Coon*, 867 F.2d at 74-75. It is true that the *Coon* court ordered the defendant to pay plaintiff $900 "to offset what we estimate to be plaintiff's reasonable fees and costs incurred in securing the entry of default and the default judgment," *id.* at 79, but clearly the court did not think that these expenses constituted prejudice:

> The district court did not discuss the question of prejudice, but we are at a loss to deduce how any might exist. While Coon asserts that his case is "now compromised due to the inordinate passage of time since the accident . . . ," the lament is altogether conclusory. Plaintiff does not claim that witnesses have died, that memories have dimmed beyond refreshment, that some discovery scheme has been thwarted, or that evidence has been lost.

*Id*. at 77 (internal citations removed).

What AmTrust suffered as a result of de Beer's default was nothing more than a minor delay in the litigation, not the kind of tactical disadvantage or diminishment in its capacity to litigate its case, like those discussed in the cases

9

that it cites. And no one "forced" AmTrust to take all the steps that it did to secure default. If what AmTrust is after was truly an "orderly proceeding," it could have accomplished that result through much simpler means, such as a collegial phone call between counsel the day after the answer to the counterclaim was due. But AmTrust sought default instead. If all AmTrust wanted was to avoid delay, it could have consented to de Beer filing an answer out of time, and put things back on track right away. But AmTrust chose to oppose de Beer's motion, never mind that it would add an extra month to the process. That kind of a loss does not even come close to constituting prejudice.

<p style="margin-left:2em;">c. <u>AmTrust's Proposed Rule that Legal Argument Cannot Constitute Meritorious Defense Is Not Credible Because It Cites No Authority Whatsoever.</u></p>

Next, AmTrust claims that de Beer's proffered meritorious defense amounts to a "disagreement with AmTrust's legal position, which is insufficient to establish a meritorious defense for purposes of setting aside default." [Doc. 24 at 9]. No support is cited for this statement whatsoever. De Beer can acknowledge that, conceptually, it might make sense that setting aside default matters more when the proposed defense rests more heavily on facts, which would be excluded if default is entered, rather than legal argument, which would not. But AmTrust's blanket claim that disagreement with a plaintiff's legal position is categorically insufficient

to establish a meritorious defense is a very broad proposition, and it requires better support than AmTrust's say-so before being engaged with seriously.

### d. AmTrust's Jurisdictional Challenge Is Inapposite Because It Is Based on A Misreading of the Complaint.

Finally, there is the matter of AmTrust's jurisdictional challenge. AmTrust claims that there is no subject matter jurisdiction because the amount in controversy between AmTrust and de Beer is below the $75,000 threshold that is required for diversity jurisdiction. [Doc. 24 at 9]. AmTrust then cites a case for the proposition that "when liability among defendants is several, a plaintiff cannot aggregate its claims against multiple defendants to satisfy the amount-in-controversy requirement." *Id*. But that statement is completely inapposite. Even a cursory look at the Complaint would reveal that de Beer does not have to aggregate anything in order to meet the jurisdictional threshold: de Beer's claims against Truist alone are for at least $298,758.00 [*See, e.g.,* Doc. 1 at 10,   74; 14,   109; 18,   140]. That number is in excess of $75,000.

It is basic hornbook law that once there is one plaintiff against whom a claim can be directed in excess of the jurisdictional threshold, a federal court can seize supplemental jurisdiction over other defendants who are part of the same case or controversy even if the claim against them falls under the $75,000 line: "[W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does

11

authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). Here, a claim in excess of $75,000 has been directed against Truist, and the claim against AmTrust arises from the same set of facts and therefore relates to the same controversy, and under the rule of *Allapattah* this Court can exercise supplemental jurisdiction over AmTrust. AmTrust's jurisdictional challenge must fail.

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction over the current dispute; and de Beer can show that it has good cause for default to be set aside; and de Beer ought to be given the opportunity to file its answer to AmTrust's claim out of time.

Respectfully submitted, this 17th day of April, 2026.

FGP LAW, LLC

/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530
fpodesta@fgplaw.com

555 Sun Valley Drive
Suite N-3
Roswell, Georgia 30076
678.677.5143 (voice)
678.222.0123 (facsimile)
*Attorneys for de Beer*

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Reply Brief** was prepared using 14 Point Times New Roman Font, and that on April 17, 2026, I filed and served the foregoing with the Clerk of Court and upon all counsel of record via this Court's CM/ECF Electronic Case Filing System.

Respectfully submitted, this 17th day of April, 2026.

FGP LAW, LLC


/s/ Frank G. Podesta
Frank G. Podesta
Georgia Bar No. 496530