IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| BASKLOOFS STONE, INC., *doing business as* Debeer Granite & Marble, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 3:25-CV-00256-LMM |
| TRUIST BANK, INC., et al., | : : | |
| Defendants. | : : : | |

## **ORDER**

This case comes before the Court on Defendant Truist Bank, Inc.'s Motion to Compel Arbitration and to Dismiss or Stay [13]. After due consideration, the Court enters the following Order.

### I.    **BACKGROUND[1]**

This case involves allegations of a fraudulent wire transfer on April 23, 2025, made by a third party out of Plaintiff's accounts, which Plaintiff keeps with Defendant Truist Bank, Inc. ("Truist"). In the Complaint, Plaintiff asserts claims against Truist for negligence, gross negligence, breach of fiduciary duty, and attorneys' fees. Truist moves to dismiss or stay the case and compel arbitration,

---

[1] The relevant facts are taken from Plaintiff's Complaint and are assumed to be true.

arguing that the parties' agreement requires that any dispute between them be submitted to arbitration. Dkt. No. [13]. Truist attaches its Commercial Bank Services Agreement ("CBSA") from 2023, which it alleges Plaintiff signed. See Dkt. No. [13-1] at 3–4; 12–49. Plaintiff opposes Defendant's Motion, arguing that the 2023 CBSA lacks consideration and that it never accepted the changes in the 2025 CBSA, which Truist also submitted with its Motion. Dkt. No. [15]; see Dkt. No. [13-1] at 51–91. After setting forth the applicable legal standard, the Court will address the parties' arguments in turn.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "ensure[s] judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Therefore, "[t]he FAA embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation modified). Generally, "[t]he role of the courts is to 'rigorously enforce agreements to arbitrate.'" Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting Dean Witter Reynolds, 470 U.S. at 221). Thus, "questions of arbitrability, when in doubt, should be resolved in favor of arbitration." Emps. Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001).

In ruling on a motion to compel arbitration, the Court must conduct a two-step inquiry. "The first step is to determine whether the parties agreed to arbitrate the dispute." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir.

2004). "[I]t is the language of the contract that defines the scope of disputes subject to arbitration." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002). "The second step in ruling on a motion to compel arbitration involves deciding whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" Klay, 389 F.3d at 1200 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). Where a party has entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and the claims before the court fall within the scope of that agreement, "the FAA requires a court to either stay or dismiss [the] lawsuit and to compel arbitration." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008). And when "a party requests a stay pending arbitration, . . . the FAA compels the court to stay the proceeding." Smith v. Spizzirri, 601 U.S. 472, 478 (2024).

## III.   DISCUSSION

Defendant moves to dismiss or stay this case and compel arbitration, arguing that the CBSA's arbitration clause requires the parties to arbitrate any disputes arising from Plaintiff's claims. See Dkt. No. [13]. Plaintiff responds that (A) the 2023 CBSA is based on illusory promises and is thus not a fully formed contract under Georgia law and (B) the 2025 CBSA is not binding because Plaintiff never accepted it. Dkt. No. [15]. Defendant replies that (A) the 2023 CBSA is supported by consideration and constitutes a valid and binding contract and (B) Plaintiff accepted the terms of the 2025 CBSA after it received notice of

the changes and continued to use its account. Dkt. No. [16]. The Court will address each of these arguments in turn.

As a preliminary matter, there is no dispute between the parties that Georgia law governs as to whether the relevant arbitration agreement is a valid contract. See Dkt. No. [15] at 4–5; cf. Dkt. No. [16] at 1. Under Georgia law, the party seeking to compel arbitration has the burden to demonstrate that a valid arbitration agreement exists. See Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1330 (11th Cir. 2016). Here, Truist has filed two version of the CBSA from 2023 and 2025 as well as the "Bohannon Declaration" to demonstrate that a valid agreement to arbitrate exists. See Dkt. No. [13-1]. Plaintiff does not appear to dispute the existence of the 2023 CBSA, that it signed the agreement, or that its claims against Truist would be subject to arbitration under this agreement if it were valid. See Dkt. No. [15].

However, Plaintiff challenges the fundamental validity of the 2023 CBSA, arguing that it lacks consideration because it contains "illusory promises" because Truist may amend the agreement without notice. Dkt. No. [15] at 7–13. In pertinent part, the 2023 CBSA states the following:

> The terms of this Agreement and our fees or banking services may be changed from time to time by the Bank. When the laws governing your account require the Bank to provide you written advance notification of a change to the Agreement, the Bank will provide such notice by written or electronic notice to you. The notice may be included on your account statement. . . . Unless otherwise prohibited or required by applicable law or regulation, the Bank may change from time to time other provisions of this Agreement with or without

notice. Continuing to maintain your account following a notice constitutes your acceptance of our changes.

Dkt. No. [13-1] at 14. Truist responds that the 2023 CBSA is supported by adequate consideration under Georgia law because it requires both parties to engage in arbitration to resolve disputes. Dkt. No. [16] at 4–6.

The Court disagrees with Truist. "Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract." Caley, 428 F.3d at 1376. "However, where a party offers an illusory promise, a court will find inadequate consideration and deem the contract unenforceable." Lambert v. Austin Ind., 544 F.3d 1192, 1196 (11th Cir. 2008). "An illusory promise exists when 'words of promise . . . by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue.'" Id. (quoting Kemira, Inc. v. Williams Investigative & Sec. Servs., Inc., 450 S.E.2d 427, 431 (Ga. Ct. App. 1994). Here, the 2023 CBSA offers an illusory promise because Truist may unilaterally change the Agreement without notice, including its obligations to arbitrate, making its performance entirely optional. See Dkt. No. [13-1] at 14; Lambert, 544 F.3d at 1196. Accordingly, the Court finds that Truist has not met its burden to show that the 2023 CBSA is an enforceable agreement.

Next, Plaintiff argues that it is not bound by the 2025 CBSA because Truist cannot show that Plaintiff accepted it. Dkt. No. [15] at 13–14. Specifically, Plaintiff argues that there is no allegation that any notice of the new agreement

5

was sent to Plaintiff. Id. Truist responds that Plaintiff received notice of, and consented to, the 2025 CBSA, and Truist attaches a supplemental declaration attesting to these facts. Dkt. No. [16] at 8–11; Dkt. No. [16-1]. The Eleventh Circuit applies the summary judgment standard in determining whether there is a valid arbitration agreement. See Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785–86 (11th Cir. 2008). And this Court is instructed to "give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." Id. (citation modified). Here, Truist raises arguments—and attaches new evidence regarding Plaintiff's acceptance of the 2025 CBSA—for the first time in its reply brief. See Dkt. Nos. [16, 16-1]. Therefore, the Court directs Plaintiff to file a surreply that is limited to addressing these issues. The Court thus defers ruling on Truist's Motion until after the benefit of reviewing Plaintiff's surreply.

## IV.    CONCLUSION

In accordance with the foregoing, Defendant Truist Bank, Inc.'s Motion Compel Arbitration and to Dismiss or Stay [13] is **DENIED, in part,** and the Court **DEFERS, in part,** its ruling on the Motion. Plaintiff is **ORDERED** to file its surreply within **10 days** of this Order consistent with the instructions contained in this Order. The Court will then expedite ruling on this Motion.

**IT IS SO ORDERED** this 27th day of April, 2026.

_____
**Leigh Martin May**
**Chief United States District Judge**