# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE,** | ) ) ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) ) | **3:25-cv-00256-LMM** |
| **v.** | ) ) | |
| **TRUIST BANK, INC., and TECHNOLOGY INSURANCE COMPANY d/b/a AMTRUSTCYBER,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

**DEFENDANT TRUIST BANK'S SUR-SURREPLY IN SUPPORT OF ITS
<u>MOTION TO COMPEL ARBITRATION</u>**

In its Surreply in Opposition to Defendant Truist Bank d/b/a Truist Bank, Inc.'s ("Truist") Motion to Compel Arbitration (Dkt. No. 30), Plaintiff argues for the first time that it did not accept the 2025 Commercial Bank Services Agreement ("CBSA") because maintaining a deposit account was a condition of obtaining seven-figure loans from Truist. Plaintiff's new argument does not negate acceptance and further underscores that CBSA was supported by valid consideration. Accordingly, the parties' past and current rights and obligations, as well as their performance, provide ample consideration for the CBSA, which binds both parties. In any event, the Federal Arbitration Act, Georgia law, and the CBSA require the

1

Court to enforce the parties' agreement to arbitrate without regard to any other provision of the CBSA, including the amendment provision.

## ARGUMENT

### I.    Plaintiff assented to the terms of the 2025 CBSA.

Plaintiff originally argued that it never accepted the 2025 CBSA because Truist had not shown that it notified Plaintiff of the changes and that Plaintiff accepted the changes. (Dkt. No. 15 at 13–15.) In response, Truist submitted undisputed evidence showing that Plaintiff received notice of these changes and accepted them by maintaining its account. (Dkt. No. 16 at 9–10; Dkt. No. 16-1 at 9–20). Notably, the amendment made to the CBSA was to allow Plaintiff to opt out of changes made to the arbitration agreement. (Dkt. No. 16 at 58.) Plaintiff did not do so. With its original argument foreclosed, Plaintiff now shifts its position to argue in its Surreply that it did not assent to the 2025 CBSA because it was separately obligated to maintain a deposit account with Truist as a condition of obtaining millions of dollars in loans from Truist. (Dkt. No. 30 at 3–4.) This argument is unavailing, and Plaintiff cites no case law to support it. (*Id.*) Plaintiff had no obligation to accept millions of dollars in loan proceeds from Truist if it did not like the terms.

Plaintiff also partially quotes the notice it received of the changes to the CBSA to argue that it only accepted the changes to the agreement, rather than the 2025

CBSA as a whole. (Dkt. No. 30 at 4–5.) This argument makes no sense and is contrary to the law and Plaintiff's admissions. It would not be possible for Plaintiff to accept the changes to the CBSA unless there was an agreement between the parties to which the changes applied. Plaintiff accepted the amended CBSA by its continued use of the account and choice not to object to the changes after receiving notice. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1307–08 (11th Cir. 2017) (holding that plaintiff's continued use of its bank account following notice of revisions to the governing agreement and his failure to object to those changes constituted his assent to the new version of the agreement). Indeed, as Plaintiff acknowledges, the notice in fact informed Plaintiff that its continued use of its account "constitute[d its] acceptance of the changes" *and* "[a]ll future transactions on your account will be governed by the amended CBSA." (Dkt. No. 16-1 at 9.) Thus, Plaintiff did not exclusively accept the changes; rather, it accepted the full terms of the amended 2025 CBSA following the notice.

Plaintiff's reliance on *Sevier Cnty. Schs. Fed. Credit Union v. Branch Banking and Tr. Co.* (decided under Tennessee law) is inapposite. 990 F.3d 470 (6th Cir. 2021). There, the Sixth Circuit held that customers did not assent to "massive changes" made to a 2-page agreement the customers had with a predecessor bank to become a 33-page agreement with the successor bank in which an arbitration agreement was added for the first time. *Id.* at 478–479. In contrast, here, there is no

3

dispute that Plaintiff assented to 2023 CBSA, which contained a clear and unequivocal arbitration agreement, when it opened its account with Truist. (*See* Dkt. No. 13-1 at 10.) Unlike in *Sevier Cnty. Schs.*, Truist did not fundamentally change the terms of the CBSA in the 2025 version, and instead made minor amendments, including the opportunity to reject changes made to the arbitration agreement. It is telling that Plaintiff cites only to this distinguishable case from the Sixth Circuit and does not identify binding Eleventh Circuit or Georgia law on this issue.

## II.    The CBSA is supported by valid consideration and binds Plaintiff.

Where a contract contains adequate consideration, "the agreement is not illusory, and both parties are committed to a binding agreement." *Abrams v. Massell*, 262 Ga. App. 761, 765 (2003) (quoting *Brack v. Brownlee*, 246 Ga. 818, 819 (1980)) (internal quotation marks omitted). Under Georgia law, an agreement will not fail for lack of consideration due to an illusory promise unless "there is no other consideration for [the] contract." *Brack*, 246 Ga. at 818–19. "[W]here there is any other consideration for a contract so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential." *Id.* at 819.

Whether the contract is supported by adequate consideration is determined "as of the time the contract is to be enforced." *Jones v. Quigley*, 169 Ga. App. 862, 863 (1984). Here, that time is now—as Truist seeks to enforce the contract. "If at that time the contract contains mutual obligations equally binding on both parties to the

contract, then the contract is not unilateral and unenforceable." *Id.* Likewise, parties' post-execution performance of an agreement initially lacking in mutual consideration may provide consideration for enforcement. *McMurray v. Bateman*, 221 Ga. 240, 251 (1965) (performance of contractual obligations satisfies any deficiencies in mutuality).

Here, at present (*i.e.*, at the time of enforcement), not only do the parties have a banking relationship satisfying consideration requirements, Plaintiff's new argument that Truist approved million dollar loans for Plaintiff as part of that relationship further supports consideration requirements. There can be no question that CBSA and its arbitration agreement are supported by ample consideration.[1] The CBSA creates a banking relationship in which Truist maintains bank accounts and provides related banking services to Plaintiff in exchange for Plaintiff depositing funds with Truist and paying certain fees. (*See* Dkt. No. 1 at ¶ 14; Dkt. No. 13-1 at ¶ 14, p.14; Dkt. No. 16 at 7–20.) Plaintiff and Truist have performed that banking relationship for nearly three years. (*Id.*) Throughout the course of this relationship, both parties have performed their obligations under the CBSA. (*See id.*)

---

[1] The existence of rights and obligations to each party at the time of enforcement establishes consideration for a contract. *See Jones*, 169 Ga. App. at 863. Likewise, parties' post-execution performance of an agreement initially lacking in mutuality consideration may provide consideration for enforcement. *McMurray v. Bateman*, 221 Ga. 240, 251 (1965) (performance of contractual obligations satisfies any deficiencies in mutuality).

Accordingly, at the time of enforcement – *i.e.* now, upon Truist's Motion to Compel Arbitration – there can be no dispute that the CBSA was supported by adequate consideration under Georgia law.[2] The parties' current rights and obligations as well as their performance under the CBSA establish valid consideration supporting the agreement. *Tattersall Club Corp. v. White*, 232 Ga. App. 307, 311 (1998). Plaintiff's new argument based on receiving seven-figure loans from Truist further supports the existence of valid consideration to support the parties' agreement to the CBSA.

The CBSA's amendment provision allowing Truist to modify the agreement does not nullify the consideration established by the parties' continued performance under the CBSA. There is no dispute that the CBSA currently contains consideration to both parties. Georgia law requires consideration to be judged at the time of enforcement, not based on speculative future hypotheticals. *Jones*, 169 Ga. App. at 863. Consequently, when determining whether necessary consideration exists, it is not relevant whether Truist may hypothetically modify the CBSA in the future or whether Plaintiff may hypothetically accept that modification by continuing to do business with Truist.

---

[2] Even at the time when the parties entered into the 2023 CBSA, there were clear and mutual promises supported by adequate consideration. (*See* Dkt. No. 13-1 at 51– 91.) Thus, even absent the parties' years-long performance, there is adequate consideration.

For this reason, Georgia courts consistently reject arguments that contracts containing unilateral modification or termination provisions lack adequate consideration. *See Park Regency Partners v. Gruber*, 271 Ga. App. 66, 75–76 (2004); *Smith v. Aggregate Supply Co.*, 214 Ga. 20, 25 (1958) (contract was supported by mutuality and termination provision did not render it unenforceable); *Davidson Min. Props., Inc. v. Baird*, 260 Ga. 75, 78 (1990) (similar).

For example, in *Rushing v. Gold Kist, Inc.*, 256 Ga. App. 115, 119 (2002), the Georgia Court of Appeals rejected an argument that an arbitration agreement lacked mutuality and consideration because one party could unilaterally modify the types of disputes subject to arbitration. The court explained that consideration must be judged "as of the time the contract is to be enforced" and that "when this action arose" the contract contained clear, mutual obligations to arbitrate. *Id.*

More recently, this Court reached the same decision in *Martinez v. Checkr, Inc.*, No. 1:19-cv-4369-WMR-JKL, 2019 WL 8135598, at *6–8 (N.D. Ga. Dec. 19, 2019), *adopted by* 2020 WL 1041088 (N.D. Ga. Jan. 9, 2020) There, the Court upheld an arbitration agreement included in the defendant's terms of service that gave the defendant "the right to unilaterally change the terms . . . without Plaintiff's notice or consent," rejecting the contention that the agreement was illusory. 2019 WL 8135598, at *6. The Court's analysis focused on the terms at the time of enforcement—as *Rushing* requires—and concluded that "the arbitration provision is

7

supported by consideration because it requires both parties to resolve disputes through binding arbitration." *Id.* at *6, 8.

And, most recently, this Court again rejected an argument that "arbitration provisions are illusory and therefore unenforceable . . . because [defendant] could avoid its promise to arbitrate by amending the clauses altogether" in *Kattula v. Coinbase Glob., Inc.*, No. 1:22-CV-3250-TWT, 2023 WL 4373385, at *3 (N.D. Ga. July 6, 2023). The Court could not have been more clear: "a unilateral modification provision does not, standing alone, render a contract illusory." Against this longstanding and heavy weight of authority, *Plaintiff cites no Georgia authority to the contrary*. Just yesterday, this Court again enforced an arbitration agreement found within deposit agreement that allowed the bank to amend the agreement unilaterally. *Cherokee Auto Body Inc. v. Regions Bank*, Case No. 1:25-cv-07044-MHC, at 12 n.3 (N.D. Ga. May 20, 2026) (compelling arbitration and rejecting argument that provision allowing bank to unilaterally change terms by publishing new terms on website rendered contract illusory).

These precedents control the outcome of this case, and the exact same outcome should apply.[3] Here, the parties have performed their banking relationship,

---

[3] The Court relied on *Lambert v. Austin Ind.*, 544 F.3d 1192 (11th Cir. 2008), in finding that the 2023 CBSA is illusory. (Dkt. No. 27 at 5–6.) *Lambert* did not address the situation here, where the requisite mutuality is provided by the parties' performance under the agreement.

pursuant to the provisions of the CBSA, for nearly three years. The 2023 CBSA's provision allowing Truist to modify the agreement in the future does not nullify the consideration established by the parties' continued performance under the CBSA.

Even setting aside Plaintiff's failure to contend with *Rushing* and the multitude of other authorities holding that modification provisions do not render contracts unenforceable without mention of notice provisions, notice exists in this case. The CBSA requires Truist to notify Plaintiff of amendments to its terms where required by law or regulation. (Dkt. No. 13-1 at 14, 53.) And, as earlier discussed, Truist **did** provide Plaintiff with advance notice of the changes to the 2025 CBSA in very plain and clear terms, and gave it an opportunity to reject those changes. (Dkt. No. 16-1 at 9.) And as Plaintiff emphasized in its opposition, the change to the 2025 CBSA specifically **allowed** Plaintiff to reject future changes to the arbitration agreement. (Dkt. No. 13-1 at 58.) Therefore, it is "significant[ly]" different from the 2023 CBSA in that it specifically does not allow Truist to unilaterally revise the agreement.[4] (*See* Dkt. No. 15 at 7.)

There can therefore be no dispute that the CBSA is supported by adequate consideration under Georgia law, and is thus binding and enforceable here.

III.   **United States Supreme Court precedent requires the Court to enforce the severable arbitration agreement.**

---

[4] Truist does not concede that the 2023 CBSA is based on illusory promises. For the reasons stated herein and in Truist's prior briefing, Truist contends that the 2023 CBSA is supported by adequate consideration and the Court should enforce it.

The FAA mandates that the Court enforce the parties' agreement to arbitrate without regard to any other provisions in the CBSA (like the amendment provision) that could render the CBSA unenforceable. Under the FAA, a challenge to the validity of a contract does not alter the enforceability of an arbitration clause contained inside the challenged contract. "[As] a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006); *see also Martinez*, 2109 WL 8135598, at *7 citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71, 130 S. Ct. 2772 (2010). Only a challenge to the arbitration provision "specifically" could bar enforcement of the arbitration provision. *Buckeye*, 546 U.S. at 446. A contractual challenge "that directly affects the entire agreement," is not relevant to "a court's determination whether the arbitration agreement at issue is enforceable" because under the FAA "a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Rent-A-Center*, 561 U.S. at 70–71 (quoting 9 U.S.C. § 2) (emphasis in original).

There is no dispute, nor can there be any dispute, that Plaintiff and Truist could and did agree to arbitrate. There likewise can be no dispute that the arbitration provision is mandatory, mutual, and supported by valid consideration (i.e., the parties' reciprocal agreements to arbitrate). Plaintiff's challenges to the CBSA as a

10

whole or to its amendment provision cannot somehow do away with its severable agreement to arbitrate. Plaintiff's "challenge to another provision of the contract, or to the contract as a whole, does not prevent [the] court from enforcing [the] specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 71. Accordingly, "because [Plaintiff] challenge[s] the [CBSA], but not *specifically* its arbitration provisions, those provisions are enforceable apart from the remainder of the contract[.]" *Buckeye*, 546 U.S. at 446 (emphasis added); *see also Martinez*, 2019 WL 8135598 at *7; *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986) (distinguishing between challenges to mutuality of obligations as to the contract as a whole and those pertaining to the agreement to arbitrate).

Even apart from the FAA, Georgia law and the CBSA independently require severing the enforceable arbitration provision. Georgia law favors severability in that it is the "policy of th[e state] to sever, when possible, the unenforceable provisions of a contract from those provisions which are enforceable." *Circle Appliance Leasing, Inc. v. Appliance Warehouse, Inc.*, 206 Ga. App. 405, 406 (1992); O.C.G.A. § 13-1-8(a) ("In a severable contract, the failure of a distinct part does not void the remainder."). Accordingly, "[i]f a contract is severable, the part of the contract that is valid will not be invalidated by a separate and distinct part that is unenforceable." *Vegesina v. Allied Informatics, Inc.*, 257 Ga. App. 693, 694 (2002).

11

Whether a contract is severable is based on the parties' intent. *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317 (11th Cir. 2005); *see also* O.C.G.A. § 13-1-8(b). "The parties' intent may be expressed directly, through a severability clause[.]" *Vegesina*, 257 Ga. App. at 694. The CBSA contains an unambiguous severability clause applicable to the entire agreement: "If any provision, or a portion thereof, of this Agreement or its application to any party or circumstance shall be declared void, illegal, or unenforceable, the remainder of the provision and the Agreement shall be valid and enforceable to the extent permitted by law." (Dkt. No. 13-1 at 15, 54.)[5] Here, the Court should follow the Eleventh Circuit and enforce the severable arbitration provision. (Dkt. No. 13-1 at 14, 53.) Severance is in line with Georgia's policy in favor of severance, and upholds the parties' intentions at the time they entered the CBSA.

## CONCLUSION

For these reasons, the Court should find the CBSA to be binding and enforceable upon Plaintiff and compel this action to arbitration.

Respectfully submitted this 21st day of May, 2026.

**BRADLEY ARANT BOULT CUMMINGS LLP**

---

[5] The Mutual Arbitration Agreement has its own severability clause, which states, in relevant part: "[I]f any portion of this Mutual Arbitration Agreement is found unenforceable, it shall be severed from the Mutual Arbitration Agreement such that the remainder of this Mutual Arbitration Agreement shall be enforceable to the fullest extent permitted by law." (*Id.* at 58.)

/s/ Nancy H. Baughan
Nancy H. Baughan
Georgia Bar No. 042575
Rachel C. Bramblett
Georgia Bar No. 896738
Promenade Tower, Suite 2000
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Email: nbaughan@bradley.com
        rbramblett@bradley.com

*Counsel for Defendant Truist Bank*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I certify that the foregoing document has been prepared in conformity with Local Rule 5.1(B). This Motion has been prepared with Times New Roman (14-point) type, with top, bottom, left, and right margins of one (1) inch. This Motion is proportionally spaced and does not exceed fifteen (15) pages.

This 21st day of May, 2026.

/s/ Nancy H. Baughan
Nancy H. Baughan

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served a copy of the within and foregoing **DEFENDANT TRUIST BANK'S SUR-SURREPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** upon all parties to this matter by electronically filing same with the Clerk of Court using the Court's CM/ECF system, which will send email notification to all counsel of record in this action.

This 21st day of May, 2026.

*/s/ Nancy H. Baughan*
Nancy H. Baughan