IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **BASKLOOFS STONE, INC. d/b/a DEBEER GRANITE & MARBLE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TRUIST BANK, INC., and TECHNOLOGY INSURANCE COMPANY d/b/a AMTRUSTCYBER,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.**<br><br>**3:25-cv-00256-LMM** |

**DEFENDANT TRUIST BANK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ORDER COMPELLING ARBITRATION AND LIFT STAY**

## INTRODUCTION

The Court should deny Plaintiff's improper and belated motion for reconsideration. More than three months after this Court granted Truist Bank d/b/a Truist Bank, Inc.'s ("Truist") motion to compel arbitration and stayed this action (Doc. 34), Plaintiff Baskloofs Stone, Inc. d/b/a DeBeer Granite & Marble ("de Beer") asks the Court to undo that ruling based on case law that existed years prior to the Court's Order, irrelevant materials that are not in the record, and because no arbitration proceeding has been initiated. De Beer's Motion is procedurally improper and fails on the merits, and the Court should deny the Motion.

First, despite its label, in substance, the Motion is an untimely motion for reconsideration. It was filed more than 100 days after the Order it challenges—nearly four times the Court's 28-day deadline for motions for reconsideration. The Motion also overwhelmingly relies on case law that predates the Order by several years. The legal theory de Beer now presents could have been asserted when de Beer opposed the motion to compel on February 6, 2026 (Doc. 15), when the Court ordered a sur-reply to address new evidence on April 27, 2026 (Doc. 27), and when de Beer filed that sur-reply on May 7, 2026 (Doc. 30). Yet, de Beer's prior briefing said nothing about the existing, non-binding decisions it now argues are central. This omission does not entitle de Beer to a second bite at the apple after the Court already has ruled.

Second, even if the Court reaches the merits, de Beer's own motion defeats itself. De Beer's entire theory rests on a line of cases that de Beer characterizes as holding that a drafter cannot use a generic change-of-terms mechanism to newly insert an arbitration provision into the parties' governing agreement after a dispute is already known to the drafter. The cases de Beer cites are factually distinguishable and interpret other states' laws.

De Beer's other arguments fare no better. Without supporting case law, de Beer suggests that Truist's failure to initiate an arbitration naming itself as respondent runs afoul of 9 U.S.C. § 3. This argument defies common sense and is

not supported by law or the parties' contract. Finally, de Beer's reliance on an August 2026 notice that post-dates the Order by three months is an invitation to speculate about Truist's motives based on a later, different document, not evidence bearing on whether the May 26, 2026 Order was correct when it was entered. De Beer presents no valid basis for the Court to revisit its Order, and the Motion should be denied.

## BACKGROUND

De Beer maintains a business account with Truist (the "Account"). (Doc. 1 ¶ 9.) In order to open the Account, de Beer's authorized signer executed a Truist Signature Card. (Doc. 13-1 at 10.) By signing a signature card and maintaining and using its Account, de Beer agreed that it was governed by the terms and conditions set forth in the Commercial Bank Services Agreement ("CBSA"). (*Id.* at 14.) At the time of the Account's opening, the 2023 CBSA governed the Account. (*Id.* at ¶¶ 9–10.) The 2023 CBSA contained a prominent arbitration agreement. (*Id.* at 15–19.)

Truist routinely updates its CBSA, and did so in 2025. (*See id.* at ¶ 11.) In September 2025, de Beer was notified that Truist was making changes to the CBSA the following month, and that continued use of the Account would signify de Beer's consent to those changes. (Doc. 16-1 ¶ 7.) De Beer continued to use the Account. (*Id.* at ¶ 8.) In this Court's words, "Truist gave Plaintiff notice that continued use of the account would constitute assent to the changes to the agreement that governs the

account and Plaintiff continued to use the account." (Doc. 34 at 5.) The 2025 CBSA likewise contained a prominent arbitration agreement. (Doc. 13-1 at 54–59.)

Truist moved to compel arbitration under both the 2023 and 2025 CBSA on January 23, 2026. (Doc. 13 (citing to both versions of the CBSA).) Following de Beer's opposition (Doc. 15) and Truist's reply (Doc. 16), the Court issued an order partially denying and partially deferring the motion to compel arbitration on April 27, 2026. (Doc. 27.) The Court ordered de Beer to file a sur-reply opposing the motion, which it did on May 7, 2026 (Doc. 30). The sur-reply was devoid of all case law de Beer now asserts.

Ultimately, the Court partially granted Truist's motion on May 26, 2026 (Doc. 34), finding, among other things, that changes made to the 2025 CBSA "did not 'spring upon' Plaintiff an arbitration agreement or large amendments." (*Id.* at 6.) Instead, the change made to the 2025 CBSA was to "allow[] 'the counterparty an opportunity to reject any modifications to the arbitration agreement that may be proposed by Truist.'" (*Id.* (quoting Doc. 15 at 6).) The Court further held that "this is not a case where (a) an arbitration agreement was added or (b) the rights of Plaintiff were hampered by modifications. Rather, the terms added to the arbitration agreement were favorable to Plaintiff." (*Id.* at 6.) The Court concluded that "the parties entered into an agreement to arbitrate that governs the claims here[,]" and stayed the litigation pending arbitration. (*Id.*)

Following the Court's Order, Truist has awaited de Beer's initiation of the required pre-arbitration dispute resolution proceedings as contemplated by the binding 2025 CBSA. The 2025 CBSA states that "[t]he party who wishes to assert a Claim ('claimant') must first give written notice to the other party of their intent to initiate arbitration[.]" (Doc. 13-1 at 55.) Truist has received no such notice or other indication of an attempt to initiate the informal pre-arbitration dispute resolution conference or other step toward arbitration.

De Beer also references a notice related to online and mobile banking issued by Truist on August 25, 2026—approximately three months after the Court's Order—that is not contained in the record. The August 2026 notice has no bearing on the Court's Order enforcing the 2025 arbitration agreement.

For the reasons set forth below, de Beer's Motion should be denied.

## ARGUMENT

### I. The Motion is an untimely, procedurally improper motion for reconsideration.

Regardless of its name, de Beer's Motion is substantively a motion for reconsideration, as the relief it seeks is the undoing of an order this Court already entered based on arguments and authority de Beer says should have changed the outcome. Thus, the Motion is governed by this Court's Local Rules and standards that apply to motions for reconsideration.

#### A. The Motion is time-barred by Local Rule 7.2(E).

This Court's Local Rule 7.2(E) requires that if "a party believes it is absolutely necessary to file a motion to reconsider an order or judgment," such motion must be filed "within twenty-eight (28) days after entry of the order or judgment." N.D.G.A. L.R. 7.2(E). De Beer filed this motion on September 10, 2026—***107 days*** after this Court's May 26, 2026 Order. De Beer asks this Court to excuse that delay because Federal Rule of Civil Procedure 54(b) preserves a district court's plenary authority to revise interlocutory orders. (Mot. at 6–7 (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)[1])).

The existence of the district court's plenary authority, however, does not mean the Court must exercise it on an untimely request, nor does it displace the Court's Local Rule governing the time allowed for a party to move for reconsideration of an earlier ruling. If Rule 54(b)'s general revision power excused compliance with Local Rule 7.2(E), any time a party characterized its filing as something other than a "motion for reconsideration," this Court's 28-day deadline would be a dead letter, since every order subject to Rule 54(b) is, by definition, non-final and technically revisable at any time. The Local Rule exists precisely to govern the timing of

---

[1] De Beer actually misquotes *Toole*, which says that "***Since an order granting a new trial is*** an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59." *Id.* at 1316 (quoting 6A James W. Moore, *Moore's Federal Practice* ¶ 59.13(1), at 59-257 (2d ed. 1979)) (emphasis added to reflect words missing from quote).

requests such as this. And under the Local Rule's timing, de Beer's request is 79 days past the deadline.

De Beer's reliance on *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227 (2015) does not help its position. As an initial matter, de Beer misrepresents that in this "identical situation," the California Court of Appeals held that a trial court "may reconsider interim rulings such as compelling or denying arbitration, with or without a change in the law[.]" (Mot. at 7 (purportedly quoting *Pinela*).) De Beer does not include a pin cite to this quote, and the quoted language does not appear anywhere in *Pinela*. Moreover, *Pinela* addressed a California trial court's authority, under California civil procedure, to revisit an order compelling arbitration in light of new law that came out after the court's order. *Pinela*, 238 Cal. App. 4th at 227, 237 (citing Cal. Code Civ. Proc., § 1008). *Pinela* says nothing about the timing requirements under this Court's Local Rules or the Federal Rules, and does not hold that a federal district court's local reconsideration deadline collapses whenever a litigant frames its request as one to "vacate" rather than to "reconsider." The relevant timing rule here is Local Rule 7.2(E), and it is undisputed that de Beer's Motion is untimely under it. (*See* Mot. at 8.)

To get around this issue, de Beer argues that Local Rule 7.2(E)'s standard is satisfied because "there has been an intervening change in the availability of controlling or persuasive authority, new evidence has come to light, or

reconsideration is necessary to prevent manifest injustice." (Mot. at 8.) But none of these items is present here.

### B. De Beer's Motion fails because de Beer cannot satisfy any recognized ground for reconsideration.

Even setting aside the clear time bar, a motion for reconsideration "should be reserved for extraordinary circumstances, such as the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice." *Adler v. Wallace Comp. Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001). "[A] reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Id.* A party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); *accord Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps. of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (reconsideration is not an opportunity for a party "to instruct the court on how the court 'could have done it better' the first time").

De Beer cannot satisfy any of the three recognized grounds. It does not identify an intervening change in controlling law. None of its cited authority is

controlling in this Court, and none of it was issued after the May 26, 2026 Order. Nor does it identify a clear error in the Order. Rather, it simply argues that the Order would have come out differently had different, existing case law been presented. The case law is not "newly discovered" in any sense recognized by the reconsideration standard. *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998), *Discover Bank v. Shea*, 362 N.J. Super. 200 (Law Div. 2001), *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), *Peleg v. Neiman Marcus Grp.*, 204 Cal. App. 4th 1425 (2012), and *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462 (2013) all predate the parties' original briefing by anywhere from thirteen to twenty-eight years, and *Decker v. Star Financial Grp., Inc.*, 204 N.E.3d 918 (Ind. 2023) predates the Order itself by roughly three years. All of this case law was available to de Beer when it opposed Truist's motion to compel arbitration on February 6, 2026 and when it filed a sur-reply on May 7, 2026. (*See* Doc. 27.) Having had two dedicated opportunities to marshal its best authority and having chosen not to raise these available (non-binding) cases, de Beer cannot now claim they were unavailable or belatedly have the Court consider them.

## II. On the merits, the Motion identifies no basis to disturb the Order compelling arbitration.

### A. De Beer's Motion concedes a critical distinguishing fact – the parties had an existing arbitration agreement before the 2025 CBSA.

De Beer's Motion states, without qualification, that "[t]he arbitration agreement Truist ultimately enforced originated in the 2023 CBSA and was not, on its face, among the discrete 'changes' the 2025 notice specifically identified for de Beer's acceptance." (Mot. at 3–4 (citing Doc. 30 at 4–5).) This concession is fatal to de Beer's theory because the arbitration obligation Truist invoked was not created, added, or introduced by the 2025 CBSA at all. On the contrary, it was already part of the parties' Commercial Bank Services Agreement as of 2023, roughly two years before the April 23, 2025 wire transfer that gave rise to this suit, and long before any dispute between de Beer and Truist existed.[2] Indeed, the Court expressly held that "the changes [to the 2025 CBSA] did not 'spring upon' Plaintiff an arbitration agreement or large amendments." (Doc. 34 at 6.) The Court also noted that "this is not a case where (a) an arbitration agreement was added or (b) the rights of Plaintiff were hampered by modifications. Rather, the terms added to the arbitration agreement ***were favorable*** to Plaintiff." (*Id.*) (emphasis added). As the Court has already conclusively found, the 2025 CBSA did not manufacture a new arbitration requirement targeted at a dispute Truist already knew about, because that requirement predated the dispute by years.

---

[2] De Beer's own quotation of the 2025 notice undercuts its retroactivity argument. The notice states that "[a]ll ***future transactions*** on your account will be governed by the amended CBSA[.]" (Mot. at 3 (quoting Doc. 16-1 at 3, 9)) (emphasis added). This language is prospective by its plain terms, not retroactive.

## B. Every case de Beer cites is inapposite and non-binding on this Court.

De Beer fails to cite a single case from the Eleventh Circuit or Georgia state or federal court. Rather, de Beer cites exclusively to cases in California, New York, Indiana, and New Jersey to invoke a narrow and factually specific doctrine preventing a drafter from using a generic power to "change terms" of an agreement to spring an arbitration obligation on a party that did not previously exist, timed to capture a dispute the drafter already knows about. Examined individually, each case bears no resemblance to the facts here.

*Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998) is inapplicable to the instant case because the bank added a whole new arbitration clause to the agreement, whereas here, the parties already had an arbitration agreement in place prior to the 2025 CBSA.[3] *Discover Bank v. Shea*, 362 N.J. Super. 200 (Law Div. 2001) is inapposite for the same reason as *Badie*, because the bank there added a new arbitration clause after the initial agreement.

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) also does not help de Beer because as de Beer acknowledges, that

[3] Once again, de Beer misquotes *Badie* which says that a party does not act in an "objectively reasonable" manner by adding "an entirely new [kind of] term ***which has no bearing*** on ***any*** subject***, issue, right, or obligation*** addressed in the original agreement and ***which was*** not within the reasonable contemplation of the parties[.]" (Mot. at 11 (quoting *Badie*, 67 Cal. App. 4th at 796)) (emphasis added to reflect words missing from quote).

case held that arbitration clauses added to cardholder agreements ***after litigation was already pending*** were not enforceable on the claims in litigation. De Beer's attempt to apply that logic to the instant case strains credulity. While de Beer alleges that it notified Truist of the purportedly fraudulent wire transfer in April 2025 (Mot. at 2–3 (citing Doc. 1 ¶¶ 15, 18–19, 23–29)), "report[ing] an issue with the Account" is not the same as initiating litigation or even making Truist aware of a potential litigation or arbitration claim. (Doc. 1 ¶ 15.)

*Decker v. Star Financial Grp., Inc.*, 204 N.E.3d 918 (Ind. 2023) is likewise unhelpful to de Beer because there, the court found that the terms of the bank's own change-of-term clause prevented it from adding an arbitration clause. The change-of-term clause "limit[ed] the Bank to modifying the terms that existed in the original account agreement." *Id.* at 921. Because the original agreement did not contain an arbitration agreement or dispute resolution agreement, the bank was prohibited from adding such an agreement. *Id.* Again, this is not the case here, as the amendment provision of the CBSA does not so limit Truist, and the parties already had an existing arbitration agreement predating the 2025 CBSA.

The court in *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462 (2013) ***reversed*** an order denying a motion to compel arbitration, finding that the arbitration agreement was not unconscionable and there was no argument that the defendant had "modified the Agreement in any way." *Id.* at 1474. And in *Peleg v. Neiman*

*Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012), a California court applied Texas law to the agreement at issue.

All six cases are inapplicable here because they are distinguishable on their facts and/or they interpret the laws of other states and are non-binding on this Court. In four of these six decisions, the arbitration obligation the court refused to enforce did not exist until the drafter's unilateral notice created it, and in several, the drafter's timing coincided with a dispute that was already accrued, known, or pending. Here, by contrast, de Beer's own Motion establishes that the arbitration requirement predates both the 2025 notice and de Beer's underlying loss itself by approximately two years, and the Court already held that an arbitration agreement was not added in the 2025 CBSA. (Doc. 34 at 6.) Indeed, de Beer admits that "[t]he arbitration agreement Truist ultimately enforced originated in the 2023 CBSA[.]" (Mot. at 4.) Truist did not use the 2025 notice "to 'spring upon' Plaintiff" a new arbitration obligation on de Beer in response to its dispute; the obligation was already there. (Doc. 34 at 5.) De Beer's authority, taken on its own terms, does not reach a pre-existing arbitration requirement that subsequent agreements merely continue.

## III. De Beer's unsupported and incorrect arguments based on 9 U.S.C. § 3 do not change the outcome.

Having cited no authority, de Beer misconstrues 9 U.S.C. § 3 as supporting an argument that Truist must file an arbitration naming itself as a respondent or risk being in "default" under Section 3.

Section 3 of the Federal Arbitration Act stays litigation pending arbitration "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Courts applying that provision have required a showing that the party "so substantially utiliz[ed] the litigation machinery" that proceeding to arbitration would prejudice the opposing party, *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204 (4th Cir. 2004), or failed to engage in arbitration once initiated by the party bringing the claim, *see Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268, 1273–74 (11th Cir. 2025). De Beer identifies no litigation activity by Truist inconsistent with arbitration, no prejudice from any delay by Truist in asserting its right to arbitrate, and no refusal by Truist to participate in arbitration. Nor does de Beer explain why it failed to comply with its obligation to serve a Notice of Pre-Arbitration Dispute or request the informal conference required by the 2025 CBSA at any point in the last three months.

Indeed, de Beer conveniently avoids the fact that ***it*** bears the responsibility of initiating the pre-arbitration process, and then may initiate arbitration itself. The CBSA specifically states that "[t]he party who wishes to assert a Claim ('claimant') must first give written notice to the other party of their intent to initiate arbitration[.]" (Doc. 13-1 at 55.) It additionally states that where a claim subject to arbitration is asserted in court and the party against whom the claim is asserted elects arbitration,

"the ***party bringing the Claim*** must follow the arbitration procedures set forth in the Mutual Arbitration Agreement, including the Notice of Pre-Arbitration Dispute." (*Id.* at 56) (emphasis added). Then, if the dispute is not resolved following the required Informal Dispute Resolution Conference, "***either You or Truist*** may initiate arbitration[.]" (*Id.*) (emphasis added). Such a process does not become a ground for vacating a stay simply because de Beer ignored its obligations under the arbitration agreement.

## IV. Truist's August 25, 2026 notice is irrelevant, not part of the record, and does not warrant granting the belated motion for reconsideration.

De Beer references an August 2026 online and mobile banking notice by Truist that is not part of the record to argue that this later-issued notice somehow shows that Truist's 2025 amendments to the CBSA were "contrived." (*See* Mot. at 13.) De Beer offers nothing beyond its own counsel's characterization of the August 2026 notice to support the inference it asks this Court to draw. (*See id.* at 5 ("Counsel's contemporaneous review of that notice identified two features…").) That inference is wholly unsupported and amounts to a red herring. Banks are heavily regulated entities and routinely provide notices to their customers for any number of reasons, including complying with legal and regulatory requirements. In any event, a notice that was issued in August 2026 relating to online and mobile banking has no bearing on the arbitration agreement that existed in May 2026 when the Court issued its Order.

## CONCLUSION

De Beer's Motion is untimely and improper under Local Rule 7.2(E), and de Beer has failed to present new evidence, intervening law, or clear error justifying the Court's reconsideration or vacatur of its May 26, 2026 Order. For all of the above reasons, the Court should deny de Beer's Motion.

Respectfully submitted this 24th day of September, 2026.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Nancy H. Baughan*
Nancy H. Baughan
Georgia Bar No. 042575
Rachel C. Bramblett
Georgia Bar No. 896738
Promenade Tower, Suite 2000
1230 Peachtree Street N.E.
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Email: nbaughan@bradley.com
rbramblett@bradley.com

*Counsel for Defendant Truist Bank*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I certify that the foregoing document has been prepared in conformity with Local Rule 5.1(B). This response has been prepared with Times New Roman (14-point) type, with top, bottom, left, and right margins of one (1) inch. This response is proportionally spaced and does not exceed twenty-five (25) pages.

This 24th day of September, 2026.

*/s/ Nancy H. Baughan*
Nancy H. Baughan

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served a copy of the within and foregoing **DEFENDANT TRUIST BANK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ORDER COMPELLING ARBITRATION AND LIFT STAY** upon all parties of record to this matter by filing same with the Clerk of Court using the Court's eFile system which will send email notification to all parties of record in this action.

This 24th day of September, 2026.

*/s/ Nancy H. Baughan*
Nancy H. Baughan